**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| ***ex rel.* ROBERT C. O'LAUGHLIN, M.D.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO. 0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICES, P.S.C.,** | ) | |
| **dba ASHLAND BELLEFONTE CANCER** | ) | |
| **CENTER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MOTION OF RELATOR ROBERT O'LAUGHLIN, M.D. FOR LIMITED RECONSIDERATION OF THE ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR DISMISSAL OF RELATOR'S AMENDED COMPLAINT AND FOR AMENDMENT OF ORDER**

Robert C. O'Laughlin, M.D. ("Dr. O'Laughlin"), the Plaintiff and Relator in this matter, acting through his undersigned attorney, respectfully moves this Honorable Court to reconsider a limited portion of its Memorandum Opinion and Order (the "Memorandum" Doc. 76), granting in part and denying in part the Joint Motion of the Defendants to Dismiss the Amended Complaint (Doc. 58-2).

## I. Legal Standard on Motion for Reconsideration

"Generally, justification for reconsidering an interlocutory order is found 'when there is . . . a need to correct a clear error or prevent manifest injustice.'" *Dierig v. Lees Leisure Indus.*, No. 11-125-DLB-JGW, 2012 U.S. Dist. LEXIS 26181 at *8 (E.D. Ky. Feb. 28, 2012) (J. Bunning) (granting motion for reconsideration, and amending order) (citations omitted).

## II. Counts I and II: The Memorandum and Order Contains a Clear Error Applying Regulatory Requirements for Supervising Radiation Therapy

The portion of the Memorandum that the Relator invites the Court to reconsider concerns supervision by a radiation oncologist as opposed to supervision by any physician. (Doc. 76 at 10-13, in Part B.1.b.) As noted in the Memorandum, the Amended Complaint alleges that "[t]he administration of a specific type of radiation therapy requires a specific level of supervisory . . . care by a qualified physician, that is, by a Radiation Oncologist or other 'qualified radiation oncology physician.'" (Doc. 76 at 11, citing Doc. 53 at ¶ 32). In making this allegation, Dr. O'Laughlin relied, *inter alia,* upon the "incident to" regulation found at 42 C.F.R. § 410.26(a)(1). The Court found that Dr. O'Laughlin's reliance upon this regulation was misplaced; and granted the Defendant's motion to dismiss the relevant portion of Relator's Complaint, doing so with prejudice.

For the following reasons, this conclusion is in error.

As the Court noted, the aforesaid regulation pertains to "[s]ervices and supplies incident to a physician's professional services." It permits a supervising physician to bill Medicare for services performed by "auxiliary personnel," so long as the services are "an integral, though incidental, part of the service of a physician" and are performed under the "direct supervision of the physician." 42 C.F.R. § 410.26(b). Explaining its reasoning for its holding, this Court explained:

> Relator argues this definition of auxiliary personnel in 42 C.F.R. § 410.26(a)(1) incorporates Kentucky law, which, in turn, requires that "a radiation oncologist supervise the provision of radiation oncology services." (*See* Doc. # 66 at 4, 9, 10-14). Assuming that the radiation oncology services provided in this case were "incident to" services covered by 42 C.F.R. § 410.26 [FN. omitted], the regulation's discussion of compliance with state-law standards *clearly applies only to non-physician "auxiliary personnel," not to the supervising physicians.* Thus, *§ 410.26 does not support Relator's assertion that federal regulations (incorporating*

> *Kentucky law) require that a "qualified radiation oncologist" supervise* radiation oncology services. *See* (Doc. # 53 at ¶ 72). [FN omitted.]

(Doc. 76 at 12, italics added.)

The Court's error is contained in this sentence: "[Section] 410.26 does not support Relator's assertion that federal regulations (incorporating Kentucky law) require that a 'qualified radiation oncologist' *supervise* radiation oncology services." (Italics added.) (As a preliminary matter, we note that Medicare does not license or otherwise authorize physicians or other providers to practice medicine or to otherwise provide medical services: this is left to state law.)

Putting matters simply, the Court erred because:

(1) Medicare does not pay for medical services that are not authorized by state law (42 C.F.R. § 410.26(b)(7));

(2) Kentucky requires that, for a radiation technician to provide radiation treatment services, that technician must be supervised by a *radiation oncologist*, and not merely *any* physician (*see* Dr. O'Laughlin's Response, Doc. 66 at 11-14);

(3) If a radiation technician provides a service, doing so without supervision by a radiation oncologist, that service is provided *in violation of Kentucky state law*, and is therefore unlawful (*id*.); and

(4) A physician cannot bill Medicare or Medicaid for supervising unlawfully provided services (42 C.F.R. § 410.26(b)(7)).

Thus, if a physician other than a radiation oncologist supervises the technician who provides radiation treatment, provision of that treatment by the technician is unlawful in the State of Kentucky. Since the service rendered is unlawful, the physician supervising that technician cannot bill Medicare or Medicaid for supervising the service treatment.

We now analyze the law in greater detail.

A physician can bill the Medicare and Medicaid programs for supervising "auxiliary personnel" providing an "incident to" service. Whether a given person is or is not included in the definition of "auxiliary personnel" is determined by 42 CFR § 410(a)(1). That definition reads as follows:

> **(1)** ***Auxiliary personnel*** means any individual who is acting under the supervision of a physician (or other practitioner), regardless of whether the individual is an employee, leased employee, or independent contractor of the physician (or other practitioner) or of the same entity that employs or contracts with the physician (or other practitioner), has not been excluded from the Medicare, Medicaid and all other federally funded health care programs by the Office of Inspector General or had his or her Medicare enrollment revoked, *and meets any applicable requirements* to provide incident to services, including licensure, *imposed by the State in which the services are being furnished*.

42 CFR § 410(a)(1) (bold in original, italics added). As noted above in italics, to be included in the legal designation "auxiliary personnel," the person in question must meet "any applicable requirements" imposed by the pertinent state .

Therefore, for a physician to receive compensation for supervising technicians under the "incident to" provisions, the technician being supervised must meet the state requirements for providing the services. Under Kentucky law, radiation technicians must be supervised by a *radiation oncologist*, and not merely by *any* physician, in order to lawfully provide radiation oncology treatments. And if that technician in Kentucky is *not* supervised by a radiation oncologist, the technician cannot be considered "auxiliary personnel." Thus it follows that the supervisory physician cannot be compensated by Medicare or Medicaid for the technician's services.[1]

---

[1] The alternative makes the conclusion clear. If a physician could lawfully seek reimbursement from the Medicare or Medicaid programs for the provision of unlawful services, *any* physician could supervise *any* non-licensed technician, or supervise any person *not authorized*

Other provisions in 42 C.F.R. § 410.26(b) confirm this conclusion.

**42 C.F.R. § 410.26(b)** provides that Medicare Part B pays for a physician's (or other practitioner's) "incident to" services. However, it places a number of restrictions on such payments, including the following:

**Paragraph (b)(5)** requires that *only* the supervising physician (or other practitioner) may bill Medicare for "incident to" services;

**Paragraph (b)(6)** requires that services must be furnished by the physician (or practitioner) or by the supervised *auxiliary personnel* (as defined in 42 CFR § 410(a)(1)); and

**Paragraph (b)(7)** requires that "Services and supplies must be *furnished in accordance with applicable State law*."

Thus, by regulation, a physician is not eligible to seek or to receive payment from federal health care programs unless the *auxiliary personnel* that he or she is supervising is *lawfully* providing the services that are supervised; and, under Kentucky law, radiation oncology therapy is *not* lawfully provided unless the supervisory physician is a radiation oncologist.

The Amended Complaint properly alleges that the Defendants presented false claims by billing for supervising radiation oncology treatments in Kentucky that were *not* supervised by a radiation oncologist.

The Court did not address the argument raised by the Defendants (and rebutted by Dr. O'Laughlin) that radiation oncology services do not qualify as "incident to" services of a physician. Dr. O'Laughlin relies upon his rebuttal made in his Sur-Reply (Doc. 74-1) in support of his position regarding this issue. In summary, and contrary to the argument made by the

---

to provide medical services, or supervise any *unlawful* service—and such supervising physician would be eligible to apply for and receive payment from CMS.

Defendants in their Reply (Doc. 73 at 8)—that 42 U.S.C. § 1395x(s)(4) establishes a "separate benefits category" for X-ray therapy, thereby taking such procedures out of the definition of 42 CFR § 410.26(a)(8) for services eligible for "incident to treatment" consideration—this provision *does no such thing.* It does *not* identify *benefit categories*, but merely *defines services,* which is a different matter altogether. Benefit categories are found in another section in the Act, *viz.,* 42 U.S.C. § 1395k. As explained in Dr. O'Laughlin's Sur-Reply, radiation therapy provided in a non-hospital facility, such as the Defendants' clinics, do not have a separate benefits category; and when they are delegated by a qualified physician to a technician, such therapy qualifies as an "incident to service."

## II. Count VII: The Memorandum and Order Contains a Clear Error Applying Regulatory Requirements for Simulation Services

With regard to that portion of the Memorandum concerning simulation services (Count VII), and for the same reasons set forth above explaining that supervision of radiation therapy services must be performed by a radiation oncologist and not merely any physician, Dr. O'Laughlin asks this Court to reconsider and amend its Order, so as to expressly deny the Defendants' Motion to Dismiss to the extent that the Order dismissed with prejudice the Amended Complaint's allegations that the Defendants falsely certified that a radiation oncologist supervised the simulation services. (Doc. 76 at 14.)

The reasoning is identical to that set out above: a physician cannot bill for a service that is unlawfully provided; and under Kentucky state law a radiation technician must be supervised by a radiation oncologist when providing radiation therapy.

## CONCLUSION

For the above stated reasons, the Memorandum and Order should be amended so as to deny the Defendants' motion to dismiss as to the supervision of radiation therapy services, including simulation servicers. In the alternative, the Order should be amended so as to allow Dr. O'Laughlin to amend his Complaint to add more detail as to the legal theory that Dr. O'Laughlin relies upon.

By: /S/ Andrew Grosso

Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org

Attorney for Relator Robert C. O'Laughlin, M.D.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served upon the United States this 22rd day of October, 2020, by Electronic Service to all counsel of record.

.

/S Andrew Grosso_
Andrew Grosso, Esq.