UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND

***Electronically Filed***

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ROBERT C. O'LAUGHLIN, M.D.<br><br>PLAINTIFFS,<br><br>v.<br><br>RADIATION THERAPY SERVICES, P.S.C. dba ASHLAND BELLEFONTE CANCER CENTER, KIRTI K. JAIN, M.D., P.S.C., dba HIGHLANDS CANCER CENTER, A ONE BIZ SOLUTIONS, LLC, MANISH JAIN, and KIRTI K. JAIN, M.D.<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 0:16-cv-148-HRW |

**DEFENDANTS' RESPONSE TO RELATOR'S MOTION TO RECONSIDER**

On October 20, 2020, after considering over sixty (60) pages of briefing, this Court issued a thirty-page Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Complaint. This Court was well-informed in rendering its decision. The Order carefully weighed and considered the arguments presented and the relevant law in light of the allegations set forth in the Complaint. The Relator, unsatisfied with the outcome of that Motion, now begs this Court to Reconsider its Order. The Motion to Reconsider does not point to any change in circumstance, law, or fact; nor does it allege any fraud or material alterations. Instead, the Motion to Reconsider merely rehashes the exact same arguments that were fully briefed and argued, and which were carefully considered and rejected in the Court's well-reasoned Order. The Court's decision must be left undisturbed and the Motion to Reconsider should be denied.

## I. **<u>THE RELATOR FAILS TO SATISFY THE REQUISITE SHOWING FOR RECONSIDERATION.</u>**

The present Motion seeks extraordinary relief. The Sixth Circuit has articulated that Motions to Reconsider should be disfavored, especially given the existence of a strong public policy favoring finality of judgments. *Blue Diamond Coal, Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Instead, such relief must be relegated to "exceptional and extraordinary circumstances" and "unusual and extreme situations where principles of equity mandate relief." *Exp.-Imp. Bank of U.S. v. Advanced Polymer Sci., Inc.*, 604 F.3d 242, 247 (6th Cir. 2010). This Court has acknowledged the disfavor toward the remedy of reconsideration, noting that even though reconsideration "is a matter within the court's discretion, allowing reconsideration is an exception rather than common practice." *Neely v. Wolters Kluwer Health, Inc.*, 311 F.R.D. 427, 430 (E.D. Ky. Dec. 15, 2015). Most importantly, a Motion to Reconsider should not be used to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

The disfavor with which Courts typically approach Motions to Reconsider and the preference toward finality is demonstrated in the articulated threshold standard that must be satisfied for reconsideration. Specifically, a movant must show either clear error of law; newly discovered evidence; an intervening change in controlling law; or a need to prevent manifest injustice. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009). While the Relator's Motion for Reconsideration casually articulates an abbreviated version of this legal standard, the full standard is demonstrative of a requirement that some material change in law or fact occur such that the previous ruling is now shown to have been in clear error. [DN 77 at 1, Relator articulates the standard as "'when there is…a need to correct clear error or prevent manifest injustice'" [*citations omitted.*]] Unfortunately for the Relator, instead of satisfying this exceptional standard,

the present Motion is simply an impermissible attempt to "reargue a case." *Engler*, 146 F.3d at 374.

The Relator has not identified any intervening change or modification in the law or any newly discovered evidence which would justify reconsideration. Instead, the Motion to Reconsider essentially rehashes the same arguments presented in his brief that the Court has already spent extensive time and effort examining. The Relator posits that the Court's rejection of those arguments is "clear error" and "manifest injustice" but ultimately fails to proffer anything new. Relator claims that this Court's previous decision in *Dierig v. Lees Leisure Indus.*, No. 11-125-DLB-JGW, 2012 WL 669968 (E.D. Ky. Feb. 28, 2012) justifies reconsideration, but in *Lees*, this Court did not simply reconsider the same arguments previously presented, but instead allowed reconsideration after it was discovered that the Court had originally applied the incorrect standard in evaluating the existence of apparent agency for personal jurisdiction. Simply put, the Court applied the incorrect legal standard and thus reconsideration was necessary to prevent manifest injustice. In the present case, however, Relator does not argue that the Court applied the wrong law, but instead argues that the Court applied the law in the wrong way, or reached the wrong conclusion. This does not amount to a plea to correct manifest injustice, but a plea to reargue the case. Relator is not entitled to reconsideration as this is not a situation where reconsideration is sought due to an intervening change in the law or due to newly discovered evidence. Relator merely is unsatisfied with the Court's well-rationed ruling and seeks to reargue his point. It is well-settled that a Motion to Reconsider cannot be used for this purpose. As such, Relator fails to meet the standard for reconsideration and his Motion to Reconsider must be denied.

## II. **THE ORDER OF DISMISSAL WAS APPROPRIATE AND WITHOUT CLEAR LEGAL ERROR OR MANIFFEST INJUSTICE AS NEITHER FEDERAL NOR KENTUCKY STATE LAW MANDATE THAT RADIATION THERAPY DELIVERY BE SUPERVISED BY A RADIATION ONCOLOGIST.**

The Relator's claims of "clear legal error" and "manifest injustice" are baseless as the controlling Complaint's allegations that the Defendants violated the False Claims Act by billing for radiation therapy delivery services that were supervised by "non-qualified" physicians (i.e. physicians who were not radiation oncologists) were appropriately dismissed by this Court. The Court correctly noted that, to the extent that incident to standards even apply to radiation therapy delivery, they apply only to "auxiliary personnel" and not to supervising physicians. This interpretation was well founded in the regulations and the law, and was most certainly not "clear error." Second, the Motion to Reconsider fails inasmuch as it depends completely upon the incorrect foundation, set forth originally in Relator's Response to the Motion to Dismiss, that "Kentucky law" requires supervision of radiation therapy delivery services to be provided by a radiation oncologist. To that extent, Relator's entire premise of the Motion to Reconsider is unfounded as Kentucky law does not pose such a requirement. To the contrary, Kentucky law's supervision requirements essentially parrot those put forth in Florida and which were at issue in *United States v. Space Coast Med. Assocs., LLP*, 94 F. Supp. 3d 1250 (M.D. Fla. 2015), a case which this Court relied upon in granting the Motion to Dismiss. Given the fact that both Kentucky and Florida incorporate by reference the same ASRT Guidelines relied upon by Relator in his Response to the Motion to Dismiss, the Court's acceptance of *Space Coast*'s interpretation that supervision need only be performed by a physician in granting the Motion to Dismiss cannot be considered clear error. The Motion to Reconsider must be denied.

From the outset, the Defendants have contended that Relator's application of "supervision standards" of incident to services is inappropriate, given the fact that radiation therapy services are

specifically carved out of incident to standards.[1] This Court did not address the argument of whether the incident to standards even apply to radiation therapy services. Instead, the Court noted that if the standards were applied, the standards would not apply to the supervising physician, but to the auxiliary personnel who deliver the service.

The Court's refusal to extend incident to requirements to supervising physicians was absolutely appropriate and certainly not clear error. The Court's October 20th Order notes that while the Relator alleges that supervision by a radiation oncologist is required by law, "no statute or regulation is cited [by the Relator] for this proposition." [DN 76 at 11.] The Court correctly noted that the only articulated requirements were those set forth by CMS in its Medicare Benefits Policy Manual, which merely require that "[x]-ray, radium, and radioactive isotope therapy…require direct personal supervision of a physician." *Medicare Benefit Policy Manual*, Ch. 90 §15; [DN 76 at 11.]

The Court's Order noted that CMS required only supervision by a "physician" and not a more stringent requirement of supervision by a radiation oncologist. The Court further noted the Relator's lack of ability to cite any Federal statute or regulation that would establish his proposition that radiation therapy delivery must be supervised by a radiation oncologist, rather than a physician. Without any Federal authority to support narrowing CMS' stated supervision requirement, Relator instead urges that "Kentucky law" requires supervision by a radiation oncologist. Ironically, Kentucky's regulations, however, bolster the Court's ruling that incident

[1] The Defendants noted in their Reply in Support of Motion to Dismiss that physician supervision of radiation therapy does not meet the CMS definition of incident to services, which characterizes incident to services as those services "furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness." *Medicare Benefits Policy Manual* Ch. 15, §60.1. Radiation therapy is not recognized as a physician professional service and therefore supervision, while a requirement of reimbursement for the technical service, cannot be considered "part of the physician's personal professional services." Likewise, and despite Relator's protests to the contrary, radiation therapy services do have a separate benefit category under 42 USC §1395x(s)(4), which specifically exempts them from incident to services as set forth in 42 CFR §410.26(A)(8).

to requirements only apply to auxiliary personnel and not to the supervising physicians. As will be discussed more in-depth below, Relator relies heavily in his original Response to the Motion to Dismiss upon Kentucky's Administrative Regulations related to practice standards for radiation technicians, and most heavily upon the Regulations' incorporation of practice standards from the American College of Radiology and the American Society of Radiological Technologists. One of these regulations, 201 KAR 46:035, mandates that "A licensee shall only perform medical imaging or radiation therapy for diagnostic medical imaging or therapeutic purposes while under the direct or indirect supervision as specified by a licensee's practice standards, by a licensee's scope of practice. . . ." 201 KAR 46:035 §1. The Kentucky Administrative Regulations display a clear intention of application of practice standards to *the licensee*, and not the supervising physician, when it comes to incident to standards. Therefore, even the "Kentucky law" that Relator proposes to inflate the supervision standards imposed by CMS articulate their application only to the practice standards for auxiliary personnel, and not to and standards for a supervising physician.

The Motion to Reconsider lacks any substantive legal discussion supporting the notion that "Kentucky law" imposes a more stringent supervision requirement than that articulated by CMS, so the Relator's arguments on this point must be traced back to his Response to the Motion to Dismiss. In his Response, the Relator contends that "Kentucky law" mandates supervision of radiation therapy services be performed by radiation oncologists, rather than merely by a physician, as required by CMS. [DN 66 at 10-4.] Once again, Relator cannot cite any particular statute or regulation that directly makes such a mandate. To the contrary, the Relator cites 201 KAR 46:040 as requiring that radiation therapy delivery be performed "under the direct or indirect

supervision of a licensed practitioner of the healing arts."[2] [DN 66 at 12.] Relator thereafter claims that Kentucky's regulations incorporate by reference the standards set forth by the American College of Radiology ("ACR") and the American Society of Radiologic Technologists ("ASRT"). And it is from published guidance from these two organizations, and not any particular statute or regulation, that Relator bases his entire premise that "Kentucky law" requires supervision by a radiation oncologist. This position is fatally flawed for several reasons, and this Court's rejection of the contention was not erroneous.

First, and most importantly, the guidance set forth by the ACR and the ASRT does not require that supervision of radiation therapy be performed by a radiation oncologist. The Relator contends that the ACR and the ASRT creates standards of care which supersede CMS supervision requirements, but the very documents that he cites make it clear that this was never the intention of ACR or ASRT. Instead, the ACR notes that its "Practice Parameters and Technical Standards are not inflexible rules or requirements of practice" and the guidance in the paper "are not intended, nor should they be used, to establish a legal standard of care." [DN 66-1 at 1.] In fact, the Relator's utilization of the ACR's guidance to create a standard of care to utilize in FCA litigation is especially inappropriate given that the guidance makes clear that "the American College of Radiology and our collaborating medical specialty societies caution against the use of these documents in litigation." *Id.* Similarly, the ASRT guidance likewise did not supersede the supervision mandates placed by CMS in its Medicare Benefit Policy Manual. Instead, when articulating their standards in the guidance relied upon by the Relator, the ASRT noted that

---

[2] Relator's reference of 201 KAR 46:040 §1 appears to be incorrectly cited. The language cited by Relator relates instead to the scope of practice and practice standards for licensees who perform medical imaging and radiation therapy administration and is actually housed in 201 KAR 46:035.

"Federal and state laws, accreditation standards necessary to participate in government programs and lawful institutional policies and procedures supersede these standards." [DN 66-2 at 2.]

It is important to note that 201 KAR 46:035, and the relevant guidance set forth by the ACR or ASRT serve the limited purpose of establishing practice standards and scope of practice of medical imaging and radiology technicians. Neither the regulation nor the guidance of these academic entities exist to create any mandate as to requisite qualifications of physicians who supervise the technicians' service delivery, and they certainly do not exist to conflate CMS' articulated requirements for supervision. To the contrary, the ACR and ASRT instead recognize CMS' requirement that radiation therapy delivery need only be supervised by a physician, and not a radiation oncologist. With regard to the ASRT, their guidance recognizes that while administering radiation therapy treatment, it is the radiation therapy technician's duty to determine "when to contact the radiation oncologist *or licensed practitioner* regarding patient side effects or questions." [DN 73-2 at 25.] Thus the ASRT, in discussing practice standards for the technician, recognizes that the radiation therapy delivery could be supervised by either a radiation oncologist, or a licensed practitioner, such as CMS requires in the Medicare Benefit Policy Manual. In the same way, the ACR guidance that Relator relies upon was co-authored by the American Society for Radiation Oncology[3]. In fact, the guidance is described as being given "collaboratively" between ACR and ASTRO. To that extent, it is important to note that ASTRO has acknowledged explicitly that the supervision of radiation therapy delivery need not be performed by a radiation oncologist, but is merely required to be performed by "a physician." Specifically, ASTRO recognized: "Regarding clinical qualifications for the supervising provider of freestanding

[3] It is important to note that this guidance from ACR/ASTRO is not among the guidance recognized by 201 KAR 46:035 for establishing practice standards for licensees. Still, even if it were used for guidance, it still recognizes the supervision standards articulated in the CMS Medicare Benefit Policy Manual, without any inflation of CMS' standard.

radiation therapy services, CMS only indicates that direct personal supervision by a physician is required…*CMS does not explicitly state that a radiation oncologist must supervise radiation therapy.*" [DN 73-1 at 6.] Neither the ACR nor ASRT, nor any of their guidance, have the effect of, or intent to, supersede or otherwise inflate, CMS' requirement that supervision of radiation therapy delivery be performed by a physician.

The Motion to Reconsider, therefore, incorrectly assumes that "Kentucky law" mandates that radiation therapy delivery be supervised by a radiation oncologist. In delivering its Order, this Court relied upon *United States v. Space Coast Med. Assocs., LLP*, 94 F. Supp. 3d 1250 (M.D. Fla. 2015) in granting the dismissal of the claims in this case. In fact, *Space Coast* deals with the exact issue as the one at bar and is dispositive. The Relator claims that *Space Coast* is distinguishable because it was decided using Florida, and not Kentucky, law. Initially, it must be recognized that *Space Coast* contains no interpretation of any state law, but instead merely interprets the Medicare Benefit Policy Manual through its plain and unambiguous language. But even still, the Relator's argument for distinction falls flat in light of the fact that Florida, like Kentucky, incorporates by reference the ASRT guidelines that Relator relies upon within its regulations. Fla. Admin. Code R. 64E-3.002(9)(c). To that extent, the *Space Coast* Court reviewed an issue and a Complaint that was not only identical to the one at bar, but also an administrative structure and standards equal to those in this case as well. The fact that the Court relied upon the *Space Coast* Court's rationale in delivering its own opinion is patently dispositive that there has been no error in the Court's October 20th Order.

The Relator has failed to establish that there has been any clear error or manifest injustice that would necessitate reconsideration. Therefore the Order of Dismissal must stand.

## III. THE DISMISSAL OF THE SIMULATION CLAIMS SHOULD NOT BE RECONSIDERED.

The Relator also requests reconsideration of the Court's dismissal of the simulation claims. In doing so, however, the Relator does not cite any new grounds for reconsideration. Instead, the Relator relies entirely upon the same rationale of "Kentucky law" requiring a heightened level of supervision above that articulated in the Medicare Benefit Policy Manual. For the reasons set forth above, the Relator's entire rationale for reconsideration is fundamentally incorrect. The Court committed no error and Relator has suffered no manifest injustice. The Motion to Reconsider should be denied.

WHEREFORE, the Defendants respectfully request that the Motion to Reconsider be DENIED.

Respectfully submitted,

*/s/ Christopher A. Melton*

Christopher A. Melton
cmelton@wyattfirm.com
Jacob Eldemire Smith
jeldemiresmith@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202
Telephone: 502.589.5235

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the Parties.

*/s/ Christopher A. Melton*
Christopher A. Melton

61898044.1