**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ROBERT C. O'LAUGHLIN, M.D.** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICES, P.S.C., dba ASHLAND BELLEFONTE CANCER CENTER, et al.,** | ) | |
| **Defendants.** | ) | |

**REPLY OF RELATOR ROBERT O'LAUGHLIN, M.D. TO DEFENDANTS' RESPONSE TO RELATOR'S MOTION FOR RECONSIDERATION**

Robert C. O'Laughlin, M.D. ("Dr. O'Laughlin"), the Plaintiff and Relator acting through his undersigned attorney, respectfully submits the following this reply to the Response of the Defendants (Dkt. 81) to Dr. O'Laughlin's Motion ( the "Motion," Dkt. 77) seeking reconsider of this Honorable Court's Memorandum Opinion and Order (the "Memorandum" Doc. 76) granting in part and denying in part the Joint Motion of the Defendants to Dismiss the Amended Complaint (Doc. 58-2).

Dr. O'Laughlin limits this reply to new material raised by the Defendants in their response, and relies upon his prior Motion for Reconsideration (with memorandum) and his Opposition to Defendant's Motion to Dismiss (Dkt. 66) for refuting the Defendants' general arguments.

**Memorandum**

**A. The "Incident to" Provision**

The Defendants place significance reliance upon *United States v. Space Coast Med. Assocs., LLP,* 94 F. Supp. 3d 1250 (M.D. Fla. 2015), for their argument that radiation therapy services do not fall under the "incident to" provision of the Medicare Act and its regulations. But looking carefully at the reasoning in that case, it fails to support the Defendants' position.

The pertinent analysis in *Space Coast* is contained in a footnote:

> To establish a heightened requirement of "direct supervision" for the provision of radiation therapy services, Relators cite regulations that provide that "Medicare Part B pays for services and supplies incident to the service of a physician (or other practitioner)," but that generally the "[s]ervices and supplies must be furnished under the direct supervision of the physician (or other practitioner)." 42 C.F.R. § 410.26(b)(5). However, as Defendants point out, "services and supplies" in § 410.26 do not include radiation therapy because it is listed as a separate Medicare benefit. *See* 42 C.F.R. § 410.26(a)(7); 42 U.S.C. § 1395x(s)(4). Thus, the direct supervision requirement in § 410.26(b)(5) does not apply.

*Id.* at 1262 n. 17.

The Court in *Space Coast* erred: neither the statute, 42 U.S.C. § 1395x(s)(4), nor the regulation, 42 C.F.R. § 410.26(a)(7), that it cited lists radiation therapy as a separate Medicare benefit. Rather, each merely gives this term a separate *definition*. Indeed, 42 U.S.C. § 1395x(s) begins with the following phrase: "The term 'medical and other health services' *means* any of the following items or services . . . ." (Italics added.) And in their Response, the Defendants adopt this erroneous analysis, doing so in their own footnote (footnote one)—overlooking (or ignoring) that § 1395x(s) merely sets forth definitions and not benefit categories.

*Benefit categories* are listed elsewhere, specifically in 42 U.S.C. § 1395k. This statute lists benefits for individuals. Subsection 1395k(a) is captioned "Scope of Benefits," and its

introduction reads, "The benefits provided to an individual by the insurance program established by this part shall consist of . . . ."

The first paragraph of the statute, (a)(1), identifies a category for "medical and other health services." Defined in 42 U.S.C. § 1395x(s)(1), this category includes physician services, 42 U.S.C. § 1395x(s)(1); and x-ray therapy—including services of technicians, 42 U.S.C. § 1395x(s)(4). *Both* services fall into this single benefits category.

A second category of benefits that also addresses "medical and other health services," but that does *not include* physician services (with enumerated exceptions), is found in the next paragraph, 42 U.S.C. § 1395k(a)(2):

> (a)(2)(B) medical and other health services[1] (other than items described in subparagraph (G)[2] or subparagraph (I)[3]) furnished by a provider of services or by others under arrangement with them made by a provider of services, excluding—
>
> (i) physician services except where furnished by—
>
> (I) a resident or intern of a hospital, or
> (II) a physician to a patient in a hospital which has a teaching program . . . .

Put simply, physician services are excluded from this separate benefits category, unless they are services furnished by a hospital resident or intern, or by a physician in a hospital teaching program.

Nowhere in this statute—or elsewhere in the Act—is there a benefits category listing radiation therapy separately from "medical and other health services." It is the first benefits

[1] The definition of the term "medical and other health services" as used in this section is the same definition as found in 42 U.S.C. § 1395x(s). *See* 42 U.S.C. § 1395k(b).
[2] Durable medical equipment.
[3] Prosthetic devices and orthotic.

category, 42 U.S.C. §1395k(a)(1), that applies to this case, and both physician services and x-ray therapy are in this same category.

As further discussed below, this is not to say that x-ray therapy is not a physician service: all it means that the term "x-ray service" has its own definition, as a subcategory of physician services. 42 C.F.R. 414.2(5) expressly includes x-ray services of a technician in the definition of physician services.

**B. Florida v. Kentucky Law**

The Defendants argue that Florida law and Kentucky law are the same regarding the supervision of radiation technicians, in that that they both incorporate the same ASRT Guidelines that require a physician to supervise a radiation technician when the technician provides radiation therapy. The defendants cite Fla. Admin. Code R. 64E-3.002(9)(c) (2018) in reaching this conclusion. The Defendants further argue that *Space Coast* correctly applied the Florida Administrative Code, and thus the ASRT Guidelines, in its holding (that is, if that Court even considered them—an open question as the Court never mentioned them in its opinion). The implication of the Defendants' argument is that, if *Space Coast* correctly applied Florida law on this subject, then this Court should adopt the same conclusion when applying Kentucky law.

With regard to the similarities between the Florida and Kentucky requirements for the supervision and practice of a radiation technician, the Defendants are absolutely correct: the requirements are similar—***as of today.*** However, *the Florida requirements were amended in 2018*, while *Space Coast* was decided in 2015, *before* the amendments. The same provision of the 2012 version of the code, applicable in 2015, read in its entirety:

> (9) "Practice of radiologic technology" means the performance of activities requiring special knowledge and skills, including positioning, technique, safe operation of radiation equipment and radiation protection.

It made no reference to the ASRT Guidelines, and thus, unlike Kentucky law, did not incorporate these or any other guidelines.[4] A copy of this 2012 version of Fla. Admin. Code R. 64E-3.002(9) (2012) is included as an attachment to this Reply.[5] At the time that *Space Coast* was decided, Florida law governing radiation technicians differed significantly from that in Kentucky. At the time that *Space Coast* was decided, Florida law did not incorporate the ASRT Guidelines and its requirement that a radiation technician must be supervised by a radiation oncology, while Kentucky law did—contrary to the Defendants' assertion.

**C. Radiation Therapy is a Physician Service**

The Defendants assert—without authority—that "Radiation therapy is not recognized as a physician professional service and therefore supervision, while a requirement of reimbursement for the technical service, cannot be considered 'part of the physician's personal professional services.'" (Defendant's Response at 5 n. 1.) This is incorrect.

The Defendants confuse, on the one hand, the dichotomy for *billing purposes* between the professional and technical components of a service with, on the other hand, whether that service is considered to be a physician service (which is a condition for the "incident to" provision to be applicable[6]). Although radiation therapy may be provided by a qualified physician, it may alternatively be *delegated* by such physician to a technician *and* such technician must be supervised while performing the delegated service. Thus it qualifies as a physician service. *See*

[4] See Dr. O'Laughlin's Opposition to Motion to Dismiss at 10-14 (Dkt. 66) for a discussion of Kentucky's requirements.
[5] It can be downloaded at https://www.flrules.org/gateway/ruleNo.asp?id=64E-3.002.
[6] See Relator's Opposition to Motion to Dismiss at 5 *et seq*. (Dkt. 66).

42 C.F.R. § 414.2(5) (defining "physician services" to include X-ray therapy "including . . . [the] services of technicians").

This was explained in Dr. O'Laughlin's Opposition to the Defendants' Motion to Dismiss (Dkt. 66) at pages 7-9, where it is explained that X-ray therapies may be provided either by a physician, or by a technician under the supervision of a physician; and each such service has a "physician level" determining the required level supervision. The physician levels for X-ray therapies are either level "two" or a level "nine."[7] Level two requires the direct supervision of a qualified physician. Level nine indicates that "concept does not apply." Repeating the crucial language in Dr. O'Laughlin's Opposition

> The term "concept does not apply" for level 09 does not mean that a physician's participation in the service is *not required.* Instead, it means that the service cannot be split for reimbursement purposes into a physician-service component and a (separately billable) technical component performed by a technician or other professional. The physician can either perform the service him/herself, or delegate provision of the service to an appropriately qualified medical professional, *e.g.*, a radiation therapist (or technician), under his/her supervision. Either way, *only one charge* is reimbursable by CMS, payable as if it had been performed directly by the physician. *See* 42 C.F.R. § 414.34(b).

*Id.* at 9.[8]

Looking to the literature, the American Medical Association provides the following clarification[9]:

> According to the CPT code and CMS, the definition for an 09 level is "Concept does not apply", meaning the supervision requirements do not apply. This then can be interpreted as the physician has the discretion as to how the procedure is

---

[7] The physician level for simulations, among other x-ray therapy procedures, is level nine.

[8] *See* Medicare Claims Processing Manual Chap. 23 "Fee Schedule Administration and Coding Requirements"; and the "National Fee Schedule Relative Value File Calendar" published by CMS for each year (www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/PhysicianFeeSched/ PFS-Relative-Value-Files-Items/CMS1241243 (file RVUPUF11.docx).

[9] AMA-CPT Codes and CMS Regulations (footnotes omitted) at http://cbrpa.org/wp-content/uploads/2013/03/2013-AMA-CPTCodesCMSRegulations.pdf.

> performed and by whom. According to state physician licensing laws, the physician has the authority to delegate tasks and responsibilities to other health professionals, provided that individual has the educational background and competence to perform the duties. Hence, any 09 code procedures can be delegated by the physician.

Under CMS regulations, as we have elsewhere discussed, a competent technician can provide radiation therapy when he or she is supervised by a qualified physician. Under Kentucky law, as we have also discussed (above), these services can only be lawfully performed by a technician who is supervised by a *radiation oncologist* (or similarly qualified provider). Therefore, these services may only be billed to CMS when the technician is supervised by a radiation oncologist (or similarly qualified provider).

**D. Simulations**

We briefly turn to the medical necessity that simulations be supervised by a radiation oncologist or similarly qualified physician, as opposed to any physician; and we again look at the literature, specifically pertaining to the 77280 and 77290 codes for simulations. We find the following[10] (emphasis added):

> Simulation is a clinical process utilized to establish the radiation treatment portals to the specified treatment volume as determined by treatment planning. *The process of simulation can only be done by the radiation oncologist who has a complete knowledge of the location and extent of the patient's malignancy.* Simulation is utilized to establish each of the individual treatment portals to be directed to the area of treatment. Simulation is an intense procedural process. Following completion of simulation, the patient moves on to the clinical dosimetry.

The reason for requiring that a radiation oncologist must provide, or at least supervise, simulations is straight forward: for 77290 (complex simulation) and 77280 (simple simulation), it is crucial for the physician to actually see the patient in the body mold; make sure that it is made

---

[10] "Basic Principles of Billing, Coding & Compliance in Radiation Oncology," Carl R. Bogardus, Jr., M.D., BMSi Seminars (17th ed. Dec. 3, 2014).

correctly; and identify the area of the body to image on the CT scan. The physician has to be in the room to do this, and the radiation oncologist has to be present to assure patient safety. If a mistake is made with the initial patient set up for tissue irradiation, the error may not be identified until several weeks into treatment, resulting in harm to the patient. Radiation kills body tissue, and a misguided beam of radiation may seriously damage and kill the wrong tissue—and the patient.

By: /S/ Andrew Grosso
Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org

Attorney for Relator Robert C. O'Laughlin, M.D.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served upon the United States this 20th day of November, 2020, by Electronic Service to all counsel of record.

.

/S Andrew Grosso_
Andrew Grosso, Esq.