**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| ***ex rel.* ROBERT C. O'LAUGHLIN, M.D.** | ) | **FILED UNDER SEAL** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICES, P.S.C.,** | ) | |
| **dba ASHLAND BELLEFONTE CANCER** | ) | |
| **CENTER,** | ) | |
| **KIRTI K. JAIN, M.D., P.S.C., dba** | ) | |
| **HIGHLANDS CANCER CENTER,** | ) | |
| **A ONE BIZ SOLUTIONS, LLC,** | ) | |
| **KIRTI K. JAIN, M.D., and** | ) | |
| **MANISH JAIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## Preliminary Statement

This Complaint is based upon a scheme by the Defendants to bill the Medicare and Medicaid programs under false and fraudulent representations for radiation oncology and chemotherapy services.

The Defendants presented claims for payment for radiation oncology services, fraudulently representing that the services were provided (i) under the direct or personal supervision of qualified physicians, and (ii) by the actual physicians identified in those claims; however, in truth, and as the Defendants then knew, the physicians identified in the claims were *not* qualified to provide or supervise these services and did *not* directly or personally provide or supervise these services. Further, identified physicians were not even present on the premises when the radiation oncology services were provided to the patients; and claims misrepresented, by implication, that required

documentation for the services provided to patients had been prepared and maintained when they were not.

The claims for chemotherapy services likewise fraudulently represented that these services were rendered to patients by physicians; whereas in truth, as the Defendants then knew, the persons who provided these services were not physicians, but instead were nurse practitioners or physician assistants. In fact, the physicians identified in these claims were *not even present on the premises* when the chemotherapy services were provided.

The Relator, Robert O'Laughlin, M.D., through his undersigned counsel, acting for himself and on behalf of and in the name of the United States, brings this civil action under the *qui tam* provisions of the False Claims Act; and hereby alleges the following:

# I. BACKGROUND

## A. Jurisdiction and Venue

1. This Court has original jurisdiction over this Complaint pursuant to the federal False Claims Act, 31 U.S.C. § 3732(a); 28 U.S.C. § 1331; and 28 U.S.C. § 1345.

2. Many of the alleged acts occurred in the Eastern District of Kentucky; and the Defendant transacted business in Ashland and Prestonsburg, Kentucky, in the Eastern District of Kentucky, as the services upon which the claims at issue in this Complaint are based include services provided at the Ashland Bellefonte Cancer Center, in Ashland, and at the Highlands Cancer Center, in Prestonsburg. For these reasons, venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 31 U.S.C. § 3732(a).

## B. The Relator

3. Plaintiff Robert C. O'Laughlin, M.D. ("Robert O'Laughlin" or "Dr. O'Laughlin") is a citizen of the United States, a resident of Carlsbad, New Mexico, and a board-certified

Radiation Oncologist; he is bringing this suit for himself and in the name of, and on behalf of, the United States of America.

4. Dr. O'Laughlin has direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(e)(4)(B), of the information on which the allegations set forth in this Complaint are based, derived from his employment with the Defendants, beginning on or about July 2, 2012 and continuing until in or about October, 2015; and he provided the information upon which he bases his allegations in this Complaint to the United States before filing this Complaint.

5. None of the allegations set forth in this Complaint is based upon a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing; in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or in the news media.

## C. The Defendants and Co-Conspirator

### 1. Individuals

6. **Defendant Kirti K. Jain, M.D.** ("Dr. Kirti K. Jain," "Dr. K. Jain," or "K. Jain"), is a physician who is board certified in medical oncology and who practices medicine in the areas of blood and cancer care and internal medicine. At no time was Dr. Kirti K. Jain qualified to perform or to supervise radiation oncology services.

7. **Defendant Manish Jain** ("Manish Jain" or "Defendant M. Jain") was a manager at the Ashland Bellefonte Cancer Center and the Logan Cancer Center, LLC; and was a member and manager of A One Biz Solutions, LLC.

### 2. Ashland BCC

8. Defendant Radiation Therapy Services, P.S.C., dba Ashland Bellefonte Cancer Center ("Ashland BCC") is a Kentucky corporation with its principal offices located at 122 Saint

Christopher Drive, Ashland, Kentucky. The primary business of Ashland BCC is medical oncology, hematology, and the provision of radiation oncology services.

9. At all times pertinent to this Complaint, the following persons held the following positions with Ashland BCC:

(a) Dr. Kirti K. Jain was a Medical Oncologist and the facility director, and was the president, the vice president, the sole corporate director, and the sole shareholder;

(b) beginning in August 2014, Anshu K. Jain, M.D. ("Anshu Jain") was a Radiation Oncologist;

(c) Manish Jain was a business manager; and

(d) Dr. O'Laughlin was a radiation oncologist.

### 3. Highlands CC

10. Defendant Kirti K. Jain, M.D., P.S.C., dba Highlands Cancer Center ("Highlands CC") is a Kentucky corporation with its principal offices located at 4958 Kentucky Highway 321, Prestonsburg, Kentucky. The primary business of Highlands CC is medical oncology, hematology, and radiation oncology.

11. At all times pertinent to this Complaint, the following persons held the following positions with Highlands CC:

(a) Dr. Kirti K. Jain was a Medical Oncologist, and the president, the secretary, the vice president, the sole corporate director, and the sole shareholder;

(b) beginning in August 2014, Anshu Jain was a Radiation Oncologist; and

(c) Dr. O'Laughlin was a Radiation Oncologist.

#### 4. Logan CC

12. Co-conspirator Logan Oncology Care Associates, LLC, dba Logan Regional Cancer Center ("Logan CC") is a West Virginia corporation with its principal offices located at 601 Holden Road, Logan, West Virginia. The primary business of Logan CC is medical oncology, hematology, and radiation oncology.

13. At all times pertinent to this Complaint, the following persons held the following positions with Logan CC:

(a) Manish Jain was a manager;

(b) Robert Klein was a manager;

(c) beginning in August 2014, Anshu Jain was a Radiation Oncologist; and

(d) Dr. O'Laughlin was a Radiation Oncologist.

#### 5. A One Biz

14. Defendant A One Biz Solutions, LLC ("A One Biz") is a Florida limited liability company with its principal offices located at 17297 SW 36th Street, Miramar, Florida. The primary business of A One Biz was medical billing for medical service providers, including billing for services provided to patients by Ashland BCC, Highlands CC, and Logan CC.

15. From its formation in January 2005 until the present, the following persons have managed A One Biz: Gitika Bafna and Defendant Manish Jain.

16. From its inception until an unknown time in 2009 or in the first half of 2010, the following persons were also managers of A One Biz: Defendant Dr. Kirti K. Jain and Ramesh Gupta.

### D. Federal Health Insurance Programs

#### 1. The Medicare Program

17. At all times pertinent to this Complaint, the Social Security Act (Title 42, United States Code, Sections 1395 *et seq*.) was in full effect, and had established the Medicare program, which provides medical insurance benefits for individuals sixty-five years of age or older, or to disabled individuals, who are entitled to Social Security benefits (hereinafter "Medicare beneficiaries").

18. The United States Department of Health and Human Services ("HHS") is a department of the United States of America, the responsibilities of which at all times pertinent to this Complaint included the supervision and administration of the Medicare Program.

19. The Centers for Medicare and Medicaid Services ("CMS") is an agency of the HHS, the responsibilities of which at all times pertinent to this Complaint included the operation, administration and implementation of the Medicare Program.

20. The Medicare program, as amended, consists of several parts, including:

(a) Part A ("Medicare Part A"), which provides insurance for hospital services, hospital-related services, and services provided in non-hospital free-standing facilities for Medicare beneficiaries.

(b) Part B ("Medicare Part B"), which provides insurance for outpatient services, and for medical services provided by physicians and other providers to hospitalized Medicare beneficiaries.

(c) Part C ("Medicare Part C"), which enables CMS to contract with public and private organizations to offer health plan options to Medicare beneficiaries, including those known as "Medicare Advantage" plans. Medicare Advantage plans provide all Medicare Part A and Medicare Part B coverage, and generally offer additional benefits, such as vision, dental, and

hearing, and many include prescription drug coverage. Such plans often have networks, meaning that a beneficiary may have to see certain doctors and go to certain hospitals in the plan's network to receive care.

(d) Part D ("Medicare Part D"), which provides prescription drug benefits to persons who are eligible for benefits under Medicare Part A and who are enrolled in Medicare Part B, and provides coverage for persons who are eligible for both Medicare and Medicaid.

21. The United States reimburses Medicare claims from the Medicare Trust Fund through CMS, which in turn contracts the task of processing and paying Part B claims to private insurance carriers under 42 U.S.C. § 1395u. Those carriers, referred to by CMS as Medicare Administrative Contractors ("MACs") are also authorized to conduct audits to ensure that proper payments are made to suppliers of services. *See* 42 U.S.C. § 1395u(a)(1)(C); 42 C.F.R. § 421.200(e). Because of the volume of claims they must process, MACs generally pay providers' or suppliers' claims for services in the first instance based on the provider's or supplier's representations that the services are billable under the applicable Medicare coverage rules.

22. At all times relevant to this Complaint, HHS, through CMS, administered the Medicare Part B program as follows:

(a) in the Commonwealth of Kentucky through CGS Administrators, LLC ("CGS"), a MAC that processed and paid Medicare Part B claims on behalf of CMS; and

(b) in the State of West Virginia, through Palmetto GBA ("Palmetto") a MAC that processed and paid Medicare Part B claims on behalf of CMS.

**E. Medicaid and State Programs**

23. The Social Security Act, Title XIX, includes provisions for the Medicaid Program. It provides that each state must implement a plan for medical assistance, covering children and

blind, aged and disabled persons whose income and resources are insufficient to meet the costs of necessary care; and provides compensation to health care providers who provide medical services and items to recipients who are indigent.

24. Pursuant to 42 U.S.C. §§ 1396b(a) and 1396d(b), funding for the medical assistance programs of the states is partially provided by CMS.

25. Both Kentucky and West Virginia have medical assistance programs under the Medicaid program:

(a) The Kentucky Medical Program is administered by the Department of Medicaid Services of the Kentucky Cabinet for Health and Family Services. The program provides medical and health-related assistance to low-income individuals and families who have no medical insurance or have inadequate medical insurance. Generally, the program serves: persons aged 65 or older; blind or permanently disabled persons; members of families with dependent children; children in foster care homes; pregnant women; and individuals under age 21 in psychiatric hospitals. In order to qualify for this program, a person must be a resident of the state of Kentucky, a U.S. national, citizen or permanent resident in need of health care/insurance assistance, whose financial situation would be characterized as low income or very low income. If very low income, one must also be pregnant, have one or more children with a disability, or be responsible for children under the age of 19 years.

(b) The West Virginia Medicaid Program is administered by the Bureau for Medical Services, which in turn is administered by the West Virginia Department of Health and Human Resources. The program provides health insurance to beneficiaries of Supplemental Security Income ("SSI"); children under the age of 19; very low income persons and families; persons who are aged, blind, or disabled; and persons who are classified as medically needy.

26. For the purposes of this Complaint, the term "physician" means a licensed Doctor of Medicine or a Doctor of Osteopathic Medicine; it does *not* include a Nurse Practitioner or a Physician's Assistant.

**F. Radiation Oncology Services**

27. Radiation Oncology is the medical use of ionizing radiation, such as x-rays or radioactive implants, for the treatment of cancer. Radiation may be given for the purpose of curing a patient's cancer, either alone or in combination with surgery or chemotherapy, or both; or it may be used as a palliative measure, to relieve symptoms. Radiation oncology may also be used to treat benign tumors.

28. A Radiation Oncologist is a physician who is a trained specialist in the use of radiation for the treatment of cancer.

29. As used in this Complaint, the following terms have the following meanings:

(a) "Image Guided Radiation Therapy" or "IGRT" is the use of frequent, two and three-dimensional imaging, during a course of radiation treatment for the purpose of directing radiation therapy to its intended target;

(b) "Stereoscopic imaging" is a process by which two photographs of the same object taken at slightly different angles are viewed together, creating an impression of depth and solidity;

(c) "Parenchymal tissue" is the functional tissue of an organ, as distinguished from the connective and supporting tissue; and

(d) "Ablation" or "radiofrequency ablation" for cancer means a minimally invasive procedure that uses electrical energy and heat to destroy cancer cells.

30. The American Medical Association assigns and publishes numeric codes, known as Current Procedural Terminology ("CPT") and Health Care Financing Administration Procedure Coding System ("HCPCS") codes. The codes are a systematic listing of procedures and services performed by health care providers. The codes include radiation oncology and related services, and are based on complexity, supervision, and documentation requirements. Health care providers and health care benefit programs use CPT and HCPCS codes to describe and evaluate the services for which they claim, and such programs use these codes to decide whether to issue or deny payment. Each health care benefit program establishes a fee reimbursement for each procedure described by a CPT, HCPCS or other recognized code.

31. Among the codes in use during various periods of time pertinent to this Complaint for radiation oncology and related services are the following:

**TABLE I**

| Code | Procedure |
|---|---|
| 77014 | Computed tomography guidance for, and monitoring of, parenchymal tissue ablation |
| 77280 | Therapeutic radiology simulation-aided field setting; simple |
| 77290 | Therapeutic radiology simulation-aided field setting; complex |
| 77334 | Treatment Device Complex |
| 77413[1] | Radiation treatment, beam three or more areas 6-10 MeV |
| 77418[2] | Computed tomography guidance for placement of radiation therapy fields |

[1] This code was deleted and replaced with G6012 for service provided in a free-standing facility.

[2] This code was deleted effective January 1, 2015, and replaced with the following:

| Code | Procedure |
|---|---|
| 77421[3] | Stereoscopic X-ray guidance for localization of target volume for the delivery of radiation therapy |
| 77427 | Radiation Treatment Management, 5 treatments |
| 78812 | Tumor imaging, positron emission tomography (PET); skull base to mid-thigh |
| 78815 | Tumor imaging, positron emission tomography (PET); whole body |
| G6002 | Stereoscopic x-ray guidance for localization of target volume for the delivery of radiation therapy |
| G6013 | Radiation treatment delivery, 3 or more separate treatment areas, custom blocking, tangential ports, wedges, rotational beam, compensators, electron beam; 11-19 MeV |

32. The administration of a specific type of radiation therapy requires a specific level of supervisory or personal care by a qualified physician, that is, by a Radiation Oncologist or other "qualified radiation oncology physician."

33. This qualified physician supervision requirement is to ensure that the physician properly targets the diseased tissue to be treated by radiation; and the physician can implement real-time corrections to the imaging device at the time of treatment. Failure to render the required level of supervisory care makes such services less effective; increases the risk that adjacent and healthy tissue will be injured by radiation intended for diseased tissue; and renders such service non-reimbursable by federally-funded health care programs .

34. There are three levels of physician supervision recognized by CMS:

---

(a) Code G6015, which means intensity modulated treatment delivery, single or multiple fields/arcs, via narrow spatially and temporally modulated beams, binary, dynamic mlc, per treatment session); and

(b) Code G6018, which means compensator-based beam modulation treatment delivery of inverse planned treatment using 3 or more high resolution (milled or cast) compensator, convergent beam modulated fields, per treatment session.

[3] Deleted and replaced with G6002.

(a) *General Supervision*, which means that the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. Under general supervision, the training of the non-physician personnel who actually performs the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.

(b) *Direct Supervision*, which in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

(c) *Personal Supervision,* which means that a physician must be in attendance in the room during the performance of the procedure.

35. The level of supervision required by CMS in free-standing facilities, such as Ashland BCC, Highlands CC, and Logan CC, is stricter than that required by CMS in a hospital setting. Whereas CMS allows advanced practitioners, such as nurse practitioners or physician assistants, to provide supervision in hospital outpatient departments, a qualified physician is required to supervise the provision of these services in the free-standing setting. Also, CMS requires that the supervising physician in a free-standing facility be *actually present in the facility* when the services are rendered, and not merely "immediately available."

36. For some services, the physician has the authority to delegate tasks and responsibilities to other health professionals, provided that the delegee has the requisite educational background and competence to perform the duties.

37. Supervision of the administration of radiation therapy by a physician who is not qualified to provide these services is not considered by CMS or the Kentucky and West Virginia

Medicaid programs to be a reasonable or necessary professional service; and the provision of radiation therapy, including both the professional and the non-professional*, i.e.,* the technical component, is not reimbursable when it not supervised by a qualified physician, or when it is supervised by a non-qualified physician.

38. The supervision requirements of CMS also require that:

(a) The qualified radiation oncology physician, if not physically present in the radiation treatment center, must be immediately available by telephone or other electronic means of communication and must be able to receive and remotely review guidance images, allowing the qualified physician to provide advice and/or treatment modification before treatment is provided in situations requiring radiation oncology physician contact; and

(b) The qualified radiation oncology physician must review and approve guidance images that were produced prior to each daily treatment within 24 hours or prior to the next treatment delivery.

39. For radiation oncology services, the requirements for the level of supervision are in Table II, below, and are taken from the CMS Physician Fee Schedule. Here, the notation "Direct Supervision" means direct supervision by the treating physician; and the notation "Qualified Physician" means that the service may be delegated to, and performed by, a physician who is qualified to perform radiation oncology services:

**TABLE II**

| Code | Procedure | Supervision Level |
|---|---|---|
| 77014 | Computed tomography guidance for, and monitoring of, parenchymal tissue ablation | Qualified Physician |
| 77280 | Therapeutic radiology simulation-aided field setting; simple | Qualified Physician |

| Code | Procedure | Supervision Level |
|---|---|---|
| 77290 | Therapeutic radiology simulation-aided field setting; complex | Qualified Physician |
| 77334 | Treatment Device Complex | Qualified Physician |
| 77413 | Radiation treatment, beam three or more areas 6-10 MeV | Qualified Physician |
| 77418 | Computed tomography guidance for placement of radiation therapy fields | Qualified Physician |
| 77421 | Stereoscopic X-ray guidance for localization of target volume for the delivery of radiation therapy | Qualified Physician |
| 77427 | Radiation Treatment Management, 5 treatments | Direct Supervision |
| 78815 | PET with CT for Attenuation Correction skull base to mid-thigh[4] | Qualified Physician |
| G6002 | Stereoscopic x-ray guidance for localization of target volume for the delivery of radiation therapy | Qualified Physician |
| G6013 | Radiation treatment delivery, 3 or more separate treatment areas, custom blocking, tangential ports, wedges, rotational beam, compensators, electron beam; 11-19 MeV | Direct Supervision |

40. CPT Codes 77280, 77290 Codes refer to "Simulation," which is a clinical process used to establish the radiation treatment locations for the specified treatment volume (*i.e.,* the three dimensional area within the patient's body) as determined by treatment planning. The process of simulation can only be done by a qualified physician who has a complete knowledge of the location and extent of the patient's malignancy: the Radiation Oncologist who is treating the patient or another physician who is similarly qualified and who is treating the patient. Simulation is utilized to establish each of the individual locations to which the radiation is to be directed for the

[4] Tumor imaging, positron emission tomography (PET) with concurrently acquired computed tomography (CT) for attenuation correction and anatomical localization; skull base to mid-thigh.

treatment. Simulation is an intense procedural process. Following completion of simulation, the patient moves on to the application of the radiation itself.

## G. Billing and Documentation

41. At all times pertinent to this Complaint, the manner and means whereby the Defendants, at all three clinics, prepared and presented claims to CMS and other third-party payors was as follows:

(a) The initial record of the services provided to each patient was prepared and maintained in paper form, and placed into a folder for that patient;

(b) The information on these paper records was then entered by clinic personnel into a computer with the charges for each service;

(c) The resulting computer record was then electronically transmitted to A One Biz, which converted the information into a claim that it then submitted to CMS and other third-party payors;

(d) In so processing the information into a claim, A One Biz "scrubbed" or manipulated the information for the purpose of insuring that the claim would pass review by the Contractors regardless of whether the information provided by the clinics to A One Biz was accurate, truthful, complete, or misleading;

(e) Defendants Kirti K. Jain and Manish Jain purposely arranged for such scrubbing: both Defendants Kirti K. Jain and Manish Jain knew that the information was inaccurate, untruthful, incomplete, and misleading because Kirti K. Jain operated, managed, and directed the administrative operation of all three clinics, including the treatment of the internal billing records of patients and the schedules of medical doctors; and Manish Jain was a manager for both the Logan CC and A One Biz and was fully aware of Dr. Kirti K. Jain's directives;

(f) The information in the claims, including the statement dates, was made available to and known by the Defendants at or about the time the claims were presented for payment, and such information as relevant for this Complaint for sample patients, identified by "P Numbers," are included below.[5]

42. At all times pertinent to this Complaint the Contractors required that claims have the name and the National Provider Identifier (NPI) number of the treating practitioner listed on the claim for each service provided by that practitioner for that patient. This requirement was a precondition and was material for payment.

43. At all times pertinent to this Complaint, the Contractors required that the billing entity maintain documentation for the service provided to the patient, including the treating practitioner's notes. This requirement was a precondition and was material for payment. The required documentation included the following:

- A detailed itemization and supporting documentation for all services billed;
- Documentation of history of illness being treated;
- Documentation of physician involvement;
- Physician order(s) for treatment including current dosage;
- Documentation to support all services billed was provided, including dosimetry reports, physicist reports, simulation reports, and oncology reports;
- Documentation of each treatment billed;
- Copy of radiological report or physician's interpretation; and
- Documentation of any contrast material provided.

[5] The information taken from these records has been limited or redacted to prevent personal health and identifying information from being disclosed in the public court file.

**COUNT I**

**False Claims Regarding Patients Supposedly Treated by Robert C. O'Laughlin, M.D.**
**31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009)**

44. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three of this Complaint, and further alleges:

45. Beginning on or about July 2, 2012 and continuing until an unknown date after October, 2015 (the "First Relevant Period"), the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, Kirti K. Jain, M.D., and Manish Jain (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully presented and caused to be presented for payment or approval false and fraudulent claims to federally-funded federal health care programs, including the Medicare, Medicaid, Railroad Medicare, and TRICARE programs (the "Federal Programs").

46. During the First Relevant Period, the Defendants presented claims for payment to the federal programs for radiation oncology services supposedly provided to patients by Robert O'Laughlin, M.D. (the "O'Laughlin claims"):

(a) directly to CMS and indirectly to CMS through MACs and insurance carriers under contract with CMS for the administration of the Medicare and Railroad Medicare programs;

(b) directly to States, and indirectly to States through insurance contractors and carriers under contract with these States for the administration of the Medicaid and Medical Assistance programs, funded in part by CMS; and

(c) directly to the Department of Defense ("DOD"), and indirectly to DOD through United Healthcare, Humana Military, and Health Net, the contractors for the domestic administration of TRICARE.

47. Of the O'Laughlin claims, many were false and fraudulent, in that they stated that Dr. O'Laughlin provided, or supervised, the radiation oncology services billed in these claims, whereas in truth and in fact:

(a) Dr. O'Laughlin *did not* provide these services;

(b) Dr. O'Laughlin *did not* supervise the provision of these services; and

(c) the provision of these services was not delegated to  physician qualified to perform the radiation oncology services.

48. At all times pertinent to this Complaint, the aforesaid statements and representations were material to the payment of these claims, as CMS, DOD, and the carriers, MACs and contractors (collectively "Contractors") to which the Defendants presented the O'Laughlin claims, would not have made payment on these claims if they had known that (i) Dr. O'Laughlin neither provided or personally or directly supervised the provision of services underlying these claims; or, (ii) for appropriate services (identified above in Table II), the provision of these services had not been delegated and performed by another physician qualified to perform the radiation oncology services.

49. Among the Contractors to which the Defendants presented O'Laughlin claims that were false and fraudulent (the "false O'Laughlin claims"), and whether they were billed as the primary or second insurer, were the following as set forth in Table III, below:

**TABLE III**

| Contractor | Type | Primary | Secondary |
|---|---|---|---|
| Anthem BCBS MCR | Medicare Advantage | X | |
| Coventry Care of Kentucky (Aetna Better Health of Kentucky) | Kentucky Medicaid | X | X |
| Humana Gold Choice | Medicare Advantage | X | |
| Humana MCR | Medicare Advantage | X | |
| Kentucky Medicaid | Kentucky Medicaid | | X |
| Medicare | Medicare | X | |
| Ohio Medicaid | Medicaid | X | |
| Palmetto GBA-WV Medicare | Medicare | X | |
| Railroad Medicare | RR Medicare | X | |
| Unisys Medicaid | West Virginia Medicaid | X | |
| WellCare of Kentucky | Medicare | X | X |

50. All claims presented by the Defendants to Contractors were presented on or about the dates for which the services invoiced were provided, as those dates are further alleged in this Complaint.

## A. The Patients

### 1. Patient P-2 (Logan CC)

51. Among the false O'Laughlin claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-2"; and these claims were presented to Humana Gold Choice, which is a Medicare Advantage plan.

52. Among the services provided to Patient P-2 at Logan CC, and presented to Humana Gold Choice for payment, were the following as set forth in Table IV, below:

**TABLE IV**
**(Patient P-2)**

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **1** | Tuesday 12/16/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $215.79 | 1/30/15 |
| **2** | Wednesday 12/17/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/8/15 |
| **3** | Thursday 12/18/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $215.79 | 1/30/15 |
| **4** | Friday 2/19/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/8/15 |
| **5** | Monday 12/22/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/8/15 |
| **6** | Tuesday 12/23/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/8/15 |
| **7** | Wednesday 12/24/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/8/15 |
| **8** | Thursday 12/26/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $215.79 | 1/15/15 |
| **9** | Monday 12/29/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $215.79 | 1/22/15 |
| **10** | Tuesday 12/30/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $206.06 | 1/22/15 |
| **11** | Wednesday 12/31/14 | Beam 3 or More Areas 11 to 19 MeV | 77414 (G6013) | $650 | $215.79 | 1/15/15 |

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **12** | Monday 1/5/15 | Beam 3 or More Areas 11 to 19 MeV | G6013 | $650 | $194.55 | 1/22/15 |
| **13** | Tuesday 1/6/15 | Beam 3 or More Areas 11 to 19 MeV | G6013 | $650 | $219.05 | 1/22/15 |
| **14** | Wednesday 1/7/15 | Beam 3 or More Areas 11 to 19 MeV | G6013 | $650 | $219.05 | 1/22/15 |
| **TOTALS** | | | | **$9,100** | **$2,948** | |

53. At no time was Patient P-2 the patient of Dr. O'Laughlin; and at no time did Dr. O'Laughlin provide to Patient P-2 the services identified in the above Table IV and in the claims presented to Humana Gold Choice for these services.

54. At no time did Dr. O'Laughlin supervise, personally or directly, the provision of these services provided to Patient P-2.

55. At no time was the provision of these services provided to Patient P-2 delegated to, or performed by, a physician qualified to perform the radiation oncology services.

**2. Patient P-3**
**(Logan CC)**

56. Among the false O'Laughlin claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-3"; and these claims were presented to Humana MCR, which is a Medicare Advantage plan.

57. Among the services provided to Patient P-3 at Logan CC, and presented to Humana Gold Choice for payment, were the following as set forth in Table V, below:

**TABLE V**
**(Patient P-3)**

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **1** | Tuesday 1/13/15 | Simulation Complex | 77290 | $1,850 | $443.43 | 1/30/15 |
| **2** | | Treatment Device Complex | 77334 | $680 | $135.56 | |
| **3** | | CT Guidance for Placement of Rad Therapy Fields | 77014 | $350 | $79.40 | |
| **4** | Wednesday 1/28/15 | Simulation Simple | 77280 | $400 | $234.95 | 2/19/15 |
| **5** | | Multileaf Collimator Device IMRT | 77338 | $1,000 | $451.89 | |
| **6** | Thursday 1/29/15 | Intensity Modulated Treatment Delivery Single or Multiple Fields | G6015 | $1,000 | $341.79 | 2/19/15 |
| **7** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **8** | Friday 1/30/15 | Intensity Modulated Treatment Delivery Single or Multiple Fields | G6015 | $1,000 | $341.79 | 2/19/15 |
| **9** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **10** | Monday 2/2/15 | Intensity Modulated Treatment Delivery Single or Multiple Fields | G6015 | $1,000 | $341.79 | 2/19/15 |
| **11** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **12** | Tuesday 2/3/15 | Intensity Modulated Treatment Delivery Single or Multiple Fields | G6015 | $1,000 | $341.79 | 2/19/15 |
| **13** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **14** | Wednesday | Intensity Modulated Treatment Delivery | G6015 | $1,000 | $341.79 | 2/4/15 |

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| | 2/4/15 | Single or Multiple Fields | | | | |
| **15** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **16** | Thursday 2/5/15 | Intensity Modulated Treatment Delivery Single or Multiple Fields | G6015 | $1,000 | $341.79 | 2/19/15 |
| **17** | | Stereoscopic X Ray Guidance | G6002 | $236 | $65.84 | |
| **TOTALS** | | | | **$11,696** | **$3,791** | |

58. At no time was Patient P-3 the patient of Dr. O'Laughlin; and at no time did Dr. O'Laughlin provide to Patient P-3 the services identified in the above Table V and in the claims presented to Humana Gold Choice for these services.

59. At no time did Dr. O'Laughlin supervise, personally or directly, the provision of these services provided to Patient P-3.

60. At no time was the provision of these services provided to Patient P-3 delegated to, or performed by, a physician qualified to perform the radiation oncology services.

### 3. Patient P-10 (Ashland BCC)

61. Among the false O'Laughlin claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-10"; and these claims were presented to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky.

62. Among the services provided to Patient P-10 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following as set forth in Table VI, below:

**TABLE VI**
**(Patient P-10)**

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **1** | Monday9/8/14 | CT Guidance for Placement of Rad Therapy Fields | 77014 | $350 | $122.66 | 9/25/14 |
| **2** | | Simulation Field Complex | 77290 | $1,250 | $250.29 | |
| **3** | | Treatment Device Complex | 77334 | $680 | $144.80 | |
| **4** | Tuesday9/9/14 | Simulation Field Simple | 77280 | $400 | $127.95 | 10/30/14 |
| **5** | | Treatment Device Complex | 77334 | $1,360 | $288.59 | |
| **6** | | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | |
| **7** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **8** | Friday, 9/12/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 9/30/14 |
| **9** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **10** | Friday 9/19/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 10/9/14 |
| **11** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **12** | Monday 9/22/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 10/9/14 |
| **13** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **14** | Tuesday 9/23/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 10/9/14 |
| **15** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **16** | Thursday 9/25/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 10/9/14 |
| **17** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **18** | Friday 9/26/14 | Beam 3 or More Areas 6 to 10 MeV | 77413 (G6012) | $450 | $188.42 | 10/16/19 |
| **19** | | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $106.84 | |
| **TOTALS** | | | | **$8,842** | **$3,001.11** | |

63. At no time was Patient P-10 the patient of Dr. O'Laughlin; and at no time did Dr. O'Laughlin provide to Patient P-10 the services identified in the above Table and in the claims presented to Humana Gold Choice for these services.

64. At no time did Dr. O'Laughlin supervise, personally or directly, the provision of these services provided to Patient P-10.

65. At no time was the provision of these services provided to Patient P-10 delegated to, or performed by, a physician qualified to perform the radiation oncology services.

#### 4. Patient P-12
#### (Highlands CC)

66. Among the false O'Laughlin claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-12"; and these claims were presented to Medicare as this patient's primary insurer; and to Kentucky Medicaid as this patient's secondary insurer.

67. Among the services provided to Patient P-12 at Highlands CC, and presented to Medicare and Kentucky Medicaid for payment, were the following, as set forth in Table VII, below:

**TABLE VII**
**(Patient P-12)**

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **1** | Thursday 11/27/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $36.95 | 12/18/14 |
| **2** | | Intensity Modulated Treatment Delivery Single or Multiple | 77418 (G6015) | $1,000 | $270.10 | |
| **3** | Monday 12/1/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $36.95 | 12/16/14 |
| **4** | | Intensity Modulated Treatment Delivery Single or Multiple | 77418 (G6015) | $1,000 | $270.10 | |
| **5** | Friday 12/5/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $36.95 | 12/22/14 |

| Service | Date of Service | Service | Code | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|
| **6** | | Intensity Modulated Treatment Delivery Single or Multiple | 77418 (G6015) | $1,000 | $270.10 | |
| **7** | Wednesday 12/10/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | $236 | $36.95 | 12/29/19 |
| **8** | | Intensity Modulated Treatment Delivery Single or Multiple | 77418 (G6015) | $1,000 | $270.10 | |
| **TOTALS** | | | | **$4,944** | **$1,228.20** | |

68. At no time was Patient P-12 the patient of Dr. O'Laughlin; and at no time did Dr. O'Laughlin provide to Patient P-12 the services identified in the above Table and in the claims presented to Humana Gold Choice for these services.

69. At no time did Dr. O'Laughlin supervise, personally or directly, the provision of these services provided to Patient P-12.

70. At no time was the provision of these services provided to Patient P-12 delegated to, or performed by, a physician qualified to perform the radiation oncology services.

**B. The Claims**

71. During a period beginning on or about July 2, 2012 and continuing until an unknown date after October, 2015, the Defendants, acting directly and in concert with each other, knowingly presented and caused to be presented to these and additional Contractors false and fraudulent claims for the above-specified services, and additional claims for (a) additional services for the above-specified patients, and (b) services for other patients, with all additional claims, services, patients, and Contractors to be identified at trial.

72. All of the aforesaid claims were false and fraudulent in that each such claim certified, expressly or impliedly:

(a) that Dr. O'Laughlin provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. O'Laughlin *did not* provide these services to these patients;

(b) that Dr. Dr. O'Laughlin personally or directly supervised the provision of these services provided to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. O'Laughlin *did not* personally or directly supervise the provision of these services;

(c) that a physician qualified to perform the radiation oncology services ("qualified physician") provided or supervised these services for these patients, whereas in truth and in fact, as the Defendants then well knew, these services were neither provided nor supervised by a physician qualified to perform the radiation oncology services;

(d) that a qualified physician, if not physically present in the clinic, was immediately available by telephone or other electronic means of communication, and was able to receive and remotely review guidance images allowing that physician to provide advice and/or treatment modification before treatment was provided, whereas in truth and in fact, as the Defendants then well knew, no qualified physician was immediately available by telephone or other electronic means of communication, nor was able to receive and remotely review guidance images allowing that physician to provide advice and/or treatment modification before treatment was provided; and

(e) that a qualified physician reviewed and approved guidance images produced prior to each daily treatment within 24 hours or prior to the next treatment delivery, whereas in truth and in fact, as the Defendants then well knew, no qualified physician reviewed or

approved guidance images produced prior to each daily treatment within 24 hours or prior to the next treatment delivery.

73. Each claim presented to a Contractor on behalf of each the Defendants was prepared by or under the direction of Manish Jain of A One Biz in Miramar, Florida, and presented by A One Biz electronically or by U.S. Mail to the Contractor providing insurance or benefits for the patient who received the services identified on the claim.

74. Each such claim would be and was paid in whole or in part from funds provided by CMS, an agency of the United States; or by DOD, a department of the United States.

75. Each such presentment, and each instance of causing the presentment, of the aforesaid claims by the Defendants was in violation of 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009).

76. As a result of these false claims, the United States suffered actual damages.

## COUNT II

### False Statements Regarding Patients Supposedly Treated by Robert C. O'Laughlin, M.D. 31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009)

77. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three and paragraphs forty-five through seventy-six of this Complaint, and further alleges:

78. Beginning on or about July 2, 2012, and continuing until an unknown date after October, 2015, the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), LLC, Kirti K. Jain, M.D., and Manish Jain (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully made and used, and caused to be made and used, false records and statements material to the above described false and fraudulent claims.

79. Among the aforesaid false statements, which were material to the Contractors for payment of claims, were the following:

(a) that Dr. O'Laughlin provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. O'Laughlin *did not* provide these services to these patients;

(b) that Dr. O'Laughlin was the treating practitioner for these patients, whereas in truth and in fact, and the Defendants then well knew, Dr. O'Laughlin *was not* the treating practitioner for these patients;

(c) that Dr. O'Laughlin personally or directly supervised the provision of these services provided to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. O'Laughlin *did not* personally or directly supervise the provision of these services; and

(d) that a physician qualified to perform the radiation oncology services provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, these services *were not* provided by a physician qualified to perform the radiation oncology services.

80. Among the aforesaid false records were the following:

(a) patient charts and files that contained the aforesaid false statements;

(b) patient billing summaries that contained the aforesaid false statements; and

(c) claims that contained the aforesaid false statements.

81. Each such statement and record for each patient was prepared by or under the direction of Dr. Kirti K. Jain, and by the administrative personnel within the facility where each patient had received the services for which the claims were presented.

82. Each such making and use of, and each instance of causing to be made and used, the aforesaid statements and records by the Defendants was in violation of 31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009).

83. As a result of these false statements and records, the United States suffered actual damages.

## COUNT III

### False Claims Regarding Patients Supposedly Treated by Named Physicians
### 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009)

84. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, and paragraph forty-nine of this Complaint, and further alleges:

85. Beginning in or about an unknown date prior to July 2012, and continuing until an unknown date after October, 2015 (the "Second Relevant Period"), the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), Logan Oncology Care Associates, LLC (dba Logan Regional Cancer Center), A One Biz Solutions, LLC, Kirti K. Jain, M.D., and Manish Jain (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully presented and caused to be presented for payment or approval false and fraudulent claims to federally-funded federal health care programs, including the Medicare, Medicaid, Railroad Medicare, and TRICARE programs (the "Federal Programs").

86. During the Second Relevant Period, the Defendants presented claims to the Federal Programs for radiation oncology services supposedly provided to patients by physicians who were, in fact, *not* present in the facilities where these services were supposedly rendered (the "Absent Physician claims"):

(a) directly to CMS and indirectly to CMS through MACs and insurance carriers under contract with CMS for the administration of the Medicare and Railroad Medicare programs;

(b) directly to States, and indirectly to States through insurance contractors and carriers under contract with these States for the administration of the Medicaid and Medical Assistance programs, funded in part by CMS; and

(c) directly to DOD, and indirectly to DOD through United Healthcare, Humana Military, and Health Net, the contractors for the domestic administration of TRICARE.

87. Of the Absent Physician claims, many were false, being so on their face, in that they stated that a particular physician (each, a "Named Physician") provided, or supervised, services billed in these claims, whereas in truth and in fact:

(a) such Named Physician did not provide these services;

(b) such Named Physician did not supervise the provision of these services; and

(c) such Named Physician was neither on the premises nor scheduled to be in the facility where these services were provided, and was not available at such facility to provide personal or direct supervision

88. In addition to being false, many of the Absent Physician claims were fraudulent, in that they represented that a qualified physician provided, or supervised, services billed in these claims, whereas in truth and in fact:

(a) no qualified physician provided these services;

(b) no qualified physician supervises the provision of these services; and

(c) no qualified physician was on the premises, or scheduled to be in the facility where these services were provided, and was not available at such facility to provide personal or direct supervision.

89. The Defendants made the above false and fraudulent statements and representation in the Absent Physician claims to purposely conceal and cover-up from the Contractors to whom

the Defendants presented, or caused to be presented these claims the fact that no qualified physician provided or supervised the services identified in these claims for which payment was sought.

90. At all times pertinent to this Complaint, the aforesaid statements and representations were material to the payment of these claims, as the Contractors to which the Defendants presented the Absent Physician claims would not have made payment on these claims without: the Named Physician, or another qualified physician, either providing, or personally or directly supervising these claims, and being in or available at the facility where the services were provided.

91. Among the Contractors to which the Defendants presented Absent Physician claims that were false and fraudulent, and whether they were billed as the primary or second insurer, were those Contractors identified in Table III of paragraph forty of this Complaint.

92. All claims presented by the Defendants to Contractors were presented on or about the dates that the services invoiced had been provided.

## A. The Patients

### 1. Patient P-10 (Ashland BCC)

93. Among the Absent Physician claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-10"; and these claims were presented to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky.

94. Among the services provided to Patient P-10 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following as set forth in Table VIII, below:

**TABLE VIII**
**(Patient P-10)**

| Service | Date | Service | Code | Named Physician | Actual Physician Location | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|---|
| **1** | Friday 12/6/13 | PET with CT for Attenuation CORR | 78815 | K. Jain | Highlands | $5,000 | $2,247.00 | 1/3/14 |
| **2** | Monday 1/27/14 | PET with CT for Attenuation CORR | 78815 | K. Jain | Highlands | $5,000 | $2,247.00 | 2/10/14 |
| **3** | Monday 4/28/14 | PET with CT for Attenuation CORR | 78815 | K. Jain | Highlands | $5,000 | $2250.00 | 5/14/14 |
| **4** | Monday 9/8/14 | Simulation Field Comp | 77290 | O'Laughlin | Logan | $1,250 | $250.29 | 9/25/14 |
| **5** | Monday, 9/8/14 | Treatment Device Complex | 77334 | O'Laughlin | Logan | $680 | $144.80 | 9/25/14 |
| **6** | Tuesday 9/9/14 | Simulation Field Simple | 77280 | O'Laughlin | Logan | $400 | $127.95 | 10/30/14 |
| **7** | Tuesday 9/9/14 | Treatment Device Complex | 77334 | O'Laughlin | Logan | $360 | $289.59 | 10/30/14 |
| **8** | Tuesday 9/9/14 | Beam 3 or more areas 6-10 MeV | 77413 (G6012) | O'Laughlin | Logan | $450 | $188.42 | 10/30/14 |
| **9** | Tuesday 9/9/14 | Stereoscopic X-ray Guidance | 77421 (G6002) | O'Laughlin | Logan | $236 | $106.84 | 10/30/14 |
| **TOTALS** | | | | | | **$18,376** | **$7,851.89** | |

95. Neither the Named Physician, nor any qualified physician, provided or personally or directly supervised the described services provided to Patient P-10 identified in the above Table and in the claims presented to WellCare of Kentucky for these services.

96. Neither the Named Physician, nor any qualified physician, was either on the premises, or near the facility, where the described services were provided to Patient P-10; and did not see the patient when these services were provided.

### 2. Patient P-12 (Highlands CC)

97. Among the Absent Physician claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-12"; and these claims were presented to Medicare.

98. Among the services provided to Patient P-12 at Highlands CC, and presented to Medicare for payment, were the following as set forth in Table IX, below:

**TABLE IX**
**(Patient P-12)**

| Item | Date | Service | Code | Named Physician | Actual Physician Location | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|---|
| **1** | Monday 12/1/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | O'Laughlin | Logan | $236 | $36.95 | 12/16/14 |
| **2** | Monday 12/1/14 | Intensity Modulated | 77418 (G6015) | O'Laughlin | Logan | $1,000 | $270.10 | 12/16/14 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Treatment Delivery | | | | | | |
| **3** | Friday 12/5/14 | Stereoscopic X Ray Guidance for Localization of Target V | 77421 (G6002) | O'Laughlin | Ashland or Not Present | $236 | $36.95 | 12/22/14 |
| **4** | Friday 12/5/14 | Intensity Modulated Treatment Delivery | 77418 (G6015) | O'Laughlin | Ashland or Not Present | $1,000 | $270.10 | 12/22/14 |
| **TOTALS** | | | | | | **$2,472** | **$614.10** | |

99. Neither the Named Physician, nor any qualified physician, provided or personally or directly supervised the described services provided to Patient P-12 identified in the above Table and in the claims presented to Medicare for these services.

100. Neither the Named Physician, nor any qualified physician, was either on the premises, or near the facility, where the described services were provided to Patient P-10; and did not see the patient when these services were provided.

**3. Patient P-14**
**(Ashland BCC)**

101. Among the Absent Physician claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-14"; and these claims were presented to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky.

102. Among the services provided to Patient P-14 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following as set forth in Table X, below:

**TABLE X**
**(Patient P-14)**

| Item | Date | Service | Code | Named Physician | Actual Physician Location | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|---|
| **1** | Friday 3/7/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $2,250.00 | 3/27/14 |
| **2** | Monday 5/5/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $2,250.00 | 5/21/14 |
| **3** | Monday 6/9/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $0.00 | 7/29/14 |
| **4** | Friday 6/27/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $2,250.00 | 7/17/14 |
| **TOTALS** | | | | | | **$20,000** | **$6,750** | |

103. Neither the Named Physician, nor any qualified physician, provided or personally or directly supervised the described services provided to Patient P-14 identified in the above Table and in the claims presented to WellCare of Kentucky for these services.

104. Neither the Named Physician, nor any qualified physician, was either on the premises, or near the facility, where the described services were provided to Patient P-14; and did not see the patient when these services were provided.

**4. Patient P-15**
**(Ashland BCC)**

105. Among the Absent Physician claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-15"; and these claims were presented to Medicare as her primary insurer, and to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky, as her secondary insurer.

106. Among the services provided to Patient P-15 at Ashland BCC, and presented to Medicare and to WellCare of Kentucky for payment, were the following as set forth in Table XI, below:

**TABLE XI**
**(Patient P-15)**

| Service | Date | Service | Code | Named Physician | Actual Physician Location | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|---|
| **1** | Friday 1/10/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $2,247.00 | 1/31/15 |
| **2** | Friday 4/11/14 | PET with CT for attenuation correction | 78815 | K. Jain | Highlands | $5,000 | $2,250.00 | 4/30/14 |
| **TOTALS** | | | | | | **$10,000** | **$4,497.00** | |

107. Neither the Named Physician, nor any qualified physician, provided or personally or directly supervised the described services provided to Patient P-15 identified in the above Table and in the claims presented to Medicare and to WellCare of Kentucky for these services.

108. Neither the Named Physician, nor any qualified physician, was either on the premises, or near the facility, where the described services were provided to Patient P-15; and did not see the patient when these services were provided.

## B. The Claims

109. During a period beginning on an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants, acting directly and in concert with each other, knowingly presented and caused to be presented to these and additional Contractors

false and fraudulent claims for the above-specified services, and additional claims for (a) additional services for the above-specified patients, and (b) services for other patients, with all additional claims, services, patients, and Contractors to be identified at trial.

110. All of the aforesaid claims were false and fraudulent in that each such claim certified, expressly or impliedly:

(a) that a particular, Named Physician, or some qualified physician, provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, neither such Named Physician nor a qualified physician provided these services to these patients, and nor was such a physician on the premises or near the facility where the services were provided; and

(b) that the particular Named Physician, or such qualified physician, personally or directly supervised these services provided to these patients, whereas in truth and in fact, as the Defendants then well knew, neither such Named Physician nor a qualified physician personally or directly supervised these services.

111. Each such claim was prepared by or under the direction of Manish Jain of A One Biz in Miramar, Florida, and presented by A One Biz electronically or by U.S. Mail to the Contractor providing insurance or benefits for the patient who received the services identified on the claim.

112. Each such claim would be and was paid in whole or in part from funds provided by CMS, an agency of the United States, or by DOD, a department of the United States.

113. Each such presentment, and each instance of causing the presentment, of the aforesaid claims by the Defendants was in violation of 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009).

114. As a result of these false claims, the United States suffered actual damages.

**COUNT IV**

**False Statements Regarding Patients Supposedly Treated by Named Physicians**
**31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009)**

115. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, paragraph forty-nine, and paragraphs eighty-five through one hundred twelve of this Complaint, and further alleges:

116. Beginning on an unknown date in or prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, Kirti K. Jain, M.D., and Manish Jain (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully made and used, and caused to be made and used, false records or statements material to the above described false and fraudulent claims.

117. Among the aforesaid false statements for the Absent Physician claims were that a particular physician (the "Named Physician") provided or supervised services billed in these claims, whereas in truth and in fact:

(a) neither such Named Physician, nor any qualified physician, provided these services;

(b) neither such Named Physician, nor any qualified physician, supervised these services; and

(c) neither such Named Physician, nor any qualified physician, was on the premises, or scheduled to be in the facility where these services were provided, or available to provide personal or direct supervision.

118. Among the aforesaid false records were the following:

(a) patient charts and files that contained the aforesaid false statements;

(b) patient billing summaries that contained the aforesaid false statements; and

(c) claims that contained the aforesaid false statements.

119. Each such statement and record was prepared by or under the direction of Dr. Kirti K. Jain, and by the administrative personnel within the facility where each patient for each such statement and record had purportedly received the services for which claims were presented.

120. Each such making and use, and each instance of causing to be made and used, of the aforesaid statements and records by the Defendants was in violation of 31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009).

121. As a result of these false statements and records, the United States suffered actual damages.

## COUNT V

### False Claims Regarding Chemotherapy Patients Not Treated by Physicians
### 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009)

122. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, and paragraph forty-nine of this Complaint, and further alleges:

123. At all times pertinent to this Complaint, payment made by federal programs for a service performed by either a physician's assistant ("PA") or a nurse practitioner ("NP") (collectively, "NPP's") was no more than eighty-five percent (85%) of the amount payable to a physician if the service had been performed by a physician. 42 C.F.R. §§ 405.520(a), 414.52, 414.56.

124. Beginning in or on an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015 (the "Third Relevant Period"), the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, and Kirti K. Jain, M.D. (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully presented and caused to be presented for payment or approval false and fraudulent claims to federally funded federal health care programs, including the Medicare, Medicaid, Railroad Medicare, and TRICARE programs (the "Federal Programs").

125. During the Third Relevant Period, the Defendants presented claims to the Federal Programs, stating and otherwise representing that services included in these claims had been

provided to patients by physicians, whereas, in truth and in fact, such services had been provided by NPPs and *not* by physicians (the "NPP claims"):

(a) directly to CMS and indirectly to CMS through MACs and insurance carriers under contract with CMS for the administration of the Medicare and Railroad Medicare programs;

(b) directly to States, and indirectly to States through insurance contractors and carriers under contract with these States for the administration of the Medicaid and Medical Assistance programs, funded in part by CMS; and

(c) directly to DOD, and indirectly to DOD through United Healthcare, Humana Military, and Health Net, the contractors for the domestic administration of TRICARE.

126. At all times pertinent to this Complaint, the aforesaid representations were material to the payment of the NPP claims, as the Contractors to which the Defendants presented these claims would not have made payment in the amounts that they actually paid had they known that the services had been provided to patients by NPPs and not by physicians.

127. Among these services was the provision of chemotherapy, including the following:

**TABLE XII**

| Code | Treatment |
|---|---|
| 96365 | IV Infusion Initial Drug up to 1 hour |
| 96367 | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour |
| 96375 | IV Push Each Additional Sequential Drug |
| 96413 | Chemo IV Infusion Single Initial Drug Initial Hour |
| 96415 | Chemo IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour |
| 96416 | Initiation of Prolonged Chemotherapy 8 hours |
| 96417 | Chemo IV Infusion Each Additional hour up to 8 hours |

| Code | Treatment |
|---|---|
| J1100 | Injection Decadron 1 mg |
| J1626 | Injection, Kytril 100 mcg |
| J1642 | Injection, Heparin Sodium |
| J2469 | Injection, Aloxi 25 mcg |
| J2820 | Injection, Leukine, 50 mg |
| J3489 | Zolendronic Acid 1 mg |
| J9000 | Injection, Adriamycin, 10 mg |
| J9035 | Injection, Avastin 50 mcg |
| J9045 | Injection, Paraplatin 50mg |
| J9178 | Injection, Epirubicin hcl, 2 mg |
| J9190 | Injection, Fluoracil, 500 mg |
| J9263 | Injection, Oxaliplatin, 0.5 mg |
| J9265 (J9267) | Paclitexel 30 mg |
| J9181 | Injection, Etoside 10 mg |
| J9351 | Injection, Topotecan, 0.1 mg |

128. Among the Contractors to which the Defendants presented NPP claims that were false and fraudulent, and whether they were billed as the primary or second insurer, were those identified in Table III of paragraph forty of this Complaint.

129. All claims presented by the Defendants to Contractors were presented on or about the dates that the services invoiced had been provided.

## A. The Services

### 1. Patient P-10 (Ashland BCC)

130. Among the false NPP claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-10"; and these claims

were presented to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky.

131. Among the services provided to Patient P-10 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following chemotherapy services, fraudulently represented as having been provided by Kirti K. Jain, M.D. but which were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner, as described in Table XIII, below:

**TABLE XIII**
**(Patient P-10)**

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **1** | Monday 3/31/14 | Injection, Aloxi 25 mcg | J2469 | Highlands | $937.50 | $412.70 | 5/14/14 |
| **2** | | Injection, Etoside 10 mg | J9181 | Highlands | $500 | $85.49 | |
| **3** | | Injection, Paraplatin 50mg | J9045 | Highlands | $5,740 | $75.27 | |
| **4** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **5** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **6** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |
| **7** | | IV Push Each Additional Sequential Drug | 96375 | Highlands | $82 | $39.12 | |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **8** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $75 | $32.61 | |
| **9** | Wednesday 4/2/14 | Injection, Etoside 10 mg | J9181 | Highlands | $500 | $85.49 | 5/6/14 |
| **10** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **11** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $75 | $32.61 | |
| **12** | Monday 6/16/14 | Injection Decadron 1 mg | J1100 | No Appointments | $125 | $56.25 | 12/10/14 |
| **13** | | Injection, Topotecan, 0.1 mg | J9351 | No Appointments | $6,800 | Pending | |
| **14** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | No Appointments | $323 | $143.62 | |
| **15** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | No Appointments | $120 | $55.62 | |
| **16** | Wednesday 7/16/14 | Injection Decadron 1 mg | J1100 | Highlands | $125 | $56.25 | 1/8//15 |
| **17** | | IV Infusion Initial Drug up to 1 hour | 96365 | Highlands | $117 | $56.85 | |
| **18** | | IV Infusion Each Addition Sequence Infused Chemo | 96367 | Highlands | $60 | $27.81 | |

| Ser vice | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| | | Drug up to 1 hour | | | | | |
| **19** | | Injection, Kytril 100 mcg | J1626 | Highlands | $487.50 | $46.35 | |
| **TOTALS** | | | | | **$17,124** | **$1,676.77** | |

132. The amounts specified in Table XIII for the described services were charged to WellCare of Kentucky.

133. Dr. Kirti K. Jain neither provided, nor personally or directly supervised, the services provided to Patient P-10 identified in the above Table and in the claims presented to WellCare of Kentucky for such services.

134. Dr. Kirti K. Jain was neither on the premises, nor near the facility, where the described services were provided to Patient P-10; and did not see the patient when these services were provided.

135. None of the described services was provided "incident to" the service of Dr. Kirti K. Jain, as specified by and pursuant to the requirements of 42 C.F.R. § 410.26(b), as these services were not provided under the direct supervision of Dr. Kirti K. Jain.

136. For the services described in Table XIII, the Defendants overcharged WellCare of Kentucky the approximate amount of $2,568.60.

137. For the services described in Table XIII, the Defendants received an excess compensation in the approximate amount of $251.52.

**2. Patient P-14**
**(Ashland BCC)**

138. Among the false NPP claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-14"; and these claims were presented to WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky.

139. Among the services provided to Patient P-14 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following chemotherapy services, fraudulently represented as having been provided by Kirti K. Jain, M.D. but which were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner, as described in Table XIV, below:

**TABLE XIV**
**(Patient P-14)**

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **1** | Wednesday 3/26/14 | Paclitaxel 30 mg | J9265 (J9267) | Highlands | $5,606.25 | $2,097.41 | 4/30/14 |
| **2** | | Injection, Paraplatin 50mg | J9045 | Highlands | $7,380 | $96.78 | |
| **3** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |
| **4** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **5** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $225 | $97.83 | |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **6** | | Injection, Aloxi 25 mcg | J2469 | Highlands | $937.50 | $412.70 | 5/14/14 |
| **7** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **8** | | IV Push Each Additional Sequential Drug | 96375 | Highlands | $164 | $78.24 | |
| **9** | Wednesday 5/9/14 | Paclitaxel 30 mg | J9265 (J9267) | Highlands | $5,606.25 | $2,540.51 | 5/28/15 |
| **10** | | Injection, Paraplatin 50mg | J9045 | Highlands | $7,380 | $96.78 | |
| **11** | | Kytril 100 mg | J1626 | Highlands | $487.50 | $46.35 | 6/12/14 |
| **12** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **13** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $150 | $32.61 | |
| **14** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **15** | Wednesday 5/9/14 | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | 6/12/14 |
| **16** | | Zoledronic Acid 1 mg | J3489 | Highlands | $3,350 | $1,507.50 | |
| **17** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $300 | $83.43 | |
| **18** | Friday 5/30/14 | Paclitaxel 30 mg | J9045 (J9267) | Highlands | $5,606.25 | $2,097.41 | 5/21/14 |
| **19** | | Injection, Paraplatin 50mg | J9045 | Highlands | $7,380.00 | $96.78 | |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **20** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $123 | $39.12 | 7/7/14 |
| **21** | | Injection, Kytril 100 mcg | J1626 | Highlands | $487.50 | $46.35 | |
| **22** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **23** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **24** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |
| **25** | | IV Push Each Additional Sequential Drug | 96375 | Highlands | $123.00 | $39.12 | |
| **26** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $225 | $32.61 | |
| **31** | Wednesday 8/13/14 | Injection, Kytril 100 mcg | J1626 | Highlands | $487.50 | $46.35 | 9/25/24 |
| **32** | Wednesday 8/13/14 | Injection, Oxaliplatin, 0.5 mg | J9263 | Highlands | $15,750 | $8,056.00 | 9/25/14 |
| **33** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **34** | | Injection, Fluoracil, 500 mg | J9190 | Highlands | $262.50 | $20.61 | |
| **35** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323.00 | $143.62 | |
| **36** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **37** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $120 | $55.62 | |
| **38** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | Highlands | $75 | $32.61 | |
| **39** | | Initiation of Prolonged Chemotherapy 8 hours | 96416 | Highlands | $355 | $155.33 | |
| **40** | Wednesday 8/13/14 | Injection, Epirubicin hcl, 2 mg | J9178 | Highlands | $1,875 | $1,386.96 | 12/2/14 |
| **TOTALS** | | | | | **$67,392.25** | **$20,503.45** | |

140. The amounts specified in Table XIV for the described services were charged to WellCare of Kentucky.

141. Dr. Kirti K. Jain neither provided, nor personally or directly supervised, the services provided to Patient P-14 identified in the above Table and in the claims presented to Medicare and WellCare of Kentucky for such services.

142. Dr. Kirti K. Jain was neither on the premises, nor near the facility, where the described services were provided to Patient P-14; and *did not* see the patient when these services were provided.

143. None of the described services was provided "incident to" the service of Dr. Kirti K. Jain, as specified by and pursuant to the requirements of § 42 C.F.R. 410.26(b), as these services *were not* provided under the direct supervision of Dr. Kirti K. Jain.

144. For the services described in Table XIV, the Defendants overcharged WellCare of Kentucky the approximate amount of $10,108.84.

145. For the services described in Table XIV, the Defendants received an excess compensation in the approximate amount of $3,075.52.

**3. Patient P-15**
**(Ashland BCC)**

146. Among the false NPP claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-15"; and these claims were presented to Medicare, as the primary insurer, and WellCare of Kentucky, a Medicaid Contractor for the Commonwealth of Kentucky, as the secondary insurer.

147. Among the services provided to Patient P-15 at Ashland BCC, and presented to WellCare of Kentucky for payment, were the following chemotherapy services, fraudulently represented as having been provided by Kirti K. Jain, M.D. but which were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner, as described in Table XV, below:

**TABLE XV**
**(Patient P-15)**

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **1** | Monday 1/13/14 | Injection, Adriamycin, 10 mg | J9000 | Highlands | $1,250 | $146.34 | 2/10/14 |
| **2** | | Initiation of Prolonged Chemotherapy 8 hours | 96416 | Highlands | $355 | $155.33 | |
| **3** | | Injection, Leukine, 50 mg | J2820 | Highlands | $375 | $179.50 | 2/25/14 |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **4** | Thursday 1/23/14 | Injection, Single Initial Drug | 96372 | Highlands | $37 | $18.64 | |
| **5** | Monday 2/17/14 | Injection, Adriamycin, 10 mg | J9000 | Highlands | $1,260 | $146.34 | 4/4/14 |
| **6** | | Initiation of Prolonged Chemotherapy 8 hours | 96416 | Highlands | $355 | $155.33 | |
| **7** | Monday 6/23/14 | Injection Herceptin, 10 mg | J9355 | No Appointment s | $7,862 | $2,123.11 | 7/21/14 |
| **8** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | No Appointment s | $323 | $143.62 | |
| **9** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96415 | No Appointment s | $75 | $32.61 | |
| **10** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | No Appointment s | $60 | $27.81 | |
| **11** | | Injection, Heparin Sodium | J1642 | No Appointment s | $62.50 | $0.00 | 8/4/14 |
| **12** | Friday7/1 1/14 | Injection, Kytril 100 mcg | J1626 | Highlands | $487.50 | $46.35 | 8/21/14 |
| **13** | | Injection Decadron 1 mg | J1100 | Highlands | $250 | $112.50 | |
| **14** | | Injection Herceptin, 10 mg | J9355 | Highlands | $4,037.50 | $1,090.24 | |
| **15** | | Paclitexel 30 mg | J9265 (J9267) | Highlands | $5,175 | $1,936.07 | |
| **16** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **17** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |
| **18** | | Chemo IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96415 | Highlands | $150 | $32.61 | |

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|---|---|
| **19** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $240 | $83.43 | |
| **20** | Friday, 7/18/14 | Injection, Herceptin, 10 mg | J9355 | Highlands | $4,037.50 | $1,090.24 | 9/18/14 |
| **21** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **22** | Friday, 8/8/14 | Injection, Kytril 100 mcg | J1626 | Highlands | $487.50 | $46.35 | |
| **23** | | Injection Decadron 1 mg | J1100 | Highlands | $125 | $56.25 | |
| **24** | | Injection, Docetaxel, 1 mg | J9171 | | $9,762.50 | $2,498.02 | |
| **25** | | Injection, Herceptin, 10 mg | J9355 | Highlands | $4,037.50 | $1,090.24 | |
| **26** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $143.62 | |
| **27** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $70.99 | |
| **28** | | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $240 | $83.43 | |
| **29** | | Injection, Heparin Sodium | J1642 | Highlands | $62.50 | $0.00 | 3/12/15 |
| **TOTALS** | | | | | **$42,398.00** | **$11,867.20** | |

148. The amounts specified in Table XV for the described services were charged to Medicare and to WellCare of Kentucky.

149. Dr. Kirti K. Jain neither provided, nor personally or directly supervised, the services provided to Patient P-15 identified in the above Table and in the claims presented to Medicare and WellCare of Kentucky for such services.

150. Dr. Kirti K. Jain was neither on the premises, nor near the facility, where the described services were provided to Patient P-15; and *did not* see the patient when these services were provided.

151. None of the described services was provided "incident to" the service of Dr. Kirti K. Jain, as specified by and pursuant to the requirements of § 42 C.F.R. 410.26(b), as these services were not provided under the direct supervision of Dr. Kirti K. Jain.

152. For the services described in Table XV, the Defendants overcharged WellCare of Kentucky the approximate amount of $6,359.70.

153. For the services described in Table XV, the Defendants received an excess compensation in the approximate amount of $1,780.08.

**4. Patient P-20**
**(Ashland BCC)**

154. Among the false NPP claims that the Defendants presented, and caused to be presented, to Contractors were claims for a patient herein identified as "P-20"; and these claims were presented to Humana Choice Care, a Medicare Advantage Contractor.

155. Among the services provided to Patient P-20 at Ashland BCC, and presented to Humana Choice Care for payment, were the following chemotherapy services, fraudulently represented as having been provided by Kirti K. Jain, M.D. but which were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner, as described in Table XVI, below:

**TABLE XVI**
**(Patient P-20)**

| Service | Date | Service | Code | Actual Location of Dr. K. Jain | Amount Billed | Amount Paid | Date Billed |
|---|---|---|---|---|---|---|---|
| **1** | Tuesday 11/26/13 | Injection, Kytril 100 mcg | J1626 | Highlands | $390 | $108.70 | 12/7/13 |
| **2** | | Paclitexel 30 mg | J9265 (J9267) | Highlands | $75 | $30.75 | |
| **3** | | Injection Decadron 1 mg | J1100 | Highlands | $200 | $3.40 | |
| **4** | | Chemo IV Infusion Single Initial Drug Initial Hour | 96413 | Highlands | $323 | $191.52 | |
| **5** | | Chemo IV Infusion Each Additional hour up to 8 hours | 96417 | Highlands | $161 | $91.05 | |
| **6** | Tuesday 11/26/13 | IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96367 | Highlands | $240 | $174.48 | 12/7/13 |
| **7** | | Chemo IV Infusion Each Addition Sequence Infused Chemo Drug up to 1 hour | 96415 | Highlands | $75 | $41.81 | |
| **8** | | Injection, Leukine, 50 mg | J2820 | Highlands | $750 | $312.00 | |
| **9** | | Injection, Single Initial Drug | 96372 | Highlands | $37 | $35.37 | |
| **10** | | Injection, Avastin 50 mcg | J9035 | Highlands | $21,000 | $12,173.00 | 1/17/14 |
| **11** | Wednesday 2/26/14 | Injection, Leukine, 50 mg | J2820 | Highlands | $937.50 | 333.00 | 3/11/14 |
| **12** | | Injection, Single Initial Drug | 96372 | Highlands | $37 | $34.42 | |
| **TOTALS** | | | | | **$24,225.50** | **$13,529.50** | |

156. The amounts specified in Table XVI for the described services were charged to Humana Choice Care.

157. Dr. Kirti K. Jain neither provided, nor personally or directly supervised, the services provided to Patient P-20 identified in the above Table and in the claims presented to Humana Choice Care for such services.

158. Dr. Kirti K. Jain was neither on the premises, nor near the facility, where the described services were provided to Patient P-20; and *did not* see the patient when these services were provided.

159. None of the described services was provided "incident to" the service of Dr. Kirti K. Jain, as specified by and pursuant to the requirements of 42 C.F.R. § 410.26(b), as these services were not provided under the direct supervision of Dr. Kirti K. Jain.

160. For the services described in Table XVI, the Defendants overcharged Humana Choice Care the approximate amount of $8,633.83.

161. For the services described in Table XVI, the Defendants received an excess compensation in the approximate amount of $2,029.43.

**B. The Claims**

162. During a period beginning in or on an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants, acting directly and in concert with each other, knowingly presented and caused to be presented false and fraudulent claims for the above-specified services, and additional claims for additional services for the above-specified patients, and services for other patients, to these and additional Contractors; all additional claims, services, patients, and Contractors will be identified at trial.

163. All of the aforesaid claims were false and fraudulent in that each such claim certified, expressly or impliedly:

(a) that a particular physician, this being Dr. Kirti K. Jain, provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. Kirti K. Jain *did not* provide nor directly supervise these services for these patients, and was neither on the premises nor near the facility where these services were provided; and

(b) that these services had been provided by a medical physician, whereas in truth and in fact, as the Defendants then well knew, such services had not been provided by a physician but instead been provided by a nurse practitioner or by a physician's assistant.

164. Each such claim was prepared by or at the direction of Manish Jain of A One Biz in Miramar, Florida, and presented by A One Biz electronically or by U.S. Mail to the Contractor providing insurance or benefits for the patient who received the services identified on the claim.

165. Each such claim would be and was paid in whole or in part from funds provided by CMS, an agency of the United States, or by DOD, a department of the United States.

166. Each such presentment, and each instance of causing the presentment, of the aforesaid claims by the Defendants was in violation of 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009).

167. As a result of these false claims, the United States suffered actual damages.

## COUNT VI

### False Statements Regarding Patients Treated by Nurse Practitioners or Physician Assistants 31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009)

168. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, paragraph forty-nine, and paragraphs one hundred twenty-one through one hundred sixty-five of this Complaint, and further alleges:

169. Beginning in or on an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants knowingly and willfully made and used, and caused to be made and used, false records or statements material to the above described false and fraudulent claims.

170. Among the aforesaid false statements for the NPP claims were:

(a) that a particular physician, this being Dr. Kirti K. Jain, provided these services to these patients, whereas in truth and in fact, as the Defendants then well knew, Dr. Kirti K. Jain did not provide nor directly supervise these services for these patients, and was neither on the premises nor near the facility where these services were provided; and

(b) that these services had been provided by a medical physician, whereas in truth and in fact, as the Defendants then well knew, such services had instead been provided by a nurse practitioner or by a physician's assistant.

171. Among the aforesaid false records were the following:

(a) patient charts and files that contained the aforesaid false statements;

(b) patient billing summaries that contained the aforesaid false statements; and

(c) claims that contained the aforesaid false statements.

172. Each such statement and record was prepared by or under the direction of Dr. Kirti K. Jain, and by the administrative personnel within the facility where each patient for each such statement and record had purportedly received the services for which claims were presented.

173. Each such making and use, and each instance of causing to be made and used, of the aforesaid statements and records by the Defendants was in violation of 31 U.S.C. § 3729(a)(2) (1986) and 31 U.S.C. § 3729(a)(1)(B) (2009).

174. As a result of these false statements and records, the United States suffered actual damages.

## COUNT VII

### False Claims Regarding Simulation Services
### 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009)

175. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, and paragraphs forty-nine, fifty-seven, sixty-two, and ninety-two of this Complaint, and further alleges:

176. Beginning in or about an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015 (the "Fourth Relevant Period"), the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, and Kirti K. Jain, M.D. (hereinafter, collectively, the "Defendants"), together with Co-conspirator Logan CC, knowingly and willfully presented and caused to be presented for payment or approval false and fraudulent claims to federally-funded federal health care programs, including the Medicare, Medicaid, Railroad Medicare, and TRICARE programs (the "Federal Programs").

### A. Simulation Procedures

177. During the Fourth Relevant Period, the Defendants presented claims to the Federal Programs for radiation oncology services, specifically for simple and complex simulations of the delivery of radiation to a diseased area of the body, supposedly provided to patients by physicians (the "Simulation claims"):

(a) directly to CMS and indirectly to CMS through MACs and insurance carriers under contract with CMS for the administration of the Medicare and Railroad Medicare programs;

(b) directly to States, and indirectly to these States through insurance contractors and carriers under contract with these States for the administration of the Medicaid and Medical Assistance programs, funded in part by the Medicaid program, of these States; and

(c) directly to DOD, and indirectly to DOD through United Healthcare, Humana Military, and Health Net, the contractors for the domestic administration of TRICARE.

178. The CPT Codes for simple and complex simulations are (a) 77280 for simple simulations; and (b) 77290 for complex simulations.

179. Simulations are the equivalent of "dry runs" for radiation treatments, further explained in the Local Coverage Determinations for Nebraska, No. L30316, as follows:

> Radiation oncology simulation is defined as the process of determining and establishing the radiation therapy treatment portals to a specific treatment volume. Ordering and interpreting special tests may be required to assist in the field settings.
>
> Simulation procedures 77280-77290 may be performed if medically necessary to prepare the patient for treatment planning and to ensure accurate treatment.

180. The supervision requirement for simple and complex simulations is that the process can only be done by a qualified physician who has a complete knowledge of the location and extent of the patient's malignancy. This must be the radiation oncologist who is treating the patient or another physician who is similarly qualified and who is treating the patient.

181. The documentation requirements for simulation, CPT Codes 77280 and 7290, requires the treating physician to prepare a written record of the procedure, with a hard copy of an x-ray film or electronic images and evidence of image reviewed by the physician, including signature or initials and date of review by the physician (collectively the "Required Documentation"). This requirement was a precondition and was material for payment.

182. The documentation requirements of CMS for simulation requires that the practice billing for simulation procedures possesses and maintains the Required Documentation for a period of seven years. This requirement was a precondition and was material for payment.

183. The Simulation claims were false and fraudulent, in that they represented by implication that the required documentation had been prepared by the treating physician and was maintained by the Defendants, whereas in truth and in fact:

(a) the treating physician did not prepare a written record of the simulation procedure;

(b) the treating physician did not sign or initial a written record of the simulation procedure; and

(c) the Defendants did not possess or maintain the Required Documentation at any time.

184. At all times pertinent to this Complaint, the aforesaid statements were material to the payment of these claims, as the Contractors to which the Defendants presented the Simulation claims would not have made payment had they known that the Required Documentation had not been prepared; that the Defendants did not possess the Required Documentation and did not maintain such documentation.

185. The Simulation claims were further false and fraudulent, in that they represented by implication that a radiation oncologist had performed the simulations, whereas in truth and in fact no radiation oncologist had performed the simulations.

186. At all times pertinent to this Complaint, the aforesaid statements were material to the payment of these claims, as the Contractors to which the Defendants presented the Simulation

claims would not have made payment if they had known that the physician performing the simulations for the respective patients were not radiation oncologists.

187. Among the Contractors to which the Defendants presented false and fraudulent Simulation claims, and which were billed as the primary or second insurer, were those Contractors identified in Table III of this Complaint.

188. Among the simulation procedures included in Simulation claims that were false and fraudulent and that were presented to Contractors for payment and approval were those provided to Patients P-3 and P-10, identified in Tables V, VI and VIII, above, described with the codes 77280 and 77290.

189. At no time was either Patient P-3 or Patient P-10 the patient of Dr. O'Laughlin; and at no time did Dr. O'Laughlin provide simulation services to these patients; and at no time did Dr. O'Laughlin supervise, personally or directly, the provision of these services provided to these patients.

190. All claims presented by the Defendants to Contractors were presented on or about the dates that the services invoiced had been provided.

**B. The Claims**

191. During a period beginning in or on an unknown date prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants, acting directly and in concert with each other, knowingly presented and caused to be presented false and fraudulent claims for the above specified services, and additional claims for additional services for the above

specified patients, and services for other patients, to these and additional Contractors; all additional claims, services, patients, and Contractors will be identified at trial.

192. All of the aforesaid claims were false and fraudulent in that each such claim certified by implication:

(a) that the treating physician prepared a written record of the simulation procedure, whereas in truth and in fact, as the Defendants then well knew, the treating physician did not prepare a written record of the simulation procedure;

(b) that the treating physician signed or initialed a written record of the simulation procedure, whereas in truth and in fact, as the Defendants then well knew, the treating physician did not sign or initial a written record of the simulation procedure;

(c) that the Defendants possessed and maintained the Required Documentation at the required times, whereas in truth and in fact, as the Defendants then well knew, the Defendants did not possess or maintain the Required Documentation at any time; and

(d) that the simulation procedure had been performed by a radiation oncologist, whereas in truth and in fact, as the Defendants then well knew, a radiation oncologist had not performed the simulation procedure.

193. Each such claim was prepared by or at the direction of Manish Jain of A One Biz in Miramar, Florida, and presented by A One Biz electronically or by U.S. Mail to the Contractor providing insurance or benefits for the patient who received the services identified on the claim.

194. Each such claim would be and was paid in whole or in part from funds provided by CMS, an agency of the United States, or by DOD, a department of the United States.

195. Each such presentment, and each instance of causing the presentment, of the aforesaid claims by the Defendants was in violation of 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009).

196. As a result of these false claims, the United States suffered actual damages.

## COUNT VIII

### Conspiracy
### 31 U.S.C. § 3729(a)(3)(1986) and 31 U.S.C. § 3729(a)(1)(C)(2009)

197. The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs one through forty-three, paragraphs forty-five through seventy-six, paragraphs seventy-eight through eighty-three, paragraphs eighty-five through one hundred twelve, paragraphs one hundred fourteen through one hundred nineteen, paragraphs one hundred twenty-one through one hundred sixty-five, paragraphs one hundred sixty-seven through one hundred seventy-two, and paragraphs one hundred seventy-four through one hundred ninety-four of this Complaint, and further alleges:

198. During the period beginning in or on an unknown dated prior to July, 2012, and continuing until an unknown date after October, 2015, the Defendants Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, Kirti K. Jain, M.D., and Manish Jain (hereinafter, collectively, the "Defendants"), together with the Co-conspirator Logan CC, conspired and agreed together to defraud the Government by getting false or fraudulent claims approved or paid; and by making or using false statements and records material to false or fraudulent claims.

199. The false and fraudulent claims that the Defendants and Logan CC conspired to get approved or paid were the above described claims to federally-funded federal health care programs, including the Medicare, Medicaid, Railroad Medicare, and TRICARE programs (the "Federal Programs").

200. The false records that the Defendants and Logan CC conspired to make or use were the above described patient charts, patient billing summaries, and claims; and the false statements were the false statements made within those records.

201. Such conspiracy to defraud the Government was in violation of 31 U.S.C. § 3729(a)(3).

202. As a result of this conspiracy, the United States suffered actual damages.

## Request for Relief

The Plaintiff, Robert C. O'Laughlin, M.D., acting on behalf of and in the name of the United States, hereby demands and seeks that judgment be entered in favor of the United States, and against the Defendants, these being Radiation Therapy Services, P.S.C. (dba Ashland Bellefonte Cancer Center), Kirti K. Jain, M.D., P.S.C. (dba Highlands Cancer Center), A One Biz Solutions, LLC, Kirti K. Jain, M.D. and Manish Jain, for each count in which each Defendant is named, as follows:

1. For treble damages incurred by the United States;

2. For civil penalties of twenty-one thousand five hundred sixty-two dollars and eighty cents ($21,562.80) for each false or fraudulent claim presented to the United States or to one of its Contractors as described above;

3. For civil penalties of twenty-one thousand five hundred sixty-two dollars and eighty cents ($21,562.80) for each false record and statement made or used to get false claims paid or approved, in the form of the above described patient charts, patient billing summaries, and claims and the statements made within those records as described above.

4. For civil penalties of twenty-one thousand five hundred sixty-two dollars and eighty cents ($21,562.80) for the conspiracy to get false or fraudulent claims paid or approved, and to make or use false records and statements to get such claims paid or approved.

5. For interest on: the above treble damages, from the date on which the damages were incurred; and on the above civil penalties, from the date on which this Complaint is served upon the Defendants;

6. For all costs and expenses of this civil action; and

7. For such other and further relief as the Court deems just and equitable.

In addition, the Plaintiff, Robert C. O'Laughlin, M.D., acting on his own behalf, demands and seeks that an award be made in his favor as follows:

8. For thirty percent (30%) of the proceeds collected by the United States;

9. For an amount for reasonable expenses necessarily incurred by Robert C. O'Laughlin, M.D. in the prosecution of this action;

10. For all reasonable expenses incurred by Robert C. O'Laughlin, M.D. in relation with these proceedings, plus all reasonable attorney's fees and costs, pursuant to 31 U.S.C. § 3730(d); and

11. For such other and further relief to which Robert C. O'Laughlin, M.D. may show himself justly entitled.

The Plaintiff hereby demands that this matter be tried before a jury.

By: /s/ Andrew Grosso

Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Facsimile: (202) 298-5599
Email: Agrosso@acm.org

Dated: July 15, 2021

Attorney for Relator Robert C. O'Laughlin, M.D.

## CERTIFICATE OF SERVICE

I hereby certify on July 15, 2021, the foregoing was electronically filed with the clerk of the court by using the Court's electronic filing system to all counsel of record.

By: /s/ Andrew Grosso

Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Facsimile: (202) 298-5599
Email: Agrosso@acm.org