UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND

***Electronically Filed***

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ROBERT C. O'LAUGHLIN, M.D.<br><br>PLAINTIFFS,<br><br>v.<br><br>RADIATION THERAPY SERVICES, P.S.C. dba ASHLAND BELLEFONTE CANCER CENTER, KIRTI K. JAIN, M.D., P.S.C., dba HIGHLANDS CANCER CENTER, A ONE BIZ SOLUTIONS, LLC, MANISH JAIN, and KIRTI K. JAIN, M.D.<br><br>DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 0:16-cv-148-DLB |

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

The Defendants, Radiation Therapy Services, P.S.C. d/b/a Ashland Bellefonte Cancer Center ("ABCC"), Kirti K. Jain, M.D., P.S.C. d/b/a Highlands Cancer Center ("HCC"), A-One Biz Solutions, LLC ("A1B"), Kirti K. Jain, M.D. ("Dr. Jain") and Manish Jain ("collectively, "Defendants"), by counsel, move this Court pursuant to Fed. R. Civ. P 12(b)(6) and 9(b) to dismiss Relator's Complaint for failure to state a claim for which relief can be granted and also for failure to plead allegations of fraud with particularity. In support of their Motion, Defendants state as follows:

**PROCEDURAL BACKGROUND**

This is the Relator's third attempt to state actionable claims in this case. The Relator, a disgruntled former employee of ABCC and HCC, originally filed this action on December 7, 2016.

[DN 1.] After a lengthy investigation of the allegations and merits thereof, the United States declined to intervene in the case against the Defendants on August 12, 2019. [DN 34.] On December 26, 2019, the Defendants filed a Motion to Dismiss the original Complaint[1]. [DN 50.] While that Motion was pending, on January 13, 2020, Relator filed an Amended Complaint. [DN 53.] This Amended Complaint contained eight Counts, including four separate "false presentment" clams, three claims of making a "false record," and a conspiracy claim. [*Id.*] Schematically, the Complaint alleges violations related to inadequate supervision of radiation oncology services; improper identification of physicians who performed certain services; and improper billing for chemotherapy delivery services that were performed by physician assistants or nurse practitioners.

Specifically, the Amended Complaint included one Count (Count I) under a "false presentment" theory where Relator alleged that the Defendants presented false claims for reimbursement which contained implicit certification that Relator "provided, or supervised…radiation oncology services" that were not provided or supervised by the Relator, and also were "not delegated to a physician qualified to perform the radiation oncology services." [*Id.* at ¶¶45-47, 72.] The Amended Complaint made parallel allegations in a separate Count (Count II) under a "false record" theory, whereby the Relator alleged that the Defendants created false records that represented that Relator performed the radiation oncology services described in Count I, when Relator, in fact, had not. [*Id.* at 78-83.) Relator also included a Count under the "false presentment" theory (Count III) that alleged that the Defendants submitted claims for claims for certain radiation services which implicitly certified that the services were performed by a "particular, Named Physician," when that Named physician did not perform or supervise the

[1] Individual Defendant A1B filed a separate Motion to Dismiss on December 13, 2019. [DN 47.]

services, and was not on the premises or otherwise available when the services were rendered. [*Id.* at ¶¶86-88, 108.] Likewise, Relator alleged a separate Count under a "false record" theory (Count IV) that alleged that the Defendants created a false record that the Named Physician provided the services described in Count III, when the Named Physician was not the physician providing the services. [*Id.* at 113-119.] Additionally, the Amended Complaint asserted a Count under the "false presentment" theory (Count V) that alleged that the Defendants submitted claims for certain chemotherapy services, which implicitly certified that such services had been provided or supervised by Dr. Jain, when they were actually provided by either a physician's assistant or a nurse practitioner without Dr. Jain's direct supervision. [*Id.* at ¶¶122-123, 161.] Relator once again asserted a separate Count under a "false record" theory (Count VI) where he alleged that the Defendants created a false record that Dr. Jain provided chemotherapy administration services, when the services were in fact provided by a physician's assistant or nurse practitioner.

As his final Count under the "false presentment" theory (Count VII), Relator alleged that the Defendants submitted claims for simulation procedures which implicitly certified that the treating physician prepared, and signed or initialed, a record of the simulation; that the Defendants maintained the requisite documentation of the simulation procedures; and that the procedures were performed by a radiation oncologist, when one or all of these conditions were not satisfied. [*Id.* at ¶¶175-183.) The Amended Complaint also included a catch-all civil conspiracy claim (Count VIII.)

On February 19, 2020, the Defendants filed a Motion to Dismiss the Amended Complaint. [DN 64.] As a basis for the Motion to Dismiss, Defendants argued that (1) Relator conflated the supervision requirements for radiation therapy services by requiring supervision to be performed by "a physician qualified to perform radiation oncology services" [DN 64-1 at 17-20]; (2) that the

allegations of listing a physician other than the supervising or treating physician on the claim form, even if true, does not amount to a violation of the FCA because the identity of the physician is not material to the decision of whether to pay [*Id.* at 21-23]; and (3) that Relator's allegations that the Defendants violated the FCA for billing for chemotherapy and evaluation and management services when the services were provided by physician assistants and nurse practitioners, and not physicians were not actionable, because the services were billed as incident-to services, and the Amended Complaint did not adequately plead that the services were not supervised. [*Id*. at 14-17.]

On October 20, 2020, this Court granted, in large part, Defendants' Motion to Dismiss. Specifically, the Court allowed Counts I and II to proceed to discovery only insofar as those Counts allege that "Defendants falsely certified that certain radiation oncology services (denoting physician performance) were performed by Dr. O'Laughlin or another radiation oncologist." [DN 76 at 10.] As such, Counts I and II survived only insofar as the claims were for professional, and not technical, services.

The Court dismissed Counts III, IV, V, and VI, which alleged FCA violations for billing for chemotherapy and evaluation and management services that were performed by a nurse practitioner or physician assistant, but were billed using another physician's name, as well as claims of FCA violations for putting the wrong physician name on the claim forms that were submitted for billing. The Court reasoned that materiality requires a showing that "the government would not have paid the claim had it known the provider was not in compliance." [*Id.* at 16, *quoting United States ex rel. Hobbs v. Medquest Assocs.,* 711 F.3d 707, 714 (6th Cir., 2013).] After a thorough comparison of the present case to *Hobbs*, this Court found that the regulatory instructions to list the supervising physician on the claim form when submitting a claim for an

incident to service was not meant to be a precondition of payment such to invoke materiality, but was instead merely a safeguard against double billing by the physician and the auxiliary personnel who performed the service. [*Id.* at 18.] The Court applied this same rationale to the claims involving chemotherapy services which were performed by auxiliary personnel. Because these services were performed as incident to services, whether the incorrect physician was listed on the claim form for the services is immaterial to the government's decision to pay, so long as the services were actually supervised by a physician. [*Id.* at 22.] Because the Amended Complaint failed to allege that the services were not supervised, this Court dismissed the chemotherapy claims, along with the "named physician" claims, without prejudice. [*Id.* at 15-22.]

This Court also dismissed with prejudice Count VII to the extent that it alleged that simulation services were required to be performed by a radiation oncologist. In its rationale, the Court ruled that while Medicare "requires 'direct supervision' by a physician of radiation oncology services,…the Policy does not require that the supervising physician be a radiation oncologist in particular." [*Id.* at 11.] Similarly, this Court found Count VII's claims regarding simulation services to be legally deficient inasmuch as the claims were premised upon the position that simulation services must be performed by a radiation oncologist. [*Id.* at 13-14.]

In rendering its Order, severely reducing the actionable claims in this case, this Court essentially limited the claims at issue to those dealing with physician services which were billed, but not actually delivered (distinguished from services with allegedly unqualified physician supervision or where the incorrect physician was listed on the claim form) and the conspiracy claim, as it relates to the remaining actionable claims. Because of his dissatisfaction with the limiting nature of the Court's Order, on October 22, 2020, two days after the Order granting, in

part, dismissal of the Amended Complaint, Relator filed a Motion to Reconsider. [DN 77.] That Motion has not been ruled upon, and remains outstanding.

This case has proceeded to discovery, with the Relator focusing much attention on the dismissed claims. On July 26, 2021, Relator filed a Second Amended Complaint, which largely recycles the claims that had previously been dismissed. This Motion to Dismiss now follows.

## ALLEGATIONS OF THE COMPLAINT

The Second Amended Complaint is virtually identical to the Amended Complaint and the original Complaint before it. As will be discussed with specificity herein, the only difference is that, in certain claims, Relator adds a phrase to reference services or supervision not being provided by a "qualified physician." This, however, is a distinction without a difference, as the Second Amended Complaint articulates the same standard for a "qualified physician" that was specifically rejected by this Court in its Order of dismissal. Moreover, the Second Amended Complaint continues to assert, without any substantive change or factual enhancement, the same claims asserted in the Amended Complaint, including those claims that were dismissed with prejudice. Having already addressed these allegations in two separate Motions to Dismiss, as well as in its Response to the Motion for Reconsideration, Defendants hereinafter offer the following recitation of the allegations of the Complaint for a fourth time:

Like the both original and the Amended Complaint, the Second Amended Complaint contains blanket allegations charging the Defendants, collectively, and predicates its claims by using erroneous legal conclusions that take the form of mischaracterizations of CMS administrative Manuals and Regulations.

The Second Amended Complaint contains exactly the same allegations as the previous Complaints, notably that Ashland Bellefonte Cancer Center ("ABCC") and Highlands Cancer Center ("HCC") (collectively, "the Cancer Centers") are physician-owned medical and radiation oncology and hematology clinics which treat vulnerable cancer patients in Ashland and Prestonsburg, KY, respectively. (DN 91 at ¶¶2, 8, 10). The Cancer Centers are wholly owned by Dr. Kirti Jain, a medical oncologist whose practice is concentrated in the areas of blood and cancer care and internal medicine. (DN 91 at ¶¶6, 9, 11). Like many providers, the Cancer Centers do not submit their claims for services rendered to patients directly to payors, but instead employ a billing company, specifically A One Biz Solutions, which is located in Miramar, Florida. (DN 91 at ¶14). The Second Amended Complaint alleges that Manish Jain was a manager at Ashland Bellefonte Cancer Center, and Logan Cancer Center and was a member and manager at A One Biz Solutions and that Manish Jain was business manager at Ashland Bellefonte Cancer Center. (DN 91 at ¶7, 9). Like its predecessor, the Second Amended Complaint alleges that A One Biz, through Manish Jain, employed a process of "scrubbing" claims prior to submission to ensure that claims would be eligible for payment and would be properly adjudicated. (DN 91 at ¶41). In pleading this way, the Second Amended Complaint attempts to plead that "scrubbing" of claims is equated with fraud, but does not offer any definition or description of what "scrubbing" actually is. As it applies to medical billing, a "scrub" is recognized as an "internal control to ensure claims are processed for NCCI [National Correct Coding Initiative] edits before submission."[2] As such, the process of "scrubbing" claims is essentially a pre-submission dry-run of adjudication of the claim to ensure that it is properly coded and eligible for reimbursement. Rather than being a fraud

---

[2] Brian Meredith, Fit NCCI Edits into Hospital Chargemaster Before Claims Submission, American Academy of Professional Coders Knowledge Center (Sept. 11, 2018), www.aapc.com/blog/43826-fit-ncci-edits-into-hospital-chargemaster-before-claims-submission/.

scheme, "scrubbing" is a recognized tool for preventing fraudulent overpayments. *Id.* ("Scrubbing prevents fraudulent overpayments. To prevent an inflated charge, the hospital should edit the claim (scrub) . . . Consistent failure to scrub hospital claims to avoid unbundling may be considered intentional and . . . even fraudulent . . . Accordingly some payers…are adopting policies that include mandatory inpatient claim scrubbing.") In attempting to plead "scrubbing" in such a way as to insinuate that it is a fraudulent scheme,[3] the Second Amended Complaint mischaracterizes "scrubbing" as a nefarious scheme, when, in fact, the opposite is actually the case.

After introductory statements about the Cancer Centers, Dr. Jain, Manish Jain and A One Biz, the Second Amended Complaint quickly groups all of the parties together and thereafter refers to them as "Defendants." The Second Amended Complaint alleges the Defendants "willfully presented and caused to be presented for payment fraudulent claims to federally-funded health care programs" in relation to patients "supposedly" treated by the Relator himself. (DN 91 at ¶45). Specifically, the Amended Complaint pleads that: "Of the O'Laughlin claims, *many were false and fraudulent*, in that they stated that Dr. O'Laughlin provided, or supervised, the radiation oncology billed in these claims, whereas in truth and in fact . . . Dr. O'Laughlin did not provide these services . . . [he] did not supervise the provision of these services . . . [and] the provision of these services was not delegated to a physician qualified to perform the radiation oncology services." (DN 91 at ¶47).

Like the Amended Complaint before it, the Second Amended Complaint mischaracterizes the definition and regulatory standards of physician supervision through a number of misstatements and mischaracterizations of regulations and false definitions of services provided.

[3] The Second Amended Complaint does not actually plead how the "scrubbing" effectuated fraud, but instead makes conclusory statements and insinuations.

For instance, the Second Amended Complaint pleads that administration of radiation therapy includes "both the professional and the non-professional, *i.e.* technical component[s]". (DN 91 at ¶37).[4] From there, the Second Amended Complaint alleges that both professional and technical components require requisite supervision by a physician. (*Id.*) As to what that level of supervision might be, Relator alleges that "the administration of a specific type of radiation therapy requires a specific level of supervisory or personal care by a qualified physician, **that is, by a Radiation Oncologist or other 'qualified radiation oncology physician.'**" (DN 91 at ¶32). This faulty conclusion that radiation therapy must be supervised by radiation oncologists has never been recognized by any regulatory or legal authority. To the contrary, Courts have rejected this interpretation of the supervision requirements for these services. With respect to the patients that the Relator alleges were administered radiation therapy procedures without Relator's supervision, the Second Amended Complaint applies this inappropriate standard, pleading that, "the provision of these services was not delegated to a physician qualified to perform the radiation oncology services." (DN 91 at ¶¶47, 55, 60, 65, 70).

Rather than tailoring the Second Amended Complaint in light of this Court's dismissal of various Counts and legal claims, the Relator adopts the exact same Counts and claims in the Second Amended Complaint that were articulated in the previous Amended Complaint. Specifically, the Second Amended Complaint continues to allege, in a completely recycled Count I that the Defendants violated the FCA by submitted claims for reimbursement "for radiation oncology services supposedly provided to patients by [Relator]" when Relator did not provide the radiation oncology services; did not personally supervise the radiation oncology services; and did

[4] As will be discussed below, this assertion is patently incorrect, as CMS has acknowledged that administration of radiation therapy is a purely technical service without a professional component.

not delegate these services to a "physician qualified to perform radiation oncology services." [DN 91 at ¶¶ 46, 47.] Count I provides several patients whom Relator asserts are representative examples of the fraudulent activity, however two of the representative patients, P-2 and P-3, were patients at Logan Cancer Center, which is not a named defendant in this case.[5] [DN 91 at ¶¶ 51-60.] As such, the claims asserted in these representative examples, are not representative at all, given that they were submitted by an entity that is not presently a defendant in this case.

Further, the services that are enumerated by CPT codes in the representative examples are, by and large, radiation treatment delivery codes of various varieties, which, as will be discussed further below, may be performed by auxiliary personnel with proper supervision. This fact is essential, as it directly contradicts the Second Amended Complaint's allegation that the FCA was violated when the Defendants submitted claims for Image Guided Radiation Therapy (IGRT) services, and implicitly certified that "a qualified physician reviewed and approved guidance images produced prior to each daily treatment within 24 hours or prior to the next treatment delivery, whereas in truth and in fact, Defendants then well knew, no qualified physician reviewed or approved guidance images produced prior to each daily treatment within 24 hours or prior to the next treatment delivery." [DN 91 at ¶ 72.] Similarly, the Second Amended Complaint alleges that claims for radiation oncology services were submitted when the services were not "provided nor supervised by a physician qualified to perform the radiation oncology services." [*Id.*] This statement, however, conflates that supervision requirements set forth for the services represented by the representative examples, which either do not have any professional, physician billing component, or require only supervision by "a physician," and not a radiation oncologist.

---

[5] Logan Cancer Center was voluntarily dismissed from this action on February 25, 2020 following Logan's agreement to terms of settlement with the government. [DN 65.]

Similarly, Count II re-pleads the previous "false record" allegation from the Amended Complaint. As this Court noted in its Order on the Motion to Dismiss, the "false record" allegation in Count II, "relates to the factual underpinnings" of Count I. [DN 76 at 4.] Therefore, while Count I of the Second Amended Complaint alleges that Defendants violated the FCA by submitting claims "for radiation oncology services supposedly provided to patients by [Relator]" when Relator did not provide the radiation oncology services," Count II of the Second Amended Complaint alleges a parallel violation of the FCA by stating that Defendants made false statements and created false records stating that the Relator performed the radiation oncology services at issue in Count I, and these records were material to the Government's decision to pay the claims. [DN 91 at ¶¶ 78-79.]

Count III of the Second Amended Complaint, like Count I, pleads a "false presentment" theory of FCA liability. [DN 91 at ¶¶ 84-112.] Once again, Count III of the Second Amended Complaint is essentially identical to the same Count from the Amended Complaint, with a subtle distinction, which ultimately does not change the outcome. Count III alleges that the Defendants violated the FCA by listing a specific, named physician on claims for radiation services, when the named physician was absent from the premises. [DN 91 at ¶ 87.] In essence, this claim, in both the Amended and Second Amended Complaint, attempts to plead, as fraudulent conduct, listing an allegedly incorrect physician on a claim form. This Court has already dismissed this allegation with prejudice, noting that the listing of the ordering, and not the supervising, physician would not violate the FCA because listing the correct physician is not a condition of payment such that materiality would be implicated.

Count III of the Second Amended Complaint does, however, deviate slightly from the Amended Complaint by adding that "many of the Absent physician claims were fraudulent, in that

they represented that a qualified physician provided, or supervised, services billed in these claims" when there was no "qualified physician" on the premises to provide or supervise these services." [DN 91 at ¶ 88.] Relator pleads that the incorrect physician is listed on the claim form so as to "purposely conceal and cover-up" that no "qualified physician" rendered or supervised the services. [*Id.* at ¶ 89.] Like in the previous Counts, this additional allegation in Count III is tainted by the Relator's flawed definition of "qualified physician", which mischaracterization of the supervision requirements for the services at issue in this case by conflating the standard to requiring supervision to be performed by a radiation oncologist when no legal or regulatory authority requires as much. This Court has already ruled that the supervision standard only requires supervision by "a physician," and not a radiation oncologist. [DN 76 at 11.] The Second Amended Complaint maintains the same conflated definition of "qualified physician" that was pleaded in the Amended Complaint. [DN 91 at ¶ 32, (equating the qualification as "requir[ing] a specific level of supervisory or personal care by a qualified physician, that is, by a Radiation Oncologist or other qualified radiation oncology physician.")] Because the Court has already rejected Relator's draconian qualification standards, Count III's additional language that no "qualified physician" was present fails to plead an articulable claim.

Count IV of the Second Amended Complaint attempts to plead a violation of the FCA under a "false record" theory, predicated on the factual pleadings of Count III. Yet again, Count IV of the Second Amended Complaint closely follows Count IV of the Amended Complaint, but like Count III, Count IV of the Second Amended Complaint pleads the additional allegation that neither the Named Physician, nor "any qualified physician" provided or supervised the services enumerated in Count III. Count IV alleges that Defendants created false records or statements to further the scheme in Count III. Even with the newly-added "qualified physician" language,

Counts III and IV of the Second Amended Complaint are fatally flawed. This Court dismissed Counts III and IV of the Amended Complaint. In articulating its reasoning for the dismissal, this Court noted that the Amended Complaint did *not* plead that "*no physician* provided or supervised the services at issue" and "based on the allegations of the Amended Complaint, it cannot be reasonably inferred that no other physician supervised the procedures in question in lieu of the named physician." [DN 76 at 19 (*emphasis in original*.)] Likewise, Counts III and IV of the Second Amended Complaint do not allege that that the services in question were not supervised, but merely that they either were not supervised by the named physician, or that they were supervised by some other physician who did not meet the conflated supervision standards that this Court has already rejected.

Counts V and VI of the Second Amended Complaint recycle much of the same pleading from those Counts in the Amended Complaint. Specifically, Count V alleges that the Defendants violated the FCA by submitting claims for chemotherapy administration services that listed Dr. Jain on the claim form, but that were performed by a physician assistant or a nurse practitioner. Similarly, Count VI alleges that the Defendants violated the FCA by creating a false record when it listed Dr. Jain on the claim form, despite the fact that the services were performed by a physician assistant or a nurse practitioner. In the Second Amended Complaint, Relator's pleading of Counts V and VI is virtually word-for-word identical to the Amended Complaint, with one exception. Whereas in the Amended Complaint, Relator pleaded that the services were billed with Dr. Jain's name on the claim form, despite the fact that the chemotherapy services were provided by a physician's assistant or a nurse practitioner, the Second Amended Complaint adds additional language, stating that the services "were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner." [DN 91 at ¶¶ 131, 139, 147.]

This additional language does not cure or address the flaws that this Court noted when it originally dismissed Counts V and VI of the Amended Complaint. This Court originally dismissed these Counts in the Amended Complaint, noting that the Relator "has failed to adequately allege a material violation with respect to the chemotherapy services. As with the 'named physician' claims, Relator does not allege that *no* physician supervised the chemotherapy services." [DN 76 at 22 (*emphasis in original*.)] The additional language of Counts V and VI of the Second Amended Complaint do not cure this defect, as it merely points out that the services were not *performed* by a physician. However, the Second Amended Complaint does not allege that the services were not *supervised* by another physician other than Dr. Jain. This Court dismissed these Counts in the Amended Complaint because "Relator has not provided factual allegations to support a reasonable inference that…no physician supervised those services" and the Second Amended Complaint's additional language that reiterate that the services were performed by auxiliary personnel does not cure the deficiency.

The allegations pleaded within the Second Amended Complaint are, in general terms, predicated upon erroneous legal conclusions, or are otherwise legally impossible. The Second Amended Complaint fails to plead any plausible claim for relief and as such, this Motion to Dismiss follows.

## **ARGUMENT**

The Second Amended Complaint is merely a re-hashing of the previously-filed Amended Complaint, and Relator has indiscriminately filed legal claims that were previously dismissed with prejudice. Because these claims were previously dismissed with prejudice, they cannot be raised again in this Second Amended Complaint. Other claims that were dismissed without prejudice are not cured by the pleadings in the Second Amended Complaint and must likewise be dismissed.

Finally, as to the claims that survived the Court's previous Order, the Second Amended Complaint fails to plead such claims with the requisite specificity under CR 12(b)(6) and 9(b) and these previously surviving claims should now be dismissed as well.

## I. RELATOR CANNOT RESURRECT THE CLAIMS INVOLVING IMPROPER SUPERVISION THROUGH THE SECOND AMENDED COMPLAINT, AS THOSE CLAIMS WERE PREVIOUSLY DISMISSED WITH PREJUDICE.

In its October 20, 2020 Order, this Court ordered that "Relator's false presentment and false records claims alleged in Counts I and II are **dismissed with prejudice** to the extent they are based on Defendants' alleged false certification that certain radiation oncology services were supervised by a qualified radiation oncologist." [DN 76 at 28, (**emphasis in original**.)] In the same Order, this Court ruled that "Relator's false presentment claim regarding simulation services alleged in Count VII is **dismissed with prejudice** to the extent it is based on Defendants' alleged false certification that certain simulation services were performed by a radiation oncologist." [DN 76 at 29, (**emphasis in original**.)] Despite these definitive rulings, Relator has improperly asserted these same claims within the Second Amended Complaint[6]. The dismissal was based upon the Relator's mischaracterization of physician qualifications for supervision of certain technical, radiological therapy procedures, whereby Relator claimed that the only "qualified physician" who could supervise such procedures would be a radiation oncologist, when CMS Policy Manuals, as well as all guidance would dictate that such procedures need only be supervised by "a physician." Still, despite the fact that the Court clearly rejected Relator's proffered definition of "qualified physician" when it dismissed its application in Counts I, II, and VII with prejudice, Relator now has attempted to apply that same definition of "qualified physician" in Counts III and IV of the

[6] Relator likewise has pursued these claims in discovery as though they were never dismissed.

Second Amended Complaint. Relator's complete defiance of this Court's previous Order is impermissible and the dismissal, in part, of Counts I, II, and VII must stand.

This Court dismissed the legal claims which were rooted in Relator's proffered definition of "qualified physician" in Counts I, II and VII with prejudice. A dismissal with prejudice is considered an adjudication upon the merits. CR 41(b); *Semtek International, Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 505 (2001) (*internal citations omitted.*) As such, it invokes claim preclusion such that the claim cannot be resurrected. *See Michigan Surgery Investment, LLC v. Arman,* 627 F.3d 572 (6th Cir., 2010) (distinguishing between dismissal with prejudice and dismissal without prejudice and noting that unlike a dismissal without prejudice, a dismissal with prejudice carries a finality to the dismissal.) Make no mistake, the Second Amended Complaint acts as a verbatim recitation of the Amended Complaint for its first eighty-seven (87) paragraphs. This encompasses all of the factual recitations and legal background, as well as the allegations of Counts I and II. Similarly, Count VII of the Second Amended Complaint is a verbatim copy of the dismissed claim from the Amended Complaint. This rejection of the Court's October 20, 2020 Order is unconscionable and Relator must not be allowed to reassert these legal claims which were adjudicated as meritless. The dismissal of these Counts must stand. Similarly, and as will be discussed in more depth, below, the use of the rejected definition of "qualified physician" in an attempt to cure Counts III and IV must not be allowed to stand either. The dismissal in those Counts must stand as well.

## II. THE SECOND AMENDED COMPLAINT FAILS TO CURE THE DEFICIENCIES THAT WERE PRESENT IN THE COUNTS WHICH WERE DISMISSED WITHOUT PREJUDICE IN THE AMENDED COMPLAINT.

This Court's October 20, 2020 Order identified several deficiencies in the pleading of the Amended Complaint and dismissed these particular legal claims without prejudice, thus allowing

Relator leave to refile such claims as a curative measure.[7] Specifically, this Court dismissed Counts III, IV, V, and VI of the Amended Complaint without prejudice. The Second Amended Complaint recites, nearly verbatim, the same allegations and legal claims for the same Counts as they appeared in the Amended Complaint, but with a few small distinctions. As will be discussed in greater detail, below, these distinctions do not cure the deficiencies inherent in the Amended Complaint and the dismissals of these Counts must stand.

A. COUNTS III AND IV: THE "NAMED PHYSICIAN" CLAIMS

This Court previously provided a succinct description of Counts III and IV, as they appeared in the Amended Complaint, noting that "Count III alleges that Defendants submitted fraudulent claims insofar as the claims falsely certified either expressly or by implication that a "particular, Named Physician" (Dr. O'Laughlin or Dr. Jain) performed certain radiation services, when that "Named Physician" did not provide the services, did not supervise the services, and was not on the premises or otherwise available at the facility when the services were rendered." [DN 76 at 3, quoting DN 53 at ¶¶86-88.] Count IV presented a claim that the Defendants made or used a "false record" to state that the Named Physician performed the radiation services, supervised the services and was on the premises, when in fact, the Named Physician was not. [DN 76 at 4.] This Court summarized these claims even further, stating that "Counts III and IV merely allege that the particular physician listed on the claim form did not perform or supervise the service." [*Id.* at 16.]

This Court dismissed these claims without prejudice. Specifically, the Court interpreted 42 CFR §410.26(b)'s requirements regarding billing for "incident-to" services to contradict Relator's assertion that the actual, supervising physician must be named in order for the services

[7] The Order allowed Relator 14 days to file a Second Amended Complaint. This deadline was extended following Relator's filing of the Motion to Reconsider, but Relator has now filed the Second Amended Complaint, allowing him the opportunity to attempt a curative pleading.

to be reimbursable. [DN 76 at 17-18.] This Court distinctly found that, with regard to §410.26(b), "the regulation's requirement that only the supervising physician bill Medicare is not a condition of payment." [*Id.* at 18.] Instead, the regulation merely "clarifies that only one physician may bill for a service" and that the supervising and the treating physician may not both bill for incident-to services. [*Id.*] The Court then dismissed Counts III and IV, noting that:

> "Thus, while Relator alleges that the particular physician named on certain claims did not actually supervise those services, whether the particular named physician, Dr. Jain or Dr. O'Laughlin, was actually the physician who supervised the service would not impact Medicare's obligation to pay for the services, so long as they *were directly supervised by a physician*. Because Relator does not allege that the identified services were not supervised by *any physician*, he has failed to allege a material violation of the FCA."

[*Id.* (emphasis in original).] Therefore, the Court noted that so long as the services were supervised by a physician, these claims are reimbursable as "incident-to" claims. Because the Amended Complaint "did not allege that the identified services were not supervised by *any physician*" this Court dismissed Counts III and IV without prejudice, affording Relator 14 days to cure this deficiency in another amended complaint. [*Id.* at 29.]

Relator has now made this curative effort through the addition of the already-rejected "qualified physician" supervision standard that was previously dismissed with prejudice. Specifically, the Second Amended Complaint adds two new paragraphs, 88 and 89, which state:

> "88. In addition to being false, many of the Absent Physician claims were fraudulent, in that they represented that a qualified physician provided, or supervised, services billed in these claims, whereas in truth and fact:
>
> (a) no qualified physician provided these services;
>
> (b) no qualified physician supervises [*sic*] the provision of these services; and
>
> (c) no qualified physician was on the premises, or scheduled to be in the facility where these services were provided…
>
> 89. The Defendants made the above false and fraudulent statements and representation in the Absent Physician claims to purposely conceal and cover-up from the Contractors…that no qualified physician provided or supervised the services."

[DN 91 at ¶¶ 88, 89.] The Second Amended Complaint continued to repeat the allegation that "neither the Named Physician, nor any qualified physician, provided or personally or directly supervised the described services." [*Id.* at ¶¶ 95, 99, 103, 107.] The representative claims in the Second Amended Complaint articulated claims for the same patients previously asserted in the radiation therapy claims of Counts I and II. Yet again, the claims enumerated in the Second Amended Complaint as representative examples in Counts III and IV are radiological, technical, claims; consisting either of radiation therapy administration or radiological diagnostic testing, such as PET scans. These technical radiological claims do not have a heightened supervision requirement beyond radiation therapy delivery. Indeed, these services, likewise, would only require supervision of "a physician."[8] However, Relator, as he does with radiation therapy delivery procedures, impermissibly conflates the supervision requirement to require a radiation oncologist. [DN 91 at ¶32.] Once again, this Court has rejected this heightened supervision requirement when it dismissed Counts I, II, and VII to the extent that they alleged that a radiation oncologist was required to supervise these procedures. As such, the Second Amended Complaint fails to cure the deficiencies that were present in the initial Amended Complaint and Counts III and IV should remain dismissed.

B. COUNTS V AND VI: THE CHEMOTHERAPY CLAIMS

Yet again, the Second Amended Complaint adopts an almost verbatim approach to Counts V and VI as did the Amended Complaint. This Court noted that, in Count V, the Amended Complaint asserted "that Defendants presented claims that falsely certified expressly or by implication that certain chemotherapy services had been provided by or supervised by Dr. Jain,

[8] From the language of the Second Amended Complaint, it appears as though Relator concedes that the supervision requirement for the radiological testing claims, such as claims for PET scans, are the same as radiation therapy delivery, as the Second Amended Complaint does not plead any different supervision requirement.

whereas the services were actually provided either by a physician's assistant or nurse practitioner." [DN 76 at 4.] Count VI alleged that, as an extension of these factual underpinnings, Defendants created or used a false record to state that Dr. Jain provided or supervised chemotherapy services that were actually provided either by a physician's assistant or a nurse practitioner. This Court dismissed Counts V and VI of the Amended Complaint, noting that "the Amended Complaint falls short of alleging that no physician supervised these chemotherapy services," describing the deficient pleading by noting that "Relator does not allege that *no* physician supervised the chemotherapy services, but rather, only that a particular physician-Dr. Jain-did not supervise these services." [DN 76 at 22.] As with Counts III and IV, this Court dismissed Counts V and VI of the Amended Complaint without prejudice and afforded the Relator fourteen days to file an amended complaint to cure these deficiencies.

In Relator's Second Amended Complaint, he adopts a near-verbatim recitation of the pleading of Counts V and VI from the Amended Complaint with one small change. Whereas previously, the Amended Complaint alleged that the Defendants fraudulently represented "chemotherapy services…as having been provided by Kirti K. Jain, M.D., but which were in fact provided by a physician's assistant or a nurse practitioner," [DN 53 at ¶¶129, 137, 145, 153] the Second Amended Complaint added an additional descriptor, to state that the Defendants fraudulently represented "chemotherapy services…as having been provided by Kirti K. Jain, M.D., but which were in fact provided not by Dr. Kirti K. Jain or by any physician, but by a physician's assistant or a nurse practitioner." [DN 91 at ¶¶ 131, 139, 147, 155.] This additional language, however, does not cure the deficiency that led to the dismissal.

This Court dismissed Counts V and VI in the Amended Complaint because it agreed with Defendants that they "[fell] short of alleging that no physician *supervised* these chemotherapy

services." [DN 76 at 22 (emphasis added).] Likewise, even with the additional language of the Second Amended Complaint, the Relator has not pleaded that no physician supervised the chemotherapy services. Instead, the Relator merely pleads, as he did in the dismissed Counts in the Amended Complaint, that the services were *performed* by a physician's assistant or nurse practitioner. The Second Amended Complaint pleads no allegations whatsoever regarding supervision of these services by any physician other than Dr. Kirti Jain. Indeed, the newly added language in the Second Amended Complaint merely provides a distinction without a difference. In both the Amended and Second Amended Complaints, the Relator pleaded that the services were provided by a physician assistant or nurse practitioner. In both Complaints, the Relator failed to plead that no physician supervision occurred. As such, the substance of the Relator's pleading of Counts V and VI do not change at all. Relator has not cured the deficiencies in Counts V and VI in the Second Amended Complaint, and they therefore must remain dismissed.

## III. THE REMAINING CLAIMS, INVOLVING FALSE CERTIFICATION OF RADIATION ONCOLOGY SERVICES, REVIEWAL OF APPROVED GUIDANCE IMAGES, FAILURES TO COMPLY WITH CONDITIONS OF PAYMENT RELATED TO SIMULATION SERVICES AND THE CONSPIRACY CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM WITH PARTICULARITY UNDER FED R. CIV P. 12(b)(6) AND 9(b).

This Court dismissed Counts I, II, and VII of the Amended Complaint with prejudice to the extent that these claims were based on Defendants alleged false certification, and/or creation of a false record stating that radiation therapy delivery and simulation services were performed by a radiation oncologist. [DN 76 at 28-29.] This Court also dismissed Counts III, IV, V, and VI without prejudice, as they were deficiently pleaded. [DN 76 at 29.] The Second Amended Complaint rejects the Court's October 20th Order, indiscriminately adopts the pleading of Counts I, II, and VII, without removing any of the allegations that were dismissed with prejudice. As

explained, above, the Second Amended Complaint also fails to cure the deficiencies behind the dismissal of Counts III, IV, V, and VI. Following the Court's October 20, 2020 Order, the only remaining claims at issue in this case were those based upon allegations of Counts I and II that Defendants falsely certified that certain radiation oncology services were performed by Relator or another qualified radiation oncologist, when they were not performed by a qualified radiation oncologist; and that the Defendants falsely certified that a qualified physician reviewed and approved guidance images. [DN 76 at 29.] The Order also allowed allegations of lack of documentation related to simulation procedures in Count VII and the conspiracy claim of Count VIII to proceed to discovery. [*Id.*] In the October 20th Order, the Court noted certain areas that the Defendants failed to address in the initial Motion to Dismiss, which allowed these claims to proceed to discovery. The Defendants now address these areas. The Second Amended Complaint fails to state a claim with requisite particularity upon which relief may be granted and therefore must be dismissed.

## A. THE FRCP 12(b)(6) AND 9(b) PLEADING STANDARD

It is well settled that the primary function of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint. *See, e.g., Denton v. Bedinghaus*, 40 Fed. Appx. 974, 976-77 (6th Cir. 2002). The United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), ushered in a new pleading standard that moved away from the pure notice pleading standard that had previously been employed by the Federal Rules of Civil Procedure. *See In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 911-12 (6th Cir. 2009) (recognizing need for more than simple notice and conclusory statements of ultimate facts about the case subsequent to *Twombly*). Two years later, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court clarified the new *Twombly* standard and asserted that while the new pleading

standards governing Rule 8(a) do not require "detailed factual allegations," they do require "factual enhancement." *Id*. at 1949. Only "a complaint that states a plausible claim for relief" will survive a motion to dismiss. *Id*. at 1950. This is a "context–specific task" requiring the court "to draw upon [its] judicial experience and common sense." *Kiser v. Kamdar*, 831 F.3d 784, 787 (6th Cir. 2016) (citations omitted). The Sixth Circuit has followed *Iqbal* and *Twombly* without hesitation. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (the combined effect of *Twombly* and *Iqbal* require plaintiffs to have greater knowledge now of factual details in order to draft a 'plausible complaint'").

In deciding a 12(b)(6) challenge, the Court must accept all well-pleaded factual allegations as true. *Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 Fed. Appx. 504, 507 (6th Cir. 2012). The Court is not required, however, to accept conclusory legal allegations as correct. *Id*. Instead, when a party chooses to plead a legal theory in the complaint, that complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (citation omitted). Perhaps most importantly, courts must keep in mind that "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. These requirements were even required under the more relaxed "notice pleading" standard that existed prior to *Iqbal* and *Twombly*.

In evaluating the purported claims that are pleaded, the Court must do so while taking consideration of *Iqbal*'s plausibility standard. Again, specifically, any claims that are pleaded as

potential representative examples of fraud must be pleaded in such a way to be more than "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Conclusory allegations are not entitled to any presumption of truth. *Rodriguez*, 465 Fed. Appx. at 507. Likewise legal conclusions are not entitled to any presumption of truth. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d. 389, 405 (6th Cir. 1998), ("Only well-pleaded facts, however, must be taken as true. The trial court need not accept as true legal conclusions or unwarranted factual inferences.")

## B. THE ELEMENTS OF THE FALSE CLAIMS ACT

In order to satisfy an FCA claim, the government must prove the following elements:

> First, the defendant must have made a false statement or created a false record, and must have done so with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information. Second, the defendant must have submitted a claim for payment to the federal government. Third, the defendant's false statement must have been made with the purpose of getting a false or fraudulent claim paid or approved by the government. Finally, the defendant's false statement or record must have been material to the government's decision to make the payment sought in the defendant's claim.

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496, 505 (6th Cir. 2008) (citations omitted). The FCA requires a showing of a scheme to defraud; innocent mistakes or mere negligence are not actionable. *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 413 (6th Cir. 2016). To that extent, in order to be actionable under the False Claims Act, a claim must include a false statement that is material to the government's decision to pay a claim. *U.S. ex. rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc*., 400 F.3d 428, 442-43 (6th Cir. 2005). In determining materiality, only actual, and not theoretical or conjectural, damages are recoverable under the FCA. *U.S. v. United Tech. Corp.*, 626 F.3d 313 (6th Cir. 2010).

## C. THE PHYSICIAN SERVICES CLAIMS OF COUNTS I AND II.

In the October 20th Order, this Court dismissed Counts I and II with prejudice insofar as they related to supervision requirements for radiation therapy services. However, this Court noted that "Yet, the Amended Complaint identifies allegedly false claims for radiation oncology services that appear to correspond specifically to *physician services*, as opposed to services performed by technical staff" with physician supervision. [DN 76 at 9.] The Order specifically provides the codes which are allegedly physician services, "falling outside the range labeled as technical" by the Claims Processing Manual (codes 77401-77416)." [*Id.*] To the extent that the Second Amended Complaint alleges CPT Codes 77401-77416 to be professional, physician codes, as opposed to "technical" codes that do not require a physician to perform, the Second Amended Complaint has pleaded a legal conclusion which is a falsehood. The *Medicare Claims Processing Manual* Ch. 13, §70.3 specifically acknowledges that codes 77401-77416 relate to radiation treatment delivery services, and notes that "MACs pay for these TC (technical component) services on a daily basis under CPT codes 77401-77416 for radiation treatment delivery." In fact, the Relator acquiesces that the CPT Codes listed within the representative examples in Counts I and II are not typically performed by a physician, but instead are performed by auxiliary personnel under physician supervision. [DN 91 at ¶ 39.] The Second Amended Complaint even goes so far as to outline the level of supervision required for each of these codes. [DN 91 at 13-14.]

As such, not only does the Second Amended Complaint fail to plead with specificity any professional, physician claims that were not performed by radiation oncologists in Counts I and II, the Second Amended Complaint is internally contradictory, inasmuch as it acknowledges that the codes at issue are not performed by a physician, but by auxiliary personnel with physician supervision. As such, the Second Amended Complaint fails to state a claim with requisite particularity and must be dismissed.

D. CLAIMS OF FAILURE TO REVIEW GUIDANCE IMAGES IN COUNTS I AND II.

The Second Amended Complaint alleges that "the supervision requirements of CMS" include a requirement that "the qualified radiation oncology physician must review and approve guidance images that were produced prior to each daily treatment within 24 hours or prior to the next treatment delivery." [DN 91 at ¶ 38.] This allegation is parroted from Paragraph 38 of the Amended Complaint, and the Defendants failed to address it in the original Motion to Dismiss. Therefore, the Court, while dismissing Counts I and II with prejudice, allowed discovery to proceed regarding whether the Defendants falsely certified that this "requirement" was complied with. While absent in their first Motion, Defendants address this allegation now in the Motion to Dismiss the Second Amended Complaint.

Relator plead, twice in the Second Amended Complaint, this alleged requirement that guidance images must be reviewed by a "qualified radiation oncology physician" within 24 hours or prior to the next treatment delivery"; however the Second Amended Complaint does not provide any citation to any such requirement, nor does any such requirement seem to appear in Chapter 13 of the Medicare Claims Processing Manual, or in Chapter 15 of the Medicare Benefit Policy Manual. This allegation is nothing more than a conclusory allegation which is insufficiently pleaded. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Even more so, the pleaded allegation runs contrary to guidance provided by professional service organizations such as the American Society of Radiation Oncology ("ASTRO"). In January of 2013, ASTRO published its "Health Policy Coding Guidance for Image Guided Radiation Therapy-Coding and Physician Supervision Guidelines" whereby it noted that "A radiation oncologist, or a medical physicist or trained therapist under the direct supervision of the radiation oncologist, reviews the automated image fusion and makes manual or automatic adjustments as necessary." *Id.* at 4. Contrary to the

Relator's uncited assertions, ASTRO has acknowledged that the review of guidance images need not be performed by the radiation oncologist, but can be performed by "a medical physicist or trained therapist" under the supervision of the radiation oncologist. Because the Second Amended Complaint only pleads that the guidance images were not reviewed by a radiation oncologist, it fails to plead an actionable claim under Rule 12(b)(6) and must be dismissed.

E. SIMULATION DOCUMENTATION CLAIMS IN COUNT VII.

The Second Amended Complaint pleads identical allegations as the Amended Complaint with regard to simulation services encompassed within Count VII. Both the Amended and Second Amended Complaint pleads that the Defendants violated the FCA by falsely certifying that documentation requirements and retention were satisfied, including that treating physician prepared a record of the simulation procedure and signed or initialed the record, when this was not the case; and that a radiation oncologist had performed the simulations, when the radiation oncologist had not, in fact performed the simulation. [DN 91 at ¶¶ 177-185.] Again, when faced with the exact same pleading, this Court dismissed Count VII to the extent that it alleged that Defendants falsely certified that a radiation oncologist performed the simulation services, because the services were, in fact, not required to be performed by a physician, but need only have been supervised by a physician. [DN 76 at 14.] The Order of dismissal, however noted:

> "Yet, Relator raises another basis for liability with regard to simulation services in the Amended Complaint…Count VII also alleges that "[t]he simulation claims were false and fraudulent, in that they represented by implication that the required documentation had been prepared by the treating physician and was maintained by the Defendants, whereas in truth and fact: (a) the treating physician did not prepare a written record of the simulation procedure, (b) the treating physician did not sign or initial a written record of the simulation procedure; and (c) the Defendants did not possess or maintain the Required Documentation."

[DN 76 at 14-15, quoting DN 53 at ¶181.] The Court noted that failure to document does not, in and of itself amount to a violation of the FCA. *U.S. ex rel. Sanderson v. HCA-The Healthcare*

*Co.,* 447 F.3d 873, 878 (6th Cir. 2006). Still, the Court acknowledged that failure to document can be the basis for a violation, if the documentation is a condition of payment. *Chesbrough v. VPA, P.C.,* 655 F. 3d 461, 467 (6th Cir. 2011). The Court went on to state that "Defendants do not specifically argue that the documentation requirements at issue were not a precondition of payment…Accordingly, Defendants have not shown that dismissal of these documentation-related claims regarding simulation services is warranted at this time." [DN 76 at 15.] The Second Amended Complaint adopts the language of the Amended Complaint verbatim as to Count VII, and Defendants now affirmatively argue that the documentation requirements set forth in the Second Amended Complaint preconditions of payment for simulation services.

Once again, the Second Amended Complaint contains no reference to CMS policy to establish this supposed precondition of payment. Instead, the Second Amended Complaint impermissibly attempt to establish this condition through articulations of legal conclusions, which are not entitled to deference. *Twombly,* 550 U.S. 544, 555. Moreover, this alleged condition is notably absent from guidance published by CMS' agents.

Noridian Healthcare Solutions serves as a Medicare Administrative Contractor ("MAC"), who acts as a fiscal agent for Medicare, administering the Medicare Program and processing claims. As a MAC, part of Noridian's role is to provide guidance as to Medicare conditions of payment through the issuance of published guidance. Among Noridian's published guidance includes guidance related to documentation requirements for radiation oncology services.[9] Aside from a general requirement that simulation services, like all oncology services, must contain sufficient documentation to establish medical necessity, there exists no requisite documentation for these procedures which would serve as a prerequisite for payment for the services. As such,

[9] https://med.noridianmedicare.com/web/jfb/specialties/radiation-oncology#documentation

the Second Amended Complaint fails to state an actionable claim, as documentation errors, in and of themselves, cannot serve as the basis of a FCA violation. Instead the burden is on the Relator to plead with requisite particularity that the documentation is a condition of payment. Because the Second Amended Complaint merely pleads this allegation through threadbare legal conclusions, the pleading standards are not met and this claim must be dismissed.

F. THE CONSPIRACY CLAIM OF COUNT VIII.

The Sixth Circuit has acknowledged that a successful civil conspiracy claim requires a showing that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective…and (3) an overt act was committed in furtherance of the conspiracy." *Robetson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir. 2007). Without the satisfaction of each of these elements, the civil conspiracy claim fails. As noted, above, Counts I-VII are hereby ripe for full dismissal. Because dismissal of these Counts is appropriate, there exists no "overt act" that can be "committed in furtherance of the conspiracy." Put another way, the Defendants cannot conspire to do nothing wrong.

Because Counts I-VII fail to state and actionable claim for a violation of the FCA, there can be no conspiracy to violate the FCA if there is no scheme by which the FCA is to be violated.

As such, the conspiracy claim must likewise be dismissed.

WHEREFORE, the Defendants respectfully move that the Second Amended Complaint be DISMISSED.

Respectfully submitted,

*/s/ Christopher A. Melton*
Christopher A. Melton

cmelton@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, Kentucky 40202
Telephone: 502.589.5235

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27th, 2021, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the Parties.

*/s/ Christopher A. Melton*
Christopher A. Melton

61898044.1