**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ROBERT C. O'LAUGHLIN, M.D.** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICES, P.S.C., dba ASHLAND BELLEFONTE CANCER CENTER, et al.,** | ) | |
| **Defendants.** | ) | |

**OPPOSITION OF RELATOR ROBERT C. O'LAUGHLIN, M.D. TO THE JOINT MOTION OF THE DEFENDANTS TO DISMISS THE SECOND AMENDED COMPLAINT**

Robert C. O'Laughlin, M.D., Relator in this matter, acting through his undersigned attorney, opposes the Joint Motion of the Defendants to Dismiss his Second Amended Complaint (the "Motion to Dismiss"). In support of this Opposition, Dr. O'Laughlin submits the following.

**MEMORANDUM**

As a preliminary matter, Dr. O'Laughlin acknowledges that there is merit to *part of* the Defendants' Motion to Dismiss, viewed in light of (1) this Court's prior order (Dkt. 76) on the Defendants' motion to dismiss Dr. O'Laughlin's first amended complaint, coupled with (2) this Court's prior order (Dkt. 97, dated August 30, 2021) on Dr. O'Laughlin's motion for limited reconsideration of that order.[1]

[1] As further discussed below, Dr. O'Laughlin sought an amendment of the Scheduling Order (Dkt. 85), which required, *inter alia,* that he file his Second Amended Complaint on or prior to July 16, 2021, doing so by motion dated July 7, 2021. (Dkt. 87.). As explained in that motion, the reason

For this reason, Dr. O'Laughlin has prepared a proposed Third Amended Complaint, which narrows the scope of the Complaint to carefully conform to both orders and the legitimate arguments made by the Defendants in their motion. (Dkts. 76, 97.) For the reasons discussed herein, Dr. O'Laughlin seeks leave of this Court to file this proposed Third Amended Complaint.

In addition, Defendants have produced their first set of documents in discovery, making it clear to Dr. O'Laughlin that the available evidence justifies his going forward with a narrower scope of allegations.

## I. HISTORY OF THE CASE

### A. Procedural History

The initial Complaint (Dkt. 1) was filed under seal on December 7, 2016 and named five defendants: three clinics, one billing company, and one medical oncology physician, this physician being Defendant Kirti K. Jain, M.D. The clinics were:

(a) Radiation Therapy Services, P.S.C., dba Ashland Bellefonte Cancer Center ("Ashland BCC")[2];

(b) Kirti K. Jain, M.D., P.S.C., dba Highlands Cancer Center ("Highlands CC"); and

(c) Logan Oncology Care Associates, LLC, dba Logan Regional Cancer Center ("Logan CC").

The billing company was A One Biz Solutions, LLC ("A One Biz").

---

for this request was that Dr. O'Laughlin's undersigned counsel had undergone coronary surgery in May. Although the motion was granted as for all other deadlines, the deadline for filing the Second Amended Complaint was not extended. (Dkt. 88.) Accordingly, Dr. O'Laughlin filed his Second Amended Complaint within the time frame so required, doing so on July 15, 2021.

[2] Ashland BCC has since assumed the name "Precision Cancer Center" for operating purposes, filing a Certificate of Assumed Name with the Kentucky Secretary of State on October 1, 2020.

As alleged in the initial Complaint, all three clinics had overlapping management and personnel (Dkt. 1 at ¶¶ 8, 10, 12); all three clinics used the same billing company, Defendant A One Biz, for the submission of claims to federal insurance programs (Dkt. 1 at ¶ 14, 64); and Manish Jain, one of the managers of the billing company (who has since been added as a defendant), was also the manager of one of the clinics (Logan CC) (Dkt. 1 ¶¶ 12, 14, 64).

Contrary to the protestations of the Defendants, the Government *affirmatively did not abandon* the Complaint after conducting its investigation, but instead reached a settlement with *one* of the clinics, this being Logan CC. The Government thereafter filed a Notice of Dismissal with prejudice as to this defendant only. (Dkt. 65.) Then, the Government not only allowed Dr. O'Laughlin to pursue the case, but to also allow him to *add another defendant*: Manish Jain.[3] Thus, the Government has demonstrated a level of approval of Dr. O'Laughlin's continued prosecution of this lawsuit on behalf of the United States.[4]

After the Government settled with Logan CC, Defendant A One Biz filed a Motion to Dismiss (Dkt. 47), doing so on December 13, 2019. On December 26, 2019, all Defendants

[3] The United States has the express authority to dismiss an action when it deems appropriate, including when it deems that the continued pursuit of a case by a relator of a declined matter to be to be, *inter alia*, meritless, a waste of government resources, or otherwise against the Government's interest, *see* Mem. M. Granston, Dir., Comm. Litig. Branch, Fraud Sec., U.S. Dept. Justice to Attorneys, Comm. Litig. Branch, Fraud Sec., U.S. Depart. of Justice and Asst. U.S. Attorneys, Offices of the U.S. Attorneys, *re* Factors for Evaluating Dismissal Pursuant to 31 U.S.C. § 3730(c)(2)(A) (Jan. 10, 2018). Here, however, the Government has affirmatively chosen to *not* seek any such dismissal.

[4] Dr. O'Laughlin filed his Amended Complaint on January 13, 2020. (Dkt. 53.) The Amended Complaint (hereinafter the "Complaint") added additional particularity for some allegations, and clarified regulatory requirements regarding the supervision of radiology and chemotherapy services; but it did not add any new causes of action. It did, however, add a new defendant, Manish Jain, alleged to be both a member and manager of Defendant A One Biz Solutions, LLC ("A One Biz") and a manager for two of the named clinics, *viz.*: Logan CC and Ashland Bellefonte Cancer Center ("Ashland BCC") (Amd. Cmpl. ¶ 7).[4]

(including A One Biz) filed a second, joint, Motion to Dismiss (Dkt. 48). Dr. O'Laughlin then filed an Amended Complaint (Dkt. 53), adding Manish Jain as a defendant; removing Logan CC as a defendant (while retaining it as a co-conspirator); and narrowing some of the issues.

The Defendants filed their (renewed) Motion to Dismiss (Dkt. 58-2) and memorandum in support thereof (Dkt. 58-3). Dr. O'Laughlin's Response was filled on March 6, 2020 (Dkt. 66).

After being fully briefed, this Honorable Court issued its Order (Dkt. 76) denying the motion as to some of Dr. O'Laughlin's allegations; granting the motion without prejudice as to other such allegations; and granting the motion with prejudice as to still other such allegations. In contrast to specific <u>allegations</u> within specific <u>claims</u> (*e.g.*, counts), *no claim in its entirety was dismissed with prejudice*; and the Court expressly granted Dr. O'Laughlin leave to file a second amended complaint to address its concerns regarding the allegations that had been dismissed without prejudice.

Dr. O'Laughlin filed a motion for reconsideration (Dkt. 77), which focused entirely on a question as to the requirements for the qualifications of a supervising physician with regard to radiation therapy services and radiation simulation services.[5] However, to meet the deadlines in the Scheduling Order, Dr. O'Laughlin filed his Second Amended Complaint (Dkt. 91) before that motion was decided by the Court.[6] It is this Second Amended Complaint that is the subject of the Defendants' Motion to Dismiss that is now at issue.

The Court then denied Dr. O'Laughlin's Motion for Reconsideration. (Dkt. 97.)

---

[5] The allegations addressing these are in Counts One through Four for the radiation therapy services; and Count Seven for the Radiation Simulation Services.

[6] Dr. O'Laughlin's Unopposed Motion to Amend the Scheduling Order Due to Attorney's Medical Issues (Dkt. 87), filed on July 2, 2021, was substantially granted (Dkt. 88); but as noted above, the deadline for filing the Second Amended Complaint was not changed.

To-date, none of the Defendants has filed an answer in this case.

### B. History of Discovery as Now Relevant to the Scope of Dr. O'Laughlin's Ongoing Claims

Dr. O'Laughlin served his first Request for Production of Documents on February 8, 2021, requesting eighteen categories of documents. Based upon an agreement among the parties, and pending resolution of any motion to dismiss the then yet-to-be-filed Second Amended Complaint, the scope of the requests concerning patient records was limited to only nine sample patients.

The defendants made their *first* production of documents on *August 14, 2021*,[7] doing so only *after* Dr. O'Laughlin filed his Second Amended Complaint. Based his review of the documents so-far produced, Dr. O'Laughlin is satisfied that it is worthwhile to pursue his claims while also narrowing the scope of the allegations that he made in his first and Second Amended Complaints; and will now defend only those allegations that remain within this narrower scope.[8] To make clear what allegations and claims he is defending and which he is abandoning, he has prepared a proposed Third Amended Complaint (hereinafter the "3rd Amd. Cmpl.," attached as an Exhibit to this Opposition).[9] To the extent that an allegation or claim is found in the Second Amended Complaint (hereinafter, the "SAC") but is not contained in the proposed Third Amended Complaint, Dr. O'Laughlin is withdrawing the allegation or claim.

---

[7] The sufficiency of this production remains the subject of significant dispute among the parties, with ongoing efforts being made to resolve these issues without recourse to the Court.

[8] To simplify this case going forward, Dr. O'Laughlin is narrowing his allegations as indicated below. Dr. O'Laughlin reserves any rights he may have to appeal the dismissal of any claims and allegations based upon Orders issued to-date.

[9] Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave, and that "The court should freely give leave when justice so requires."

### C. Scope of the Remaining Claims and Allegations

From this point onward, the scope of the allegations and claims that Dr. O'Laughlin will pursue for the purpose of discovery, summary judgment, and trial, are as follows:

**(1) For Counts I and II (Services Supposedly Provided by a Qualified Physician)**, he is pursuing as false claims only those claims billed to federal health insurance programs for radiation therapy or diagnostic services: (a) that have a professional component (as well as a technical component) for which services Medicare regulations require a qualified physician (that is, a physician with the requisite skills and education to provide radiation oncology services) to provide all or part of the service for billing purposes; and (b) for which *no* such qualified physician *provided* such services, as demonstrated by proof that no physician was on the premises when the service was performed (discussed *infra*). (See Court Order at 8-10 (Dkt. 76).)

**(2) For Counts III and IV (Patients Supposedly Treated or Supervised by Physicians),** he is pursuing as false claims only those claims billed to federal health insurance programs for radiation therapy and diagnostic services: (a) that require performance or supervision by a physician (whether qualified or not, as the term "qualified" is defined above); and (b) for which no performance or supervision by *any* physician occurred, as demonstrated by proof that no physician was on the premises when the service was performed (discussed *infra*). (See Court Order at 15-21 (Dkt. 76).)

**(3) For Counts V and VI (Chemotherapy Patients Not Treated or Supervised by Physicians),** he is pursuing as false claims only those claims billed to federal health insurance programs for chemotherapy services: (a) that require performance or supervision by a physician; and (b) for which no performance or supervision by any physician occurred, as demonstrated by proof that no physician was on the premises when the service was performed (discussed *infra*). (See Court Order at 21-22 (Dkt. 76).)

**(4) For Count VII (Simulation Services),** he is pursuing only those allegations that no Required Documentation, material for the payment of the claim for chemotherapy claims billed to federal health insurance programs, was created or maintained. (See Court Order at 13-15 (Dkt. 76).)

**(5) For Count VIII (Conspiracy),** he is pursuing his conspiracy claim that the Defendants conspired to violate the federal False Claims Act by agreeing to engage in the conduct described in Counts I through VII. (See Court Order at 25-27 (Dkt. 76).)

With regard to allegations that *no* physician was on the premises when relevant service was performed, to either personally perform the services or otherwise supervise the services, Dr. O'Laughlin has alleged in the 3rd Amd. Cmpl. that he is in possession of relevant physician schedules and locations supporting these allegations.[10] With regard to his allegations concerning which services have technical components, which services have professional components, and which services have both, Dr. O'Laughlin has included a table in his 3rd Amd. Cmpl., setting forth the appropriate allegations.[11]

Other than these two additions, all other material changes in the proposed Third Amended Complaint—comparing it with the Second Amended Complaint—*eliminate* certain patient claims and *narrow* certain allegations regarding patient claims, thereby resulting in the new complaint fully conforming with this Court's prior orders. For this reason, the Defendants can suffer no surprise or prejudice from the proposed Third Amended Complaint.

---

[10] Proposed 3rd Amd. Cmpl. ¶¶ 43-46.

[11] Proposed 3rd Amd. Cmpl. ¶ 33.

## II. ARGUMENT

Dr. O'Laughlin asserts a set of related schemes to defraud federal health care programs, having one common thread: the lack of proper performance or supervision of radiation oncology and chemotherapy services with the intent that the programs would be billed for, and would pay for services that were not reimbursable given who actually performed the services provided and given the actual supervision provided; or not reimbursable at the same rate as if they had been performed by or supervised by a physician. In addition, failure to document simulation services is also alleged as one of the schemes.

Because this Court has already vetted Dr. O'Laughlin's Amended Complaint and his arguments made in support thereof, Dr. O'Laughlin will not belabor his arguments, nor the findings and holdings of the Court that permitted him to amend and otherwise go forward with his case. (Order, Dkt. 76.) However, he does respond below to specific points made by the Defendants in their motion to dismiss that require further discussion even in light of Dr. O'Laughlin's request for leave to file his proposed Third Amended Complaint.

### A. Technical v. Professional Components (Count I and II)

The Defendants complain that the physician services of Counts I and II in the SAC fail to adequately allege which service codes at issue in these counts have professional components as opposed to merely technical components. To the extent that this was ever a problem with the first or Second Amended Complaints, it has been rectified with Table II in the proposed Third Amended Complaint.[12]

---

[12] 3rd Amd. Cmpl. ¶ 33. As stated in this paragraph, the information in this table can be found in the CMS Physician Fee Schedule, which is available by year and code on the CMS website at: https://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx. For "Type of Information," the term "Payment Policy Indicators" must be selected. For "Modifier," the term

As noted in Table II, some codes have *both* technical and professional components. As explained by the Center for Medicare and Medicaid Services (CMS)[13]:

> Typically, radiology services have two separate components: a professional and technical component . . . . The technical component is billed on the date the patient had the test performed. When billing a global service, the provider can submit the professional component with a date of service reflecting when the review and interpretation is completed or can submit the date of service as the date the technical component was performed. . . . If the provider did not perform a global service and instead performed only one component, the date of service for the technical component would the date the patient received the service and the date of service for the professional component would be the date the review and interpretation is completed.

The codes billed by the Defendants, as alleged by Dr. O'Laughlin in his complaints, had no modifiers attached for *any* services, meaning that the codes used for the submission of claims billed for *both* the technical (provision of service) *and* the professional (*i.e.*, the Defendants billed *globally*), despite the fact that, as alleged for Counts I and II in the proposed Third Amended Complaint, no qualified physician provided the professional component.

For example, Among the codes at issue in this case is 77334 (Treatment Device Complex).[14] As again explained by CMS[15]:

> 70.5 - Radiation Physics Services (CPT Codes 77300 - 77399) (Rev. 1, 10-01-03)

---

"all Modifiers" should be selected. The modifier "TC" means technical component; the modifier "26" means professional component.

[13] "Guidance on Coding and Billing Date of Service on Professional Claims" (CMS Feb. 1, 2019), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/Downloads/SE17023.pdf.

[14] See SAC ¶¶ 31, 57, 62, and 94; 3rd Amd. Cmpl. ¶¶ 31, 33, 55, and 58.

[15] Medicare Claims Processing Manual Chp. 13 at 70.5, "70.5 - Radiation Physics Services (CPT Codes 77300 - 77399) (Rev. 1, 10-01-03)," https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c13.pdf

> [CMS Medicare Contractors] pay for the PC and TC of CPT codes 77300-77334 and 77399 on the same basis as they pay for radiologic services generally. For professional component billings in all settings, [the Contractors] *presume that the radiologist participated in the provision of the service,* e.g., reviewed/validated the physicist's calculation. CPT codes 77336 and 77370 are technical services only codes that are payable by [the Contractors] in settings in which only technical component is are payable.

(Emphasis added.)

As further explained on the CMS website[16]:

> 17. Radiation physics services (CPT codes 77300-77334, 77399) include a professional component (PC) *and* a technical component (TC). These services are covered following the same logic as other radiologic services that include PC and TC components.
>
> 1. The physician's professional component is covered in all settings when the billed service represents the physician's (e.g., radiologist, radiation oncologist) involvement in the care. Radiation dosimetry calculations are payable by Medicare Part B *only when the physician personally performs the service described in the code, or when the physician participated in the provision of the service* (e.g., reviewed or validated the physicist's calculation).
> 2. The technical component is covered only in settings where the TC is payable (e.g., freestanding clinic). The services provided by a Radiation Physicist are considered a part of the TC.
>
> * * * * * *

(Emphasis added.)

Dr. O'Laughlin has alleged that no radiation oncologist or other qualified physician performed the services identified as including a professional component. His allegations satisfy the particularly requirements of Fed. R. Civ. P. 9(b); and the Defendants' argument fails. To the extent that the Defendants rely upon codes 77401-77416, as codes for services having no professional components, for their argument that Counts I and II are defective[17], the proposed

[16] "Billing and Coding Guidelines for Radiation Oncology Including Intensity Modulated Radiation Therapy (IMRT)," LCD Determination ID Number L34652, https://downloads.cms.gov/medicare-coverage-database/lcd_attachments/34652_13/L34652_RAD014_BCG.pdf

[17] Defendants' Motion to Dismiss at 25 (Dkt. 95).

Third Amended Complaint *removes these codes* from Counts I and II as the basis for any alleged false claims.

**B. Simulation Claims (Count VII)**

Dr. O'Laughlin alleges in Count VII of both the SAC and the Proposed Third Amended Complaint that the Defendants billed for simulation services, using codes 77280 for simple simulation procedures and 77290 for complex simulations. He also alleges that the Defendants failed to document, and to maintain documentation of these procedures; that such documentation was required and material to the payment of the claims submitted for these services; and, for these reasons (and for an additional reason) the claims were false.

Section 1833(e) of the Social Security Act (42 U.S. § 1395I) requires that: "No payment shall be made to any provider of services or other person under this part unless there has been furnished such information as may be necessary in order to determine the amounts due such provider or other person under this part for the period with respect to which the amounts are being paid or for any prior period." As further explained by the District Court in *United States ex rel. Borges v. Doctor's Care Med. Ctr., Inc.*, No. 01-8112-CIV-RYSKAMP/VITUNAC, 2007 U.S. Dist. LEXIS 118341, at *10 (S.D. Fla. Jan. 25, 2007) ("*Borges*"*)*:

> Reimbursement is only available under Medicare Part B or the FEHBP unless adequate documentation exists in the beneficiary's medical file to demonstrate the performance and necessity of the services being billed. If the carrier pays the claim and subsequently discovers that the medical documentation is inadequate, the United States is entitled to deny the claim retroactively and obtain a refund. See 42 CFR § 413.64 (f).

While (as *Borges* demonstrates) proper documentation is a precondition for payment, because of the huge volume of claims submitted pursuant to federal health insurance programs, the documentation for the required information does not have to be provided for each claim, but can be certified as having been created and maintained by the provider of the service. *Id.*

When a provider bills CMS (or other payor) using a CPT Code, it is making an express statement that the specifications and conditions defining that code have been satisfied.[18] In other words, instead of using a paragraph (or more) to describe the procedure, the provider simply uses the code (a number) for the same purpose: the provider makes a statement by using a five-digit code instead of a lengthy description.

Among the specifications included in all radiology CPT Codes is the following: "A written report signed by the interpreting individual should be considered an integral part of a radiological procedure or interpretation." CPT Professional Edition 2015 at 407, American Medical Association (AMA)[19]. Thus, by using these codes, the provider tells the payor that it has documented the procedure with the specified written, signed report. The existence and maintenance of this documentation *is material*: "Documentation of simulation requires a written record of the procedure and hard copy of a x-ray film or electronic images and evidence of image review by physicians including signature or initials and data review." *See* Radiation Oncology Including Intensity Modulated Radiation Therapy (IMRT) at 5, National Imaging Associates, Inc. (Oct. 2015) (Dkt. 66-4 at 6).

The Defendants concede that the SAC (as does now the proposed Third Amended Complaint) expressly alleges that the required documentation is a precondition for payment. (MTD

---

[18] As explained by the Office of the Inspector General of the U.S. Department of Health and Human Services:

> Level I HCPCS codes consist of Current Procedural Terminology (CPT) codes, a numeric coding system maintained by the AMA [American Medical Association], and are used primarily to identify medical services and procedures furnished by physicians and other health care professionals . . . .

"Medicare Improperly Paid Hospitals Millions of Dollars for Intensity-Modulated Radiation Therapy Planning Services" at 2, Report No. A-09-16-02033 (August 2018)

[19] The AMA holds the copyright to the CPT codes, and publishes the description of these codes.

at 28). They then argue that the SAC contains no "reference to CMS policy to establish this precondition of payment." No such reference is necessary: the *factual* allegation is made in the Complaint, and the allegation is adequately supported by the *law and policy* set forth above. There is no requirement that a complaint be drafted as a legal argument or court brief: facts must only be *alleged* by the plaintiff, while the law is decided by the Court.

Here, the definitions for the relevant CPT codes are incorporated into the Complaint by reference. The law establishes that the representations concerning documentation made by the use of these codes are material preconditions for payment. As explained by the U.S. Supreme Court in a nursing home and counseling case:

> [B] submitting claims for payment using payment codes that corresponded to specific counseling services, [the Defendant] represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment. Moreover, [Defendant] staff members allegedly made further representations in submitting Medicaid reimbursement claims by using National Provider Identification numbers corresponding to specific job titles. And these representations were clearly misleading in context.

*Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 136 S. Ct. 1989, 2001 (2016).

Count VII is adequately pled.

### C. The Conspiracy Claim (Count VIII)

The Defendants limit their attack on Dr. O'Laughlin's conspiracy claim (Count VIII) to this argument: if Counts I though VII are all dismissed, then there is no unlawful plan and no overt act in furtherance of any unlawful plan; and, under such a circumstance, the conspiracy charge must also be dismissed. Having failed to raise any other challenge to Count VIII, the Defendants are left with the following ineluctable corollary: if any of Counts I through VII survive the motion to dismiss, then the conspiracy claim must also survive.

For the reasons set forth above, all count, Counts I though VII and thus also Count VIII, must stand.

### D. Remaining Claims

All remaining arguments that the Defendants raise in their Motion to Dismiss are remedied by the revisions to Dr. O'Laughlin's pleadings found in the proposed Third Amended Complaint.

## III. DR. O'LAUGHLIN SHOULD BE GRANTED LEAVE TO FILE HIS THIRD AMENDED COMPLAINT

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave, and that "The court should freely give leave when justice so requires."

The proposed Third Amended Complaint does not add any new claims; does not add any new parties; and does not add any new legal theories. What it does do is eliminate allegations and narrow the claims already presented: it effectively grants many of the arguments raised by the Defendants and thus will serve to streamline the litigation in this case and clarify the remaining issues in dispute.

No defendant will be harmed or suffer prejudice by granting leave to Dr. O'Laughlin to file his Third Amended Complaint, for at least the following reasons:

(a) No Defendant has as yet filed an answer in this case;

(b) No depositions have yet been taken;

(c) Only three of the five Defendants have served any requests for discovery[20], doing so—for the first time—on September 15, 2021. (Each served four or five interrogatories and four or five requests for production of documents.)

[20] These three Defendants are the business entities: Ashland BCC, Highlands CC and A One Biz.

(d) No expert witnesses have yet been designated.

By allowing Dr. O'Laughlin to narrow his pleading, the Defendants will conserve resources in discovery; and be able to narrow their focus on allegations against which they must defend. By allowing Dr. O'Laughlin to narrow his pleading, Dr. O'Laughlin is essentially stipulating to several of the arguments made by the Defendants, thereby permitting the Court to save judicial resources in deciding issues raised in the Motion to Dismiss.

There is no undue delay here: Dr. O'Laughlin filed his Second Amended Complaint on July 15th as required by the Scheduling Order (Dkt. 88), doing so only after asking for and being denied an extension, based upon medical issues, for filing that complaint. (Dkt. 87).[21] The parties minimized the expenditure of resources in the discovery to-date, by agreeing to limit discovery of patient records to only nine patients pending the outcome of various motion practice, thereby demonstrating the good faith of Dr. O'Laughlin.

---

[21] This motion was unopposed by the Defendants.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss should be denied to the extent explained in this Opposition. Further, Dr. O'Laughlin should be granted leave to file his Third Amended Complaint.

By: /s/ Andrew Grosso

Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Facsimile: (202) 298-5599
Email: Agrosso@acm.org

Dated: September 27, 2021

*Attorney for Relator Robert C. O'Laughlin, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify on September 27, 2021, the foregoing was electronically filed with the clerk of the court by using the Court's electronic filing system to all counsel of record.

By: /s/ Andrew Grosso
Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Facsimile: (202) 298-5599
Email: Agrosso@acm.org

*Attorney for Relator Robert C. O'Laughlin, M.D.*