UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT ASHLAND

***Electronically Filed***

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ROBERT C. O'LAUGHLIN, M.D.<br><br>PLAINTIFFS,<br><br>v.<br><br>RADIATION THERAPY SERVICES, P.S.C. dba ASHLAND BELLEFONTE CANCER CENTER, KIRTI K. JAIN, M.D., P.S.C., dba HIGHLANDS CANCER CENTER, A ONE BIZ SOLUTIONS, LLC, MANISH JAIN, and KIRTI K. JAIN, M.D.<br><br>DEFENDANTS. | ) | CIVIL ACTION NO. 0:16-cv-148-DLB |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT**

The Defendants, Radiation Therapy Services, P.S.C. d/b/a Ashland Bellefonte Cancer Center ("ABCC"), Kirti K. Jain, M.D., P.S.C. d/b/a Highlands Cancer Center ("HCC"), A-One Biz Solutions, LLC ("A1B"), Kirti K. Jain, M.D. ("Dr. Jain") and Manish Jain ("collectively, "Defendants"), by counsel, and as their Reply in Support of their Motion to Dismiss the Second Amended Complaint, Defendants state as follows:

Relator's Response to the Defendants' Motion to Dismiss the Second Amended Complaint is a procedural curiosity. The Response rarely relies upon the actual pleading of the Second Amended Complaint, but instead references, with absolutely no specificity, allegations that Relator claims were unearthed during discovery and newly-pleaded allegations in an unfiled Third Amended Complaint. Ironically, Relator never offers any tangible example of what this newly

ascertained evidence that was allegedly brought to life during discovery actually is. More so, even if there were newly discovered evidence, it is immaterial to the determination of the merits of the Second Amended Complaint, and should be disregarded.

In fact, the Relator's Response, in large part, acquiesces to much of the Defendants' challenges of the Second Amended Complaint. In essence, the Response by and large admits that Defendants' arguments regarding the Second Amended Complaint are correct, and responds with a prayer for yet another opportunity to attempt correct the deficient pleadings. In the few instances where the Response does address the merits of the Motion to Dismiss, Relator utterly fails to justify the Second Amended Complaint's claims as actionable. As such, the Motion to Dismiss the Second Amended Complaint should be granted, and this Dismissal should be with prejudice such that Relator's improper petition for leave to file a Third Amended Complaint should be denied.

## SUMMARY OF THE RELATOR'S RESPONSE

From the outset, the Response acknowledges that "there is merit to part of the Defendants' Motion to Dismiss." [DN 102 at 1, *emphasis omitted.*] The Response devotes four pages to the procedural history of this case; however the history is actually quite simple and need not require such a verbose recitation. Relator filed the initial Complaint on December 7, 2016. [DN 1.] The United States investigated the allegations of the Complaint and declined to intervene against the Defendants. [DN 34.] After the Government's declination, the Relator served the Complaint upon the Defendants and the Defendants, noting the inherent deficiencies in the Complaint, filed a Motion to Dismiss on December 26, 2019. [DN 50.] Rather than Respond to the Motion to Dismiss, the Relator amended the Complaint in an attempt to cure the deficiencies on January 13, 2020. [DN 53.] This First Amended Compl +aint's attempts at rehabilitation were largely

unsuccessful and after this Court granted, in part, the Defendants' Motion to Dismiss the First Amended Complaint. [DN 76.] Relator thereafter filed a Second Amended Complaint which aimed to cure the deficiencies that led to the dismissal without prejudice of several of the Counts in the First Amended Complaint. [DN 91.] Again, however, this Second Amended Complaint not only failed to cure the deficiencies acknowledged in the original dismissal order, but also failed to adequately plead the remaining allegations. As such, the Defendants moved to dismiss the Second Amended Complaint. As has been the pattern with this case, Relator now wishes to sidestep a formal response to the Motion to Dismiss by seeking to once again amend the Complaint. At some point, Relator's pleading must stand on its merits, and Relator must be prohibited from attempting to sidestep FRCP 12(b)(6) and 9(b) scrutiny by simply filing new iterations of the same defective pleadings. For the reasons set forth below, the Second Amended Complaint is fatally deficient and must be dismissed.

## ARGUMENT

### I. THE RESPONSE'S REFERENCES TO ALLEGATIONS NOT PROPERLY PLEADED IN THE SECOND AMENDED COMPLAINT ARE NOT PROPERLY BEFORE THIS COURT AND MUST NOT BE CONSIDERED.

The Response relies, in very heavy fashion, upon legal conclusions as well as allegations that are not pleaded in the Second Amended Complaint. Specifically, the Response "acknowledges that there is merit to part of Defendants' Motion to Dismiss" and further states that "[f]or this reason, [Relator] has prepared a proposed Third Amended Complaint" in light of "the legitimate arguments made by the Defendants in their motion." [DN 102 at 1-2.] This "proposed Third Amended Complaint" is attached to the Response as an exhibit [DN 102-1] and the Relator references the proposed Complaint throughout the Response, stating that the deficiencies of the initial three Complaints filed in this case have "been rectified…in the proposed Third Amended

Complaint." [DN 102 at 8.] [*See also* DN 102 at 10-11 (claiming that the Third Amended Complaint removes deficient CPT codes); and 14 (stating "All remaining arguments that the Defendants raise in their Motion to Dismiss are remedied by…the proposed Third Amended Complaint.")] Despite making cryptic and non-specific allusions to discovery, that state that "Defendants have produced their first set of documents in discovery, making it clear to [Relator] that the available evidence justifies his going forward," [DN 102 at 2] the Response absolutely no tangible example of any such evidence that has been unearthed in discovery. But even so, the Defendants have not filed for summary judgment relief--they have filed a motion seeking dismissal because the Second Amended Complaint fails to state an actionable claim with requisite particularity. As such, even though the Defendants may disagree with Relator's subjective evaluation of unnamed evidence that he feels "justifies" proceeding, and may also feel that the Third Amended Complaint is as deficient as the three Complaints that preceded it, the Defendants shall withhold scrutiny of those parole matters until they are ripe. At this time, the Response's reliance upon the Third Amended Complaint, as well as its reference to discovery materials, is procedurally improper and cannot be considered.

Neither the allegations pleaded within the Third Amended Complaint nor any information delivered in discovery is relevant to or appropriate in the determination of whether the Second Amended Complaint meets the relevant pleading standards. Absent limited exceptions that do not apply here, when considering a motion to dismiss for failure to state a claim, the Court must confine its review to the controlling Complaint and matters outside the pleadings are not to be considered. *In Re: Fair Finance Company*, 834 F.3d 651 (6th Cir., 2016). This is because the primary function of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint. *See, e.g., Denton v. Bedinghaus*, 40 Fed. Appx. 974, 976-77 (6th

Cir. 2002). As such, the allegations of the controlling Complaint must stand on their own. In the present case, however, the Relator has acquiesced that the pleaded allegations in the Second Amended Complaint cannot withstand scrutiny on their own, both by his own admission and by dedicating the majority of his Response to matters that clearly fall outside of the Second Amended Complaint's four corners—his proposed Third Amended Complaint. [*See* DN 102, p. 1 ("Dr. O'Laughlin acknowledges that there is merit to part of the Defendants' Motion to Dismiss . . . ."), p. 14 ("All remaining arguments that the Defendants raise in their Motion to Dismiss are remedied by the revisions . . . found in the proposed Third Amended Complaint.")]. Because neither the proposed, but unfiled, Third Amended Complaint, nor any other information outside the pleadings of the Second Amended Complaint can be considered, dismissal of the Second Amended Complaint is warranted, as the controlling Complaint is fatally deficient.

## II. THE RESPONSE FAILS TO PROPERLY ADDRESS THE DEFICIENCIES WITHIN THE SECOND AMENDED COMPLAINT, AND THE SECOND AMENDED COMPLAINT MUST THEREFORE BE DISMISSED.

The Relator's Response makes numerous concessions as to the deficiencies of the Second Amended Complaint and admits that most of its claims cannot survive unless Relator is allowed to amend the Complaint for a *third* time. In fact, the Response only addresses two categories of claims as being even partly able to stand on their own as pleaded in the Second Amended Complaint—the professional component claims in Counts I and II and the documentation of simulation claims in Count VII. However, the Response's haphazard attempt to justify these claims lacks basis in pleading standards and is deficient given the history of this case. Therefore, the Second Amended Complaint must be dismissed.

A. THE RESPONSE ACQUIESCES THAT THE "NAMED PHYSICIAN" CLAIMS OF COUNTS III AND IV AS WELL AS THE "CHEMOTHERAPY CLAIMS" OF COUNTS V AND VI IN THE SECOND AMENDED COMPLAINT ARE DEFICIENTLY PLEADED AND MUST BE DISMISSED.

The Response admits the deficiencies of Counts III through VI of the Second Amended Complaint and makes no attempt to argue that they should survive at all. As to Counts III and IV, which deal with allegations related to "patients supposedly treated or supervised by physicians," the Response clarifies that the Relator intends to pursue claims for "radiation therapy and diagnostic services that require performance or supervision by a physician (whether qualified or not…) and for which no performance or supervision by *any* physician occurred." [DN 102 at 6 (*emphasis in original*).] The Response's stated intent is in stark contrast, however, to the actual pleadings of the Second Amended Complaint, which alleges that Defendants submitted claims which asserted "that a particular physician ("the Named Physician") provided or supervised services billed in these claims, whereas in truth and in fact, neither such Named Physician, nor any qualified physician provided…[or] supervised these services." [DN 91 at ¶ 117.] The Response acknowledges the deficiencies of the Second Amended Complaint and admits that the Relator's intention is now to abandon the allegations pleaded in the Second Amended Complaint altogether. This strategy is ironic, given that when this Court granted the Defendants' Motion to Dismiss Counts III through VI when they were pleaded in the First Amended Complaint, this Court noted that the First Amended Complaint did *not* plead that "*no physician* provided or supervised the services at issue" and "based on the allegations of the Amended Complaint, it cannot be reasonably inferred that no other physician supervised the procedures in question in lieu of the named physician." [DN 76 at 19 (*emphasis in original*;) see also *Id*. at 22, ("As with the 'named physician' claims, Relator does not allege that *no* physician supervised the chemotherapy services.") (*emphasis in original*)] Therefore, this Court gave explicit guidance as to how Counts

III through VI of the First Amended Complaint were deficient, going so far as to explain in detail how the Complaint would need to be amended in order to state a more actionable claim. The Relator was thereafter given a third opportunity to draft actionable claims and instead filed a Second Amended Complaint that preserved the same deficiencies as the dismissed Counts from the First Amended Complaint.

The Response groups Counts III through VI into a category he describes as "Remaining Claims" whereby he chooses not to defend the viability of the pleadings of the Second Amended Complaint, but instead states that, with respect to Counts III through VI, the "arguments that the Defendants raise in their Motion to Dismiss are remedied by the revisions to [the] pleadings found in the proposed Third Amended Complaint." [DN 102 at 14.] Relator was given the opportunity to cure his defective pleadings after the dismissal of these Counts in the First Amended Complaint, yet he failed to do so and essentially mirrored the same issues that prompted dismissal in the first instance. . Now, rather than address the Defendants' present Motion, Relator has asked for the opportunity to file yet another Complaint in this case. As Relator has not chosen to address the deficiencies cited in Defendants' Motion to Dismiss, Counts III through VI of the Second Amended Complaint should be dismissed.

B. THE RESPONSE ADMITS THAT THE SECOND AMENDED COMPLAINT'S PLEADING OF PROFESSINAL COMPONENT CLAIMS IN COUNTS I AND II OF THE SECOND AMENDED COMPLAINT ARE DEFICIENT AND FURTHER FAILS TO ADDRESS THE FALLACY OF THE SECOND AMENDED COMPLAINT'S EMPLOYMENT OF AN INCORRECT STANDARD FOR PHYSICIAN QUALIFICATION AND MUST THEREFORE BE DISMISSED.

From the outset of the Response's treatment of Counts I and II of the Second Amended Complaint, Relator acknowledges deficiencies in his pleading and states that said deficiencies are remedied in the proposed Third Amended Complaint. [DN 102 at 8.] The Response then treats

the unfiled Third Amended Complaint as controlling, while asserting facts not pleaded in any Complaint, stating that "[t]he codes billed by the Defendants…had no modifiers attached for any services…despite the fact that, as alleged in Counts I and II of the proposed Third Amended Complaint, no qualified physician provided the professional component." [DN 102 at 9 (no citation).] To this extent, the Response admits that the distinction between professional and technical services, which is crucial to the arguments involved in the Motion to Dismiss for Counts I and II, are not well pleaded and are deficient.

The Response completely ignores the arguments from the Motion to Dismiss which point out that Counts I and II of the Second Amended Complaint continue to utilize an improper definition of "qualified physician." In fact, rather than attempting to justify the use of the Relator's draconian and baseless standard of what makes a physician "qualified" for these services, the Response doubles-down on the definition, once again claiming that services which contain a professional and technical component require "a physician with the requisite skills and education to provide radiation oncology services." [DN 102 at 6.] Neither the Second Amended Complaint, nor the Response provide any basis for this legal conclusion.

Consequently, because the Response acknowledges the deficiencies of the pleading of Counts I and II of the Second Amended Complaint, all the while failing to address--beyond mere legal conclusions--Defendants' challenges to these Counts in their Motion to Dismiss, Counts I and II are fatally defective and must be dismissed.

C. THE RESPONSE ESTABLISHES THAT COUNT VII OF THE SECOND AMENDED COMPLAINT FAILS TO PLEAD A BASIS FOR ITS ASSERTION THAT CERTAIN DOCUMENTATION IS A CONDITION OF PAYMENT FOR SIMULATION SERVICES AND MUST THEREFORE BE DISMISSED.

As to Count VII of the Second Amended Complaint, the Response states that the Relator intends to pursue "only those allegations that no Required Documentation, material for the payment of the claim for chemotherapy claims [*sic*] billed to federal health insurance programs, was created or maintained." [DN 102 at 7.] The Defendants have asked to have this Count dismissed due to the fact that Relator has failed to plead, or otherwise show, that the documentation and signature are a condition of payment. It is well settled that a failure to document does not, in and of itself amount to a violation of the FCA. *U.S. ex rel. Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 878 (6th Cir. 2006). Instead, a failure to document can only be the basis for a violation, if the documentation is a condition of payment. *Chesbrough v. VPA, P.C.,* 655 F. 3d 461, 467 (6th Cir. 2011). The Response initially makes an attempt to discredit this proposition by 42 U.S.C. §1395I's language that "No payment shall be made to any provider of services or other person under this part unless there has been furnished such information as may be necessary in order to determine the amounts due such provider." However this statute merely codifies a requirement that claims for services actually be submitted, and does not propose to speak to any documentation required to be kept by a medical provider for the services themselves. Indeed, this plain reading of the statute is in line with CMS billing requirements. Chapters 1 and 24 of the *Medicare Claims Processing Manual* only require healthcare providers to submit claims for reimbursement on an appropriate claim form furnished by CMS (in the case of physician services, like those furnished by the Defendants, such claims are to be submitted on a CMS 1500 form) Under Medicare policies, providers do not submit the entire medical record for the patient serviced

because such documentation is not "necessary in order to determine the amounts due such provider" for the service billed.

The Response next cites *United States ex rel. Borges v. Doctor's Care Medical Center, Inc.,* 2007 WL 984404 at *10 (SD Fla., Jan. 25, 2007) as grounds that "proper documentation is a precondition for payment." [DN 102 at 11.] *Borges*, however, merely parrots the requirement that medical professionals must maintain adequate documentation to establish medical necessity for the services rendered. This general requirement does not establish the claims pleaded in the Second Amended Complaint, where Count VII merely alleges that a particular document was not created, signed, or maintained. Instead, even if the particular document referenced in the Second Amended Complaint was not maintained or signed, medical necessity for services can still be established through additional documentation in the medical file, as is recognized by the additional documentation request stage of CMS' post-payment review process. *See* 42 CFR §405.946 (allowing for submission of additional documentary evidence following a determination of overpayment by CMS.) Put simply, the Response mischaracterizes the ruling in *Borges*, which merely requires that billed services be medically necessary, as reflected in the medical record, and does not pose to create FCA liability for insufficient documentation or documentation errors, in general. If the Response's draconian reading of *Borges* were to be adopted, it would completely contradict the Sixth Circuit's holdings in *Sanderson* and *Chesbrough*.

The Response next cites an irrelevant provision to the AMA's published CPT Code book that does not create a condition of payment in any way. The statement, which reads "A written report signed by the interpreting individual should be considered an integral part of a radiological procedure or interpretation," [DN 102 at 12 (*citations omitted*)] originates from the American Medical Association's CPT Code Book and is found in the preamble to the chapter for radiology

codes. It is not specific to any of the hundreds of radiological CPT codes listed in that Chapter, nor does it appear in the CPT Code books published by other entities other than the AMA. Further, the plain language of this provision is, by its very language, clinically aspirational, and not intended to create a mandatory condition of payment.

Likewise, the AMA's suggestion that "a written report signed by the interpreting individual should be considered an integral part" of radiological procedures, does not correspond to the allegation of the Second Amended Complaint that "the treating physician [is required] to prepare a written report of the procedure, with a hard copy of an x-ray film or electronic images and evidence of image reviewed by the physician, including signatures or initials and date of review by the physician" or that such a "requirement was a precondition and was material for payment." [DN 91 at ¶181.] It appears from the Response, that Relator is claiming that this requirement comes from a transmittal entitled "Radiation Oncology Including Intensity Modulated Radiation Therapy (IMRT), National Imaging Associates (Oct. 2015)." [DN 102 at 12.] However, once again, this statement merely defines best clinical practices for documentation and does not state that any such documentation is required as a condition of payment for such services. As noted above, a failure to document can only be the basis for a violation if the documentation is a condition of payment. *Chesbrough v. VPA, P.C.,* 655 F. 3d 461, 467 (6th Cir. 2011). The burden of pleading such condition of payment rests upon the Relator in this case. The Relator has failed to do so and the Second Amended Complaint is therefore fatally deficient.

The Response addresses this deficiency head on, noting that the Motion to Dismiss "argue[s] that the [Second Amended Complaint] contains 'no reference to CMS policy to establish this precondition of payment,'" however the Response claims that "No such reference is necessary; the *factual* allegation is made in the Complaint." [DN 102 at 13.] Yet, simply claiming that certain

documentation is a precondition of payment is not a factual allegation. It is a legal conclusion. In deciding a 12(b)(6) challenge, the Court must accept all well-pleaded *factual allegations* as true. *Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 Fed. Appx. 504, 507 (6th Cir. 2012). The Court is not required, however, to accept conclusory legal allegations as correct. *Id*. Because whether the documentation at issue in Count VII of the Second Amended Complaint is a material precondition of payment is a legal, and not a factual question, the Second Amended Complaint's pleading that the documentation is "a precondition and was material for payment" is a legal conclusion that is not entitled to deference and fails to state a claim. Count VII of the Second Amended Complaint must therefore be dismissed.

D. THE CONSPIRACY CLAIM OF COUNT VIII MUST BE DISMISSED.

The Response acknowledges that if Counts I through VII of the Second Amended Complaint are dismissed, that Relator cannot meet the requisite elements of civil conspiracy and therefore Count VIII would merit dismissal as well. For all of the reasons set forth, above, as well as in the Motion to Dismiss the Second Amended Complaint, Counts I through VII are fatally defective and must be dismissed. As such, there would exist no set of facts by which Relator could meet the requisite elements of civil conspiracy. Because this is the case, Count VIII must be dismissed as well.

III. <u>THE DISMISSAL SHOULD BE WITH PREJUDICE.</u>

The Defendants have set forth ample reasons why the Court should dismiss the Second Amended Complaint. Under *Twombly* and *Iqbal*, the dismissals must be with prejudice. As *Iqbal* has noted, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In fact, in *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011), the Sixth Circuit affirmed the District Court's application of *Iqbal* when dismissing a complaint with prejudice for failure to plead a plausible claim and refused the plaintiff's request to amend his complaint. Specifically, where the *New Albany Tractor* Court held that when a Complaint is procedurally flawed, *Iqbal* declares that a "plaintiff may not use the discovery process to obtain facts after filing suit" in an effort to cure the deficiencies. *Id.* at 1051.

In fact, Relator's Response to Defendants' Motion to Dismiss the Second Amended Complaint offers widespread concessions of the arguments put forth in the Motion to Dismiss and instead reads more as a motion for leave to file a *fourth* complaint[1]. By filing an entirely new motion through his Response, Relator is attempting to frustrate traditional motion practice and ignore the Court-imposed limits placed upon him restricting his ability to amend his pleadings.

As noted, above, this Court granted in large part, the Defendants' Motion to Dismiss the First Amended Complaint on October 20, 2020. [DN .] As part of that Order, any amendment to the Complaint had to be filed within 14 days of the Order. [*Id.*] Instead of amending the Complaint, the Relator filed a Motion for Reconsideration on October 22, 2021. [DN 77.] This Court thereafter, on October 27, 2020, extended the fourteen-day deadline for amendment to the Complaint, ordering that "the Relator shall have until seven (7) days after the ruling by this Court on the Relator's Motion for Reconsideration…to file any second amended complaint." [DN 79.]

[1] From a procedural standpoint, filing a motion in this way is improper. Because Relator cannot amend as a matter of course, he must either seek consent from Defendants or leave from the Court prior to further amending his pleadings. Fed. R. Civ. P. 15(a)(1)-(2). Relator did not request any written consent from Defendants; thus, he is left with seeking this Court's approval. However, despite the fact that "[a] request for a court order must be made *by motion*," Relator embedded his request within the Relator's Opposition. *See* Fed. R. Civ. P. 7(b)(1).

On January 22, 2021, this Court issued a Scheduling Order, which required the parties to complete any amendments to the Complaint by July 16, 2021. [DN 85.] Later, the Court again amended the Scheduling Order, but left the amendment deadlines in place, despite Relator requesting an extension for filing a third amended complaint. [DN 87, 88.] Relator filed a Second Amended Complaint on July 26, 2021, ten days after the July 16th deadline. The Response, which serves as a de facto petition for leave to file a third amended complaint, was filed on September 27, 2021, nearly one month after the Motion to Reconsider was denied. In doing so, Relator completely ignored not one, but at least two deadlines for amendment: the July 16th deadline of the January 22nd Scheduling Order [DN 87;] and the deadline that amendments occur within seven days of the decision on the Motion to Reconsider, as required by this Court's October 27th Order [DN 79.]

By any operative deadline imposed by this Court, Relator has disregarded the requisite time frames for amendment, and Relator is not entitled to leave to remedy this failure. While the Scheduling Order remained unchanged in terms of the deadline for amending pleadings, Relator was given an exception in light of the Court's consideration of his Motion for Reconsideration: he was allowed to file a third amended complaint within seven days after the Court decided his Motion. (DN 90). However, Relator failed to take advantage of this slight extension by failing to make *any* request for leave prior to the Relator's Response filed on September 27th. [*See* DN 102.] By doing so, Relator implicitly is asking this Court to allow him to modify the Scheduling Order—again—by requesting leave after the deadlines identified in the Scheduling Order *and* the additional deadline following this Court's decision on his Motion for Reconsideration have passed.

The Scheduling Order was issued pursuant to Rule 16(b), which "is designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes). "Once the

scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure to earlier seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Id.* at 909 (internal citation omitted). Good cause is found when the deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* at 906 (internal quotation omitted). The court may also consider whether the other party will suffer prejudice. *Id.*

Relator completely overlooks this standard that must be considered before the Court can determine if amendment is proper under Rule 15(a)(2). *Harris v. Wells Fargo*, 2019 WL 3779535, at *3 (W.D. Tenn. Feb. 19, 2019) ("Although Rule 15(a) instructs courts to 'freely give leave to amend when justice so requires,' a Rule 16(b) scheduling order 'controls the course of the action' and the expiration of a relevant scheduling order deadline may foreclose the parties' opportunity to rely upon Rule 15(a)'s liberal standard.") (internal citation and alteration omitted). Relator had been on notice of the deficiencies identified by the Court in his Amended Complaint for nine months by the time he filed the Seconded Amended Complaint in July. Further, Relator was given even more time to address these deficiencies in a timely fashion since he had seven days following the Court's decision regarding his Motion for Reconsideration to file any proposed third amended complaint. By time the Court denied his motion on August 30th, he had (1) already received Defendants' initial discovery production, and (2) had been on notice of the flaws prompting dismissal for *ten months*. In each of his previous motions asking for time to amend his pleadings after the Court's decision, Relator consistently requested an extended deadline of only seven days. Thus, Relator seemingly believed that seven days would be enough time for him to review the Court's decision and to amend his pleadings accordingly. Once the Court actually issued its

decision, though, Relator abandoned this timeline and completely fails to justify such error—or even mention this timeline—in his belated request for leave.

Thus, Relator clearly has not been diligent in his attempt to modify the Scheduling Order. Moreover, allowing amendment for a *third* time would prejudice the Defendants. This case has been unsealed for roughly two years, yet it has not made it past the pleadings stages. Defendants have continued to combat Relator's insufficient pleadings and, to varying extents, this Court has agreed with Defendants. The purpose of the Scheduling Order's deadlines on amending Relator's pleadings was to ensure that "at some point both the parties *and the pleadings* will be fixed." *Leary*, 349 F.3d at 906 (internal quotation omitted). Relator has been given ample opportunity to fix his pleadings after this Court laid out the necessary groundwork for any subsequent pleadings, but enough must be enough. The Relator has exhibited a pattern in this case of filing defective Complaints and then amending them when they are challenged. In fact, the only Complaint that the Relator did not amend was the First Amended Complaint, and it was, in large part, dismissed. Now, in the Second Amended Complaint, Relator made no good faith attempts to cure those previous deficiencies. Relator has, as per his history in this case, now sought to amend the Complaint yet again now that the pleading of the Second Amended Complaint has been challenged. In fact, the Response makes no attempt to justify the deficient pleading but now simply wants a fourth bite at the apple for his pleading. Relator has been unable to articulate a viable claim thus far and there is no reason to believe that his claims will survive the inevitable scrutiny of a fourth motion to dismiss if he were allowed to file a Third Amended Complaint. Relator has been given ample opportunities to plead his claims and has failed to do so. For the sake of finality, this Court should therefore dismiss the Second Amended Complaint with prejudice and the Relator should not be given leave to attempt a curative effort through a Third Amended Complaint.

WHEREFORE, the Defendants respectfully move that the Second Amended Complaint be DISMISSED.

Respectfully submitted,

*/s/ Christopher A. Melton*

Christopher A. Melton
Victoria Boland Fuller
cmelton@wyattfirm.com
vfuller@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, Kentucky 40202
Telephone: 502.589.5235

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11th, 2021, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the Parties.

*/s/ Christopher A. Melton*
Christopher A. Melton

100595774.2