**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>***ex rel.*** **ROBERT C. O'LAUGHLIN, M.D.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**RADIATION THERAPY SERVICES, P.S.C., dba ASHLAND BELLEFONTE CANCER CENTER, et al.,**<br><br>**Defendants.** | ) | **CIVIL ACTION**<br>**NO. 0:16-CV-148-DLB** |

**MOTION OF RELATOR ROBERT C. O'LAUGHIN, M.D. FOR LIMITED RECONSIDERATION OF THE ORDER ON DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Robert C. O'Laughlin, M.D. ("Dr. O'Laughlin"), the Plaintiff and Relator in this matter, acting through his undersigned attorney, moves this Honorable Court to reconsider one point in its Order (the "Order," Doc. 141) on the Defendants' Motion to Dismiss the Third Amended Complaint ("MTD").

In support of this motion, Dr. O'Laughlin submits the following:

## MEMORANDUM

### A. Standard

A court may grant a motion for reconsideration when the court has misunderstood a party, or there is a significant change in the law or facts since the submission of the issues to the court by the parties. *Reyes Canada v. Rey Hernandez*, 224 F.R.D. 46, 48 (D.P.R. 2004) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

Under Fed. R. Civ. P. 59(e), a party may direct the district court's attention to newly discovered material evidence or a manifest error of law or fact enabling the court to correct its own errors. *Aybar v. Crispin-Reyes*, 118 F.3d 10, 15 (1st Cir. 1997).

Here, Dr. O'Laughlin respectfully asserts that the Court misunderstood his argument regarding the lack of any supervision of radiology services as addressed in Counts III and IV of the Third Amended Complaint.

**B. Argument**

The portion of the Order at issue is found on pages eight and nine of the Order (Page ID# 2048-49). There the Court correctly noted as follows:

> At the heart of these allegations is the claim that no physician provided the services described in the billing codes, *no physician supervised the provision of the services*, *and no physician was on the premises at the time*. (Doc. # 124 ¶¶ 79-80). Defendants retort that only two of the billing codes alleged represent a service with any professional component.

(Emphasis added.)

Here the question is whether the supervision of a physician—of *any* physician—is required for the billing and payment of these services, something that this Court confirmed in its previous Order of 2020 (discussed below).

First, the matter is *not* limited to just two codes—the Third Amended Complaint expressly alleges otherwise.

Table II of the Third Amended Complaint, (Page ID# 1775-76) lists *fourteen* codes that have professional components, and specifies that this list was compiled from the CMS Physician Fee Schedule (3rd Amd. Cmpl. ¶ 33, Page ID# 1775). The import of, and authority for the professional component for these codes *was* explained by Dr. O'Laughlin, in his Opposition to Defendant's MTD on page 14 (Page ID# 1957; see also fn. 9, at *id.*).

In its Order of 2020, granting in part and denying in part the Defendant's Motion to Dismiss the [First] Amended Complaint, this Court explained:

> *While Relator correctly asserts—and Defendants concede—that the Medicare Benefit Policy Manual requires "direct supervision" by a physician of radiation oncology services*, (see Docs. # 64-1 at 19 and 66 at 6-7, 6 n.3), the Policy does not require that the supervising physician be a radiation oncologist in particular. According to the Medicare Benefit Policy Manual, Chapter 90, Section 15, "[x]-ray, radium, and radioactive isotope therapy furnished in a nonprovider facility [such as the Cancer Centers] require direct personal supervision of a physician." The Policy further provides that "[t]he physician need not be in the same room, but must be in the area and immediately available to provide assistance and direction throughout the time the procedure is being performed." *Id.*

(Page ID# 776, emphasis added.)

Dr. O'Laughlin did not ignore the Defendants' argument in this regard made in their MTD, but instead relied upon the fact that the Court had already ruled in his favor and against the Defendants in its Order of 2020; and that he had identified the codes having professional components that must be supervised by a physician, doing so in the Table II of the Third Amended Complaint, further explained on page 14 of his Opposition to the MTD.

Put simply, the Third Amended Complaint correctly and adequately alleges: (1) services (codes) that have professional components that must be directly supervised by physicians; and (2) that no physician supervised the provision of these services, and no physician was on the premises at the time, so that direct supervision could not have occurred.[1]

Dr. O'Laughlin asks that the Order be amended to provide in substance as follows:

> The Defendants' Motion to Dismiss the Third Amended Complaint is denied as to Counts' Three and Four to the extent that these counts of that complaint, allege that:

[1] As explained in his Opposition to the MTD (Page ID# 1951), "direct supervision in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure." See 42 C.F.R. § 410.32(b)(3).

(b) no physician provided direct or personal supervision of the provision of these services; and

c) no physician was on the premises where and when these services were provided.

A proposed order is submitted with this motion.

By: /S/ Andrew Grosso

Andrew Grosso, Esq. (D.C Bar No. 358326)
*Pro Hac Vice*
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street, NW, Suite 500
Washington, D.C. 20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org

Attorney for Relator Robert C. O'Laughlin, M.D.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the United States this 23rd day of November 2022, by Electronic Service to all counsel of record.

/S Andrew Grosso_
Andrew Grosso, Esq.