# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA, THE STATE OF FLORIDA and JOHN DOE,**

**Plaintiffs,**

**v.** **Case No: 6:14-cv-501-Orl-37DAB**

**HEALTH FIRST, INC., HEALTH FIRST HEALTH PLANS INC., HEALTH FIRST MEDICAL GROUP, MELBOURNE INTERNAL MEDICINE ASSOCIATES, P.A., HOLMES REGIONAL MEDICAL CENTER, PALM BAY HOSPITAL, CAPE CANAVERAL HOSPITAL, VIERA HOSPITAL, MELBOURNE SAME DAY SURGERY CENTER and MELBOURNE GI CENTER,**

**Defendants.**

---

## ORDER

This cause came on for consideration with oral argument[1] on the following motions filed herein:

**MOTION:** **MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY (Doc. No. 99)**

**FILED:** **May 24, 2016**

---

**THEREON** it is **ORDERED** that the motion is **GRANTED in part**. The deadlines will be extended by **75 days--**discovery deadline (to **October 19, 2016**) and the dispositive motions (to **November 16, 2016**), and the trial date will be moved from February 2017 to **April 2017**.

**MOTION:** **DEFENDANT HEALTH FIRST, INC.'S MOTION TO COMPEL DISCOVERY FROM RELATOR (Doc. No. 100)**

**FILED:** **May 31, 2016**

---

**THEREON** it is **ORDERED** that the motion is **DENIED**.

---

[1]A hearing was held on July 1, 2016.

In this *qui tam* action filed on behalf of the United States of America under the federal and Florida False Claims Acts, Defendant seeks to compel the Relator to produce responses to written discovery, essentially to obtain the disclosure statements that Relator provided to the federal government and the State of Florida pursuant to the federal and Florida False Claims Acts[2] and Relators communications with government officials regarding the case. Defendant also seeks a copy of the Relator's draft complaint.

Defendant argues that the Court should order the disclosure statements produced because Relator missed the deadline to respond to the requests for production by two days[3] and, thus, waived any objections; Defendant is entitled to "uncover Relator's knowledge at the time he first made disclosure of the facts supporting his claim in order to assess his standing" as an "original source" of the Complaint; courts (outside the Eleventh Circuit) have ordered production of such disclosure statements in other *qui tam* cases; and the disclosure statements are not protected by any privilege. Doc. 100.

The Relator responds that, while he did respond to the Requests for Production two days late, Defendant's waiver argument is without merit because, before the discovery was even served, on February 17, 2016, Relator sent a letter to Defendant stating his position that the disclosure statements would not be produced because they were privileged. Doc. 104-1. The February 17, 2016 letter also attached an electronic copy of all of the documents that Relator intended to use to support his claims, including all of the documents produced to the federal government and to the Florida Attorney General and the Florida Chief Financial Officer that accompanied Relator's

---

[2] The False Claims Act requires a "written disclosure of substantially all material evidence and information the person possesses." *See* 31 U.S.C. § 3730(b)(2). The Florida False Claims Act requires service of a "written disclosure of substantially all material evidence and information the person possesses." *See* Fla. Stat. § 68.083.

[3] The Relator's response to Defendant's Interrogatory No. 2 was not untimely.

Disclosure Statement to the government entities and upon which the Disclosure Statement was based. In light of the notice of Relator's position given through the February 17, 2016 letter sent to Defendant three months *before* the discovery responses were due, the Court finds that there was no prejudice to Defendant from the Relator's inadvertently late (by two days) responses regarding the disclosure statements.

To the extent Defendant seeks to "uncover Relator's knowledge at the time he first made disclosure of the facts supporting his claim in order to assess his standing" as an "original source," the "original source" issue is at the heart of Defendant's Motion to Dismiss, which is currently pending before District Judge Dalton[4]. While the "original source" issue is relevant to Defendant's defenses, it will not trump the Relator's claims of privilege.

Turning now to Relator's privilege arguments, he contends that his disclosure statements and communications with government officials are shielded by the work product and joint prosecution doctrines, and he should not have to produce them because Defendant has not shown substantial need for them. The United States agrees[5] with Relator that the disclosure statements and communications with the government are privileged; Defendant has not shown a substantial need for these materials.

As Magistrate Judge Sneed of the Middle District explained in great detail in the recent case of *Bingham v. Baycare Health System*, in denying a similar motion to compel from a relator the contents of a FCA disclosure statement in a *qui tam* case:

> While there has been no binding precedent that has been cited to the Court on this issue, the majority of courts have found that the written disclosure statement provided

---

[4] The Motion to Dismiss is set for hearing on July 20, 2016. Doc. 113.

[5] On June 21, 2016, the United States filed (with leave of Court) a Statement of Interest (Doc. 108) arguing that the Court should deny Defendant's Motion to Compel Discovery, stating that although it has not intervened in the FCA *qui tam* case and is not a party, it remains the real party in interest and is entitled to share in any recovery that may be obtained. See 31 U.S.C. § 3730(d); *Timson v. Sampson*, 518 F.3d 870 (11th Cir. 2008) (per curiam).

in compliance with the FCA falls under the work-product doctrine as a document prepared in anticipation of litigation, or have applied the principles of ordinary work product when analyzing whether the disclosure statement is discoverable. . . . While most courts agree that the disclosure statement is eligible for protection under the work product doctrine, some courts have found that the disclosure statement consists only of factual information and have therefore ordered its production upon a showing of substantial need and undue hardship. . . . At least one court has found that the entire disclosure statement consisted of opinion work product and is wholly protected from discovery. . . . Other courts have found that only some portions of the written disclosure consisted of opinion work product and ordered that those portions be redacted and the remaining portions consisting of fact work product be produced, upon a finding that the requesting party had met its burden to overcome the protection.

In this case, the Court has reviewed Plaintiff's written disclosure in-camera and finds that it is eligible for protection under the work-product doctrine. Specifically, the Court finds that the disclosure statement is, at its core, a document prepared by or for Plaintiff and his counsel in anticipation of litigation or trial. In determining whether a document was prepared in anticipation of litigation, the court looks to the "primary motivating purpose behind the creation of the document." . . . Plaintiff-relator's disclosure statement "is prepared and served only on the Government pursuant to the explicit terms of the False Claims Act as a companion document to the *qui tam* Complaint filed with the Court. . . and is indisputably prepared in anticipation of litigation." (Dkt. 79 at 10–11.) Accordingly, the written disclosure statement would not have been prepared but for the prospect of this litigation and came into existence solely to aid in this litigation. *See O'Keefe*, 918 F. Supp. at 1346 ("The plain language of the FCA requires the relator to prepare the document 'in anticipation of litigation."').

Further, although the written disclosure references and incorporates facts and information that may be contained in publicly available or non-privileged documents, the written disclosure itself—and the compilation and characterization of the information contained within it—was prepared because of actual or impending litigation, did not exist prior to this litigation, and was not prepared for any other purpose than for this litigation. *See United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) (applying the less demanding standard of whether the document "was prepared because of anticipated litigation" and "would not have been prepared in substantially similar form but for the prospect of litigation"). Therefore, at the very least, the disclosure statement constitutes ordinary or fact work product.

The Court also finds that the written disclosure contains the legal conclusions of counsel and the relator regarding this litigation, which constitutes opinion work product. Therefore, the written disclosure is comprised of both factual and opinion work product, each of which are entitled to different levels of protection. At first blush, it would seem that a redaction of the opinion work product and production of only the factual portions would resolve this issue. However, this case does not present a proper opportunity to do so. First, in this case, a clear line cannot be drawn between

what constitutes opinion work product and what constitutes fact work product. Second, even if the written disclosure statement constituted only factual work product, Defendant has not met its burden of showing substantial need and undue hardship to warrant its production.

In this case, the factual portions of the disclosure statement reveal the relator and counsel's mental impressions in that they reflect their analysis and selection of certain facts, which in turn reflects their insight and impressions of the case, and thus cannot simply be extracted. *See F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 151–52 (D.C. Cir. 2015) ("When a factual document selected or requested by counsel exposes the attorney's thought processes and theories, it may be appropriate to treat the document as opinion work product, even though the document on its face contains only facts. . . . And where a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions."). In particular, the disclosure statement includes a lengthy narrative that provides the factual background of the case and information regarding the ground lease and associated costs. While much of the disclosure statement is factual, it is clear that significant portions of the document represent mental impressions and legal theories of the relator and his attorney, and much of the facts are interwoven with analysis and opinion.

Significantly, it is apparent that the disclosure statement contains inferences Plaintiff has drawn and distilled from facts and data, and the methods used to make such inferences, which presents both factual information and conclusions of the relator and counsel. *See Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 624 (5th Cir. 1976) (finding that the contents of a report were not merely objective data but rather "mainly reports on how the. . .attorneys appraised the evidence they found" and "[t]hus . . . consist largely of mental impressions, conclusions, opinions, (and) legal theories" constituting protected work product "regardless of the opposing litigant's need"). Thus, the issue presented here turns on the degree to which the facts contained in the written disclosure reveal the relator and counsel's thought process, and not simply a mere recitation of facts that, without more, would ordinarily constitute fact work product. Given that the disclosure statement consists of Plaintiff's analysis of factual information, it would be futile, if not impossible, to determine and extract what is purely factual from what is opinion.

Nonetheless, the written disclosure constitutes at least ordinary work product, which is not discoverable unless Defendant shows that it has "substantial need" for the document and that it "cannot, without undue hardship, obtain [its] substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Here, Defendant has not met its burden of showing, and does not argue, that it has a substantial need for the disclosure statement and that it cannot obtain an equivalent without suffering undue hardship. Therefore, Defendant has not met its burden to overcome the work-product protection afforded to Plaintiff's disclosure statement.

*Bingham v. Baycare Health System*, No. 8:14-cv-73-T-23JSS, 2016 WL 1546504 (M.D.Fla. April 15, 2016) (some citations omitted).

Similarly, in this case Defendant has not met the burden of showing it has a "substantial need" for the disclosure statements by arguing simply that the documents are "unique and no other document can more fully apprise Defendants of the nature of the charges alleged against them." Doc. 100 at 14. Relator argues as in *Bingham*, prepared because of actual or impending litigation, did not exist prior to this litigation, and was not prepared for any other purpose than for this litigation. In terms of content, the Disclosure Statement contains the legal conclusions of counsel and the Relator regarding this litigation, which constitutes opinion work product, and contains inferences Relator has drawn and distilled from facts and data, and the methods used to make such inferences, which presents both factual information and conclusions of the Relator and counsel. Doc. 104 at 11.

More specifically, Defendant argues that it has "a substantial need to review the Disclosure Statements because Relator alleges in the complaint that he is the 'original source' of the allegations upon which the case is based, and Defendants seek to compare the facts revealed by the Relator to those facts available to the public." *Id.* at 15. Relator argues that Defendant has not shown substantial need or undue hardship for the Relator's disclosure statement or his communications with the Government because Defendant already has all of the underlying documents provided to the Government, and the factual bases of the Relator's claims are already known or should become known as discovery proceeds. Defendant has not shown substantial need. As Relator pointed out at the July 1 hearing, Defendant would learn the factual information underpinning the disclosure statements during the Relator's deposition, which is set for two weeks from the hearing.

Defendant argues that it should not be required to "compile such information piecemeal through interrogatories, document requests, and depositions [which] place an undue burden on

Defendant[] when the information is quickly and easily accessible in one location," citing *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1346 (E.D. Mo. 1996)(finding that the compiling factual information through discovery would be an undue burden because the "case is complex and discovery will be voluminous and lengthy" and "all the courts to address this issue in published opinions have compelled the relator and government to produce the written disclosure on similar grounds" citing four cases from 1992 to 1995). Proceeding in this case with written discovery and depositions, as Defendant vaguely describes here, does not in and of itself constitute an "undue burden." The Court finds more persuasive the reasoning in Judge Sneed's recent and very detailed analysis in *Bingham* and the numerous cases cited therein. Accordingly, Defendant's Motion To Compel Discovery From Relator (Doc. 100) is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida on July 7, 2016.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record