UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
Ashland Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* ROBERT C. O'LAUGHLIN, M.D.<br><br>PLAINTIFFS<br><br>v.<br><br>RADIATION THERAPY SERVICES, P.S.C., dba ASHLAND BELLEFONE CANCER CENTER, et al.<br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 0:16-CV-148-DLB |

**DEFENDANTS' SUMMARY OF DISCOVERY DISPUTE**

In accordance with the Court's Order issued on October 2, 2023 and in anticipation of the telephonic discovery hearing scheduled for October 6, 2023, the Defendants summarize the current discovery dispute between them and Relator as follows:

This Court previously reviewed Relator's wide-ranging discovery requests that sought *thousands* of records for patient services across a multi-year time-span. [DN 170, pp. 2-3 (describing Relator's discovery requests for records for all patients across three clinics for a four-and-a-half year period)]. After its review and consideration, this Court gave Relator an explicit instruction: to limit discovery by using a statistical method and sampling technique. [*Id.* at p. 4].

Defendants' counsel soon thereafter contacted Relator's counsel to ask how he wanted to proceed in light of the Court's Order. [DN 185-1 (5/31/2023 email from C. Melton)]. In response, Relator essentially thumbed his nose at the Court's directive. [*See* DN 185, pp. 1-2 (describing Relator's counsel's refusal to utilize a sample)]. Instead, he continued pursuing documents on a patient-by-patient basis. Relator requested via letter, and not through any formal Request for

Production, that Defendants produce records for patients identified on three "Tranches". [*See* DN 185-3 (6/13/2023 letter from A. Grosso)]. These lists were hand-selected by Relator and covered particular time-periods. [*Id.*]. Relator's counsel admitted that he was pursuing discovery in this method despite the Court's order to engage in sampling. [*See id.* at p. 1 (" . . . notwithstanding Judge Atkins' Order[], a statistical analysis is not appropriate for these claims, . . . .") (footnote omitted)].

To this day, Relator has still offered no justification as to why he cannot use a statistical sample.[1] He, instead, has relied solely on his own "expertise" and brazenly ignored the Court's explicit ruling. Relator's claims that statistical sampling will not achieve his objectives is contrary to statements that Defendants have received from a statistician consultant, who has noted that sampling could easily achieve the results that Relator seeks. While Defendants agreed to produce his requested documents, they also plainly informed Relator that they were not "waiving the right to challenge admissibility based upon the appropriateness of the selection" for Tranches I and II. [EX. 1 (6/30/2023 email from C. Melton)]. The Defendants have complied in full with the requested items for the first two Tranches and have, accordingly, produced medical records and billing statements spanning months of treatments for over 200 patients. The Third Tranche, however, is still at issue in this case.

From the outset, the Relator consistently indicated that Tranche III "will be comprised of those who received chemotherapy services on weekends during the period of 2012-17." [DN 185-3, p.2 (6/13/2023 letter from A. Grosso); *see also id.* at p. 1 n.1 ("A third Tranche will be

[1] Defendants note that Relator has moved to file a reply to Defendants' response brief. [Relator's Mot. for Leave, DN 186]. Defendants object to Relator's request and do not believe the Court should consider his reply. But, even if it does, Relator's attempt to justify his outright rejection of this Court's Order is the same as the arguments he previously raised in his Motion to Compel. [*Compare* Relator's Reply, DN 186-2, pp. 1-2, *with* Relator's Mot. to Compel, DN 158, pp. 6-7 *and* Relator's Reply Br., DN 163, pp. 1-2].

forthcoming. The patients on that list will concern patients who received services on the weekends.")]. Further still, when Defendants' counsel explicitly asked whether Tranche III requested records for "claims delivered on weekends for those patients between 2012-2017", Relator answered in the affirmative. [DN 183-4]. Around Labor Day, however, Relator abruptly and unilaterally attempted to expand this Request exponentially: suddenly, he wanted records for *every day* over this period for *all* provided services.[2]

This dramatic shift reeked of gamesmanship. For one, Relator had—for two-and-a-half months—represented to Defendants that he only wanted weekend services. [*See* DN 185-3 (6/13/2023 letter)]. This change came about with no actual warning and was issued right before Defendants were starting to compile records for Tranche III. [*See* DN 185, pp. 4-5, n.8 (explaining Defendants' rolling production and how they began compiling records for Tranche III in late August)]. Further, this expanded scope was created after Relator served his expert report on August 25, 2023, and mere weeks before Defendants' expert report was due.

Not only was the timing specious due to Defendants' pending expert report, the request itself is unwarranted and inappropriate. Defendants told Relator that the *only* services provided on weekends were injections of a drug called leukine, which is not a chemotherapy drug and does not require physician supervision. Defendants presented supporting documentation to Relator and the Court on this point and incorporate those arguments by reference. [DN 185, pp. 5-6]. In addition to the arguments raised in their initial response brief, Defendants also note that Relator recently deposed two fact witnesses who were former employees at the Cancer Centers—both of which

[2] Relator served a Request for Production on September 11, 2023, which made clear his intent to expand the scope of Tranche III. [*See* Defs.' Resp., DN 185-5]. This is the only formal discovery request regarding any of Relator's tranches of patients.

stated that leukine was not a chemotherapy drug. One witness, Stephanie Howard, APRN, testified that leukine and certain over-the-counter drugs (such as Pepcid and Benadryl) are considered part of a patient's "chemotherapy regimen" but they are not chemotherapy drugs. The second witness, Nurse Jessica Dove, likewise confirmed that leukine is not an anti-cancer chemotherapy drug.

Relator seemingly agrees that the only service rendered on weekends was the administration of leukine. He has not identified any other service offered by the Defendants on weekends. Instead, he incorrectly argues that leukine is a chemotherapy drug and relies solely upon its connection to chemotherapy services and/or patients. [*See*, *e.g.*, Relator's Br., DN 183, p. 3 (explaining that, because leukine is used as part of a chemotherapy treatment, "[l]eukine is a chemotherapy service")]. As mentioned above, other drugs (including over-the-counter drugs) are administered to chemotherapy patients. Clearly, an over-the-counter drug is not a chemotherapy drug. Yet, under Relator's logic, OTC drugs and leukine would *both* be considered chemotherapy drugs simply because they are administered to patients receiving chemotherapy treatment. Such "logic" is nonsensical and unsupported by the facts—Relator just refuses to accept that.

Relator also has continued asking for overly-broad requests that seek a burdensome amount of records for patients seen in 2012 through 2017. Defendants explained the issue with the scope of this recent discovery effort at length in their response brief and incorporate the arguments raised therein by reference. [*See* DN 185, pp. 9-10]. Then, in another perfect example of the inconsistent way Relator has conducted discovery, Relator sent Defendants a letter that changed the discovery game once again. He stated that—for that same time-period—he wanted three different kinds of records for all patients for services provided on weekends and on Thursdays at ABCC. [EX. 2].

Hence, once again, Relator played fast and loose with his discovery efforts. He continued to request records for a service that does not involve a chemotherapy drug and—after already

changing the scope of this request once—he changed it again by asking for all records for all patients seen on every Thursday across a four-and-a-half year period. [*Id.*]. This latest letter is a clear example of the problem with Relator's discovery approach: the only consistent feature is Relator's inconsistency.

Moreover, this widely-varying range of discovery could have been avoided in its entirety if Relator had done one simple thing—followed this Court's order. Statistically-valid random samples are common practice in False Claims Act cases such as this one. This method's utility was recognized by the Court when it originally ordered Relator to collaborate with Defendants on creating a sample. [Memo. Op. & Order, DN 170, pp. 3-4]. But none of that persuaded Relator.

Defendants cannot continue to respond to discovery when the scope changes at Relator's every whim. Compiling the records for Relator's first two tranches required considerable time and effort from a small staff, including from one of the physicians who works on these requests in addition to seeing patients. Further, Relator's refusal to abide by the Court's Order requiring statistical sampling in this case has meant that the discovery challenges that gave rise to the Defendants' original Motion for Protective Order have only multiplied. The Parties have already disclosed experts. And, in the case of the Defendants, their expert has reviewed the records that Relator sought in discovery in this case. But it stands, Relator continues to seek fact discovery in the form of *more records* simply because he cannot find the evidence that he needs from the records that have been previously produced. The identification of the claims at issue is the most basic and fundamental step in FCA litigation, and for Relator to engage in this process post-expert disclosure is simply more impermissible gamesmanship meant to confuse and invalidate the experts' previous work.

Respectfully submitted,

*/s/ Christopher A. Melton*

Christopher A. Melton
Victoria Boland Fuller
WYATT, TARRANT & COMBS, LLP
400 West Market Street
Suite 2000
Louisville, KY 40202
502.589.5235

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on **October 5, 2023,** the foregoing was served via electronic mail to the Court and opposing counsel pursuant to the Court's Order on October 2, 2023 [DN 187].

*/s/ Christopher A. Melton*
Christopher A. Melton

101282250.1

**Fuller, Victoria**

| | |
|---|---|
| **From:** | Andrew Grosso <agrosso@att.net> |
| **Sent:** | Tuesday, July 11, 2023 1:35 PM |
| **To:** | Melton, Chris; Fuller, Victoria |
| **Cc:** | Ronald Jarvis |
| **Subject:** | Re: Telcon |

**CAUTION:** This email originated from outside of the Firm. Do not click links or open attachments unless you know the sender and were expecting this message.

Please if you would, advise me of the status for Tranche I and II documents.

Andrew Grosso, Esq.
Andrew Grosso & Associates
1250 Connecticut Avenue NW, Suite 700
Washington, D.C. 20036
Tel.: (202) 298-6500
Email: agrosso@acm.org
Web: www.GrossoLaw.com

On Jun 30, 2023, at 1:40 PM, Melton, Chris <cmelton@wyattfirm.com> wrote:

We are working on processing the schedules that we have and you should be receiving them by early next week.

My client is working on Tranches 1 and 2. We will comply with your request for documentation related to those patients, without waiving the right to challenge admissibility based upon the appropriateness of its selection.
Tranche 3 is fairly substantial. You had mentioned that you would utilize sampling methodologies to pare that selection down. We would request that you do so.

Thanks and have a good weekend.

**Christopher A Melton**

Wyatt, Tarrant & Combs, LLP
Direct: (502) 562-7367

**From:** Andrew Grosso <agrosso@att.net>
**Sent:** Friday, June 30, 2023 10:53 AM

**To:** Melton, Chris <cmelton@wyattfirm.com>
**Subject:** Telcon

**CAUTION:** This email originated from outside of the Firm. Do not click links or open attachments unless you know the sender and were expecting this message.

You were to get back to me by this week's end with decisions on the tranches and information on the master schedules. I need these materials and I don't think that the court will look kindly on either of us if we resort to motion practice. (Agreed?)

Also, as of now Dr. O'Laughlin is available for a deposition during the periods you suggested.

Thank you. Give my best to Victoria and her ... boy? girl?

Andrew Grosso, Esq.
Andrew Grosso & Associates
1250 Connecticut Avenue NW, Suite 700
Washington, D.C. 20036
(202) 298-6500
Agrosso@acm.org
www.GrossoLaw.com

================================================================================
The information contained in this transmission is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient of this information, do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information. If you received this transmission in error, please contact the sender immediately, destroy all printed copies, and delete the material from all computers.
================================================================================

ANDREW GROSSO, ESQ.
ANDREW GROSSO & ASSOCIATES

1250 Connecticut Avenue NW, Suite 700
Washington, D.C. 20036
www.GrossoLaw.com

Tel: (202) 298-6500
Email: Agrosso@acm.org

Admitted:
New York, Florida
District of Columbia

September 25, 2023

Christopher A. Melton, Esq.
Wyatt Tarrant & Combs LLP
400 West Market Street
Suite 2000
Louisville, Kentucky 40202

***Re: United States ex rel. O'Laughlin v. Radiation Therapy Services, P.S.C,***
**Case No. 0:16-cv-148-HRW**
**By: Email Only**

**AMENDED**

Dear Mr. Melton:

I write to advise you that I am narrowing our recent discovery requests in this case. Specifically:

(1) I am withdrawing RFP No. 34, found in the Relator's 7th Request for Production. This request called for the production of:

> Any and all records pertaining to the lawsuit captioned *Chrystal Compton, As Administratrix of the Estate of Linda D. Childers*, Civil Action No. 13-CI-00506, filed in Division I of the Boyd Circuit Court of the Commonwealth of Kentucky. Such records shall include all pleadings and other filing made in that case; any and all expert reports; any and all discovery exchanged by the parties in that case; and any and all correspondence between those parties.

(2) I am narrowing RFP 41, found in Relator's 9th Request for Production, This request currently reads as follows:

> For the period July 1, 2012 through December 31, 2016, all Medical Administrative Records, Itemized Statements, and Charge Statements for all patients identified in Tranche III (as previously revised), attached.

The narrowed version now calls for the following (changes in bold):

> For the period July 1, 2012 through December 31, 2016, all Medical Administrative Records, Itemized Statements, and Charge Statements for all patients identified in Tranche III (as previously revised), attached, **for those services provided (a) on Weekends at the Ashland BCC and the Highlands CC; and (b) on Thursdays at the Ashland BCC.**

As I indicated in my email dated September 18, and as I reiterated to Ms. Fuller during our subsequent telephone conversion, I am willing to discuss further narrowing as may be appropriate.

Sincerely,

Andrew Grosso
*Counsel for Relator Robert C. O'Laughlin*

cc: Ronald J. Jarvis, Esq.
Robert C. O'Laughlin, M.D.
Victoria Fuller, Esq.