UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:16-CV-00148-DLB-EBA

UNITED STATES OF AMERICA, *ex rel.*,
ROBERT C. O'LAUGHLIN, M.D., PLAINTIFFS,

V. **ORDER**

RADIATION THERAPY SERVICES P.S.C., d/b/a,
ASHLAND BELLEFONTE CANCER CENTER, *et al.*, DEFENDANTS.

*** *** *** ***

A.

This is a *qui tam* action brought by Dr. Robert O'Laughlin under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, based on the Defendants' alleged fraudulent misrepresentations to Medicare, Medicaid, and other federal programs regarding chemotherapy services. The discovery dispute here relates to the three remaining claims in O'Laughlin's Third Amended Complaint. "Count V alleges that Medicare pays only 85% of the physician rate of a service performed by a physician's assistant or a nurse practitioner. O'Laughlin alleges that Defendants billed for chemotherapy services as if they were provided by a physician, when in fact they were neither provided by nor directly or personally supervised by a physician. Count VI pleads a related false statement claim based upon the same allegations as Count V. Count VIII alleges a conspiracy claim related to [Counts V and VI]." [R. 170, fn. 2].

Previously, on March 3, 2023, O'Laughlin moved to compel the production of "(1) Medical Administrative Records (MARs), and (2) patient demographics, insurance information, and statements, for all patients of all three defendant clinics, for the period of July 1, 2012 through

December 31, 2016[.]" [R. 158, 170]. There, O'Laughlin asserted he needed to know "*all* of the services provided to all patients at all three clinics, on *particular* days–so as to establish that there were insufficient physicians available on specific days to cover all of the services and all of the clinics." [R. 170 at pg. 3]. The Court stated that it would not compel Defendants to produce documents subject to "O'Laughlin's disproportionate parameters." [*Id*.]. Therefore, the Court granted O'Laughlin's motion, [R. 158], only insofar as it sought production of discoverable MAR, patient demographic, and insurance information. [R. 170 at pg. 5]. The Court ordered that such discovery shall be produced within the confines of an *appropriate statistical method and sampling technique*, subject to the parties' agreement. [*Id*.].

Here, O'Laughlin asserts, despite the Court's order, statistical analysis is "ill suited" to "identify days and times that doctors were off premises while patients were being treated." [R. 195 at pgs. 2–3]. According to O'Laughlin, he complied with the overall purpose of the Order by reducing the burden on Defendants by narrowing the scope of his requests. [*Id*. at pg. 7]. O'Laughlin restructured his discovery request, not by statistical method and sampling technique, but by creating three "tranches," or lists of patients, which are discussed below. Defendants produced discovery requests for patients in Tranches I and II, and now, O'Laughlin moves to compel discovery of documents for Tranch III patients. [R. 188, 191]. Defendants responded in opposition to O'Laughlin's motion, [R. 192, 196]. [1] The matter is now ripe for decision. For the reasons below, the Court will grant O'Laughlin's motion.

[1] On September 28, 2023, at the request of the parties, the Court scheduled a telephonic conference to discuss an ongoing discovery dispute. [R. 182]. In preparation for the conference, the Court ordered each party to submit a five-page summary of the dispute to the undersigned's chambers' email address. O'Laughlin filed a memorandum with exhibits totaling 89 pages. [R. 183]. As a result, the undersigned canceled the telephonic conference and directed Defendants to submit a response. [R. 184]. Defendants timely responded. [R. 185]. O'Laughlin then moved for leave to file a Memorandum in Support. [R. 186]. The Court, once again, scheduled a telephonic conference and directed parties to submit summaries of the discovery dispute via email. [R. 187]. O'Laughlin filed a summary with the Court and Defendants submitted a summary via email. [R. 188, 190]. After reviewing the summaries, the Court canceled the telephonic conference, ordered O'Laughlin's Memorandum [R. 188] to be docketed as Plaintiff's Motion to Compel,

B.

Federal Rule of Civil Procedure 26(b)(1) provides that—unless otherwise limited—"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The Court will consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* Whether discovery is relevant is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The moving party bears the burden of proving the relevancy of the information sought. *Burton v. Zwicker & Assocs., PSC.,* 2021 U.S. Dist. LEXIS 195470, at *3 (E.D. Ky. Jan. 9, 2012).

The scope of discovery, however, is not without limitation and is "subject to the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.*

When a party refuses to provide information requested by another party, which is thought by the requesting party to be within the scope of Rule 26(b), then the requesting party may move the court to compel disclosure of the requested information. FED. R. CIV. P. 37(a)(3)(B). Motions to compel may be filed where a party has failed to (1) provide a mandatory disclosure; (2) answer or

---

and directed parties to file response briefs. [R. 190]. Defendants and O'Laughlin timely filed response briefs. [R. 192, 195].

admit an interrogatory or request for admission; or (3) produce discoverable information, materials, or documents. *See generally* FED. R. CIV. P. 37. However, prior to moving to compel, a party must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Should the court determine the matters sought to be compelled fall within the scope of Rule 26, the motion shall be granted.

C.

Following the Court's Order that O'Laughlin to reduce his discovery request, [R. 170], O'Laughlin restructured his request and sought the following:

1. MARs, itemized billing statements, and charge statements for the period of December 27, 2013 through June 30, 2014 for patients treated at Ashland Bellefonte Cancer Center Clinic (Ashland) listed in Tranch I. [185-3].
2. MARs for the period of January 1, 2014 through June 30, 2014 for patients treated at Highlands Cancer Center (Highlands) listed in Tranch II. [R. 185-3].
3. MARs, itemized billing statements, and charge statements for the period of July 1, 2012 through December 31, 2016 for services provided on weekends at Ashland and Highlands, and on Thursdays at Ashland for patients listed in Tranch III. [R. 186-3].

On June 13, 2023, O'Laughlin requested documents for Tranch I and II patients. [R. 185-3]. To create the first two tranches, O'Laughlin identified several hundred services between December 27, 2013 through June 30, 2014 in which it is possible that no physician was on the premises of a particular center. [R. 188 at pg. 4]. He then "selected a limited number of patients who received services [] during this period" and identified them as patients at Ashland (Tranch I) or at Highlands (Tranch II). [2] [*Id.*]. According to O'Laughlin, "if a particular patient received services at a Center on a particular day, and if it was established that no supervising physician was

[2] Defendant Logan Oncology Care Associates, LLC, has since settled with the government. [R. 65; R. 185 at fn. 1].

then on the premises, Dr. O'Laughlin could use this information to establish that *all* the patient services provided at that Center and on that day had *no* supervisory physician." [*Id.*]. Defendants have produced documents for both Tranch I and II patients, so those items are not in dispute here. [*Id.*, R. 196 at pgs. 10–11]. In his letter to Defendants requesting Tranch I and II documents, O'Laughlin asserted that "[a] third Tranch will be forthcoming. The patient on that list will concern patients who received services on weekends." [R. 185-3].

On September 11, 2023, O'Laughlin requested all MARs, itemized statements, and charge statements for all patients identified in Tranch III for the period of July 1, 2012 through December 31, 2016. [R. 185-5]. To create Tranch III, O'Laughlin identified 483 claims between 2012 through 2015 where Defendants billed the injection of Leukine as given to patients on weekends. [R. 188 at pg. 4–5]. O'Laughlin argues that Leukine is a chemotherapy service, and therefore, documents pertaining to weekend Leukine injections, when he alleges physicians were not present, will help to prove his claim. [*Id.*]. Having identified those services, plus a "statistical selection of patients and dates for pre-December 27, 2013 services and post June 30, 2014 services," O'Laughlin asserts he requested all documents for 77 patients between July 1, 2012 through December 31, 2016. [R. 188 at pg. 5; 185-5]. On September 25, 2023, O'Laughlin wrote to defendants "narrowing his Tranch III production request." [R. 188 at pg. 5; 186-3]. There he requested, "[f]or the period of July 1, 2012 through December 31, 2016, all [MARs], Itemized Statements, and Charge Statements for all patients identified in Tranch III [] for those services provided (a) on Weekends at the Ashland BCC and the Highlands CC; and (b) on Thursdays at the Ashland BCC. [R. 186-3]. O'Laughlin claims he reduced his "weekday false claims analysis to just Thursdays at Ashland," because he had reason to believe physicians were absent on Thursdays. [R. 188 at pg. 5].

D.

O'Laughlin argues that the Tranch III documents are necessary to "prove the absence of any supervising physician during the provision of chemotherapy services," and that this method reduces the burden on Defendants. [R. 191 at pgs. 3–4]. Defendants oppose O'Laughlin's motion to compel. [R. 196]. In Defendants view, the Tranch III requests are: (1) not relevant, as pertaining to weekend treatments, because Leukine injections are not chemotherapy treatments, and (2) an "inappropriate attempt" to obtain an "exponentially larger" number of records than originally requested. [R. 196]. Defendants argue that O'Laughlin has not complied with the Court's order and rather has "continued pursuing documents on a patient-by-patient basis." [R. 192 at pg. 1]. Defendants claim that "for two and a half months" O'Laughlin represented that he "only wanted [documents from] weekend services," but after Defendants began compiling the Tranch III records, O'Laughlin expanded the scope to include records for every day over this period for all provided services. [R. 192 at pg. 3]. Finally, Defendants assert that the discovery requests in this case have caused them exponential burden, stating, "[defendants] have incurred almost half-a-million dollars in legal fees and this case is still in the discovery phase," and "[t]he Cancer Centers are realistically looking at whether they can continue operating and this lawsuit is the primary threat to their business." [R. 196 at pg. 3].

First, the documents pertaining to injections of Leukine on the weekends at Ashland and Highlands are relevant because they may reasonably bear on an issue that may be in the case. O'Laughlin and Defendants agree that the only services provided to patients on the weekends between 2012-2015 were injections of a drug called, Leukine. [R. 196 at pg. 1]. However, the parties dispute whether Leukine is a "chemotherapy service." [*Id.*]. According to O'Laughlin, Leukine injections are part of a chemotherapy patient's regimen, and therefore are considered a

"chemotherapy service." [R. 195 at pg. 9]. "The drug is not "chemotherapy" *per se,* but it is administered as part and parcel of the provision of *chemotherapy services,* and thus is itself a chemotherapy service." [R. 195 at pg. 13]. However, Defendants argue that Leukine is not a chemotherapy drug and therefore, is not a "chemotherapy service." [R. 196 at pg. 3]. As stated above, discoverable material is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer,* at 351. Because there is a fundamental question as to whether Leukine is a "chemotherapy service," any discovery pertaining to Leukine is relevant to this case and therefore, discoverable under FED. R. CIV. P. 26. Parties may later disagree over the admissibility of the Tranch III documents that pertain to Leukine, but discovery is broader in scope and has a lower threshold than admissibility, and therefore, the documents are discoverable because they are relevant to O'Laughlin's claim.

Second, the Court denied O'Laughlin's prior motion to compel [R. 158] in part because the Court was unwilling to compel Defendants to produce *all* patient documents for *all* three clinics for the period of July 1, 2012 through December 31, 2016. [R. 170]. The Court ordered Defendants to produce the requested discovery "within the confines of an appropriate statistical method and sampling technique, subject to the parties' agreement." [*Id.* at pg. 5]. O'Laughlin argues that Defendants agreed to produce all three tranches of his reduced request, but then refused to produce Tranch III. [R. 195 at pg. 4]. In response, Defendants state they rejected the Tranch III request to provide records for "everyday over a four-and-a-half year time period" because the request was too broad. [R. 196 at pg. 12]. After O'Laughlin reduced his request to only documents from Tranch III patients served on Thursday, Saturday, and Sunday services, Defendants continued to assert that the request was "overly broad in that it continues to seek records for irrelevant weekend

services and request for records for *every* Thursday over almost five years." [*Id*.]. Defendants argue that O'Laughlin has waited until the last minute to broaden the discovery sought, in defiance of the Court's order to use statistical methods to lessen the burden on Defendants. [R. 196 at pg. 12].

Overall, O'Laughlin did reduce his request. O'Laughlin no longer requests documents for every day between 2012 through 2016, which the Court was unwilling to order, and now requests documents from services provided to Tranch III patients on Thursdays and weekends within this time period. This reduction lessens the burden on Defendants, pursuant to the Court's order [R. 170]. Additionally, O'Laughlin has shown that the documents pertaining to weekend Leukine injections and Thursday chemotherapy services are relevant to specific parts of his claim.

E.

O'Laughlin requested MARs, itemized billing statements, and charge statements from Defendants. Defendants objected to O'Laughlin's request stating that (1) the documents were irrelevant, and (2) the request was overly broad and burdensome. O'Laughlin moved to compel Defendants to produce the documents. O'Laughlin's requests are relevant to his claim in that they reasonably bear on, or reasonably lead to other matters that bear on, any issue that is or may be in the case. So, the Court will grant O'Laughlin's motion. Accordingly,

IT IS ORDERED that Plaintiff O'Laughlin's motion to compel [R. 188, 191] is GRANTED. Defendants shall produce the Tranch III documents at issue here no later than December 6, 2023.

Signed November 13, 2023.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**Signed By:**
***Edward B. Atkins*** EBA
**United States Magistrate Judge**