# EXHIBIT NO. 2

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| ***ex rel.* ROBERT C. O'LAUGHLIN, M.D.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICE, P.S.C.,** | ) | |
| **dba ASHLAND BELLEFONTE CANCER** | ) | |
| **CENTER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**RESPONSES AND OBJECTIONS OF RELATOR DR. ROBERT C. O'LAUGHLIN TO THE [SECOND] FIRST SET OF INTERROGATORIES OF THE DEFENDANT RADIATION THERAPY SERVICES, P.S.C. D/B/A ASHLAND BELLEFONTE CANCER CENTER**

Dr. Robert C. O'Laughlin ("Plaintiff" or "Dr. O'Laughlin"), through his undersigned counsel and pursuant to the Federal Rules of Civil Procedure 26 and 33, hereby objects and responds to the [second] first set of Interrogatories by Defendant Radiation Therapy Services, P.S.C. d/b/a Ashland Bellefonte Cancer Center (the "Defendant" or 'Ashland BCC"), as set forth below. [1]

These Responses are based upon Dr. O'Laughlin's present knowledge of the matters covered by the Defendant's interrogatories, and his best efforts to answer these interrogatories. Dr. O'Laughlin's reserves the right to supplement and amend his answers to these interrogatories as he may become aware of addition responsive information.

[1] Dr. O'Laughlin notes that, contrary to the caption of this set of the Defendants' Interrogatories, this is actually the Defendant's *second* such set of interrogatories. The first set was served on the Relator on or about September 26, 2021; and the Relator served his answers on October 15, 2021.

**General Objections Applicable to Interrogatories**

1. Dr. O'Laughlin objects to the first set of Interrogatories ("Interrogatories") of the Defendant (including the accompanying definitions and instructions) to the extent that the Interrogatories seek answers that: were prepared in anticipation of litigation; constitute attorney work product, disclose the mental impressions, conclusions, opinions or legal theories of any attorneys for Plaintiff, contain privileged attorney-client communications, or are otherwise protected from disclosure under applicable privileges, laws or rules.

2. Dr. O'Laughlin objects to the Interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

3. Dr. O'Laughlin objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, oppressive, or unduly burdensome.

4. Dr. O'Laughlin objects to the Interrogatories to the extent that they are not related to the time period and subject matter at issue in this litigation.

5. Dr. O'Laughlin reserves the right to object to the admissibility of any portion of his answers produced in response to the Interrogatories at any hearing or trial in this action.

6. Dr. O'Laughlin submits these responses without conceding the relevancy or materiality of the subject matter of any Interrogatory.

7. Dr. O'Laughlin objects to the Interrogatories to the extent that they are unauthorized by the Federal Rules of Civil Procedure and the Local Rules of this Court.

8. Dr. O'Laughlin objects to the definitions and instructions contained in the Interrogatories Instructions on the grounds that they seek to shift the burden of serving unambiguous interrogatories onto Dr. O'Laughlin. The Defendant is required to serve unambiguous interrogatories and, having failed to do so, Defendants cannot require Dr.

O'Laughlin to respond to an unambiguous or vague interrogatory; or require him to "interpret" which of competing interpretations of an ambiguous or vague interrogatory applies.

9. To the extent that interrogatory calls for the production of publicly available information, Dr. O'Laughlin reserves the right to use and introduce any such information that he may have in his possession now, or any such information that he may subsequently come into possession, regardless of whether or not he now produces it.

**ANSWERS**

Without waiving the foregoing objections, Plaintiff responds and specifically objects to the Defendant's first set of Interrogatories.

**INTERROGATORY 1:** *Please provide the basis for the allegation in the Preliminary Statement of the Third Amended Complaint that chemotherapy services were provided by the Defendants when "physicians were not even present on the premises when the chemotherapy services were provided."*

**ANSWER INTERROGATORY NO 1:**

Dr. O'Laughlin has personal knowledge that chemotherapy services were provided by Defendants when physicians were not on the premises. Also, an examination of the records of chemotherapy services of five patients, provided by the Defendants in discovery, demonstrates the following pairs of records (identified by Bates Numbers provided by the Defendants) indicate that a physician supervised chemotherapy services for at least two different patients at two different locations at the same time, something that is impossible: 4776, 4828; 4829, 4868; 4783, 4832; 4784, 4833; 4824, 4837; and 4804, 4839; and 4803, 4823. The Defendants have recently (October 2022) provided approximately lists of patients, services, treating or supervisory physicians, and service locations and dates for the years 2016 and 2017 (Bates Stamped 4884-

12588). When these lists have been analyzed, and when additional discovery has been provided, Dr. O'Laughlin may supplement this answer.

**INTERROGATORY 2:** *Please provide the Relator's name, address and work history.*

**ANSWER INTERROGATORY NO 2:** In answer to this interrogatory, Dr. O'Laughlin is providing his attached resume.

**INTERROGATORY 3:** *Please list any and all litigation in which the Relator has been a party.*

**ANSWER INTERROGATORY NO 3:** Dr. O'Laughlin was the defendant in a civil lawsuit brought in the Las Vegas Justice Court, in Nevada. The style of the case was *Kurtis John Lehman v. Robert O'Laughlin*, Case No. 18A002788 .

**INTERROGATORY 4:** *Do you contend that radiation oncology services were provided by the Defendants without a physician on the premises? If the answer to this Interrogatory is anything other than an unqualified "no," please identify which radiation oncology services you contend were provided without a physician present on the premises, as well as what CPT Code would have been billed for such services. Also provide the basis for your belief that radiation oncology services were provided without a physician present on the premises.*

**ANSWER INTERROGATORY NO 4:** Yes. There was a doctor at the Logan clinic only one day a week, when there was supposed to be one there every day so as to provide or supervise radiation treatments and services given to the patients on a daily basis. Lists recently provided by the Defendants disclose that, for 2016-17, Dr. Anshu K. Jain purportedly provided or supervised radiation treatments and services at Ashland, Highland, and Logan on the same days. Also, Dr. O'Laughlin refers the Defendant to Tables IV, V, VI, VIII, IX, X, and XII of his Third Amended Complaint and the documents for the patients and services cited there.

Dr. O'Laughlin incorporates his answers to the first and second Interrogatories of the first set of Interrogatories (dated September 15, 2021) previously served by Highlands and Ashland.

When additional discovery has been provided, Dr. O'Laughlin may supplement this answer.

**INTERROGATORY 5:** *Please identify with specificity the factual basis of the [sic] your assertion in Paragraph 40 of the Third Amended Complaint that the Defendants impermissibly "scrubbed" claims prior to their submission In particular, please provide a detailed description of what you mean by the term "scrub" as you use it in the Third Amended Complaint. Please describe what "scrubbing" the Defendants are alleged to have committed and any falsehoods or fraudulent statements that you allege resulted from the "scrubbing."*

**ANSWER INTERROGATORY NO. 5:** Paragraph 40(d) alleges that the Defendants "scrubbed" or otherwise manipulated claims for the purpose of ensuring that the claims would be approved for payment by payors.

The term "scrubbing" is a term that was used by personnel within the Defendant clinics. Dr. O'Laughlin's understanding and is use of the term is that A One Biz entered data into the claims, or created claims using the data, before submitting them to insurers, doing so in a manner to ensure that they appear to be accurate, complete, and have the correct codes, regardless as to whether or not: the data is accurate; and the express and implied representations made in the claims and through the use of CPT and HCPC codes in the claims were accurate.

The initial records were in paper form and kept in folders. The records and charges were entered into computers, and the resulting claims and claim records were sent electronically to A One Biz for scrubbing and billing to the payors, and Medicare and Medicaid. The same procedure was used at all three clinics.

After scrubbing, the claims had physicians named as the providing or supervising physicians, regardless of whether those physicians actually provided or supervised the treatments or services specified.

When additional discovery has been provided, Dr. O'Laughlin may supplement this answer.

**INTERROGATORY 6:** *Identify and describe in detail, without referring to and/or repeating the allegations contained within the Third Amended Complaint, each and every fact that supports your contention that Kirti K. Jain and Manish Jain "arranged for such scrubbing" and that these particular Defendants knew the information submitted for payment was incorrect "because Kirti K. Jain operated, managed, and directed the administrative operation of all three clinics, . . .; and Manish Jain was a manager for both the Logan CC and A One Biz and was fully aware of Dr. Kirti K. Jain's directives" as alleged in paragraph 40(e) of the Third Amended Complaint.*

**ANSWER INTERROGATORY NO 6:** Kirti K. Jain controlled and directed the operations of Ashland: he was the facility director, the president and the vice president of Ashland. Kirti K. Jain controlled and directed the operations of Highlands: he was the president, the secretary, the vice president. Kirti K. Jain controlled and directed the operations of Ashland. He directed which physicians worked at Highlands, Ashland, and Logan; and on what dates and times. During 2009 and 2010 he was a manager of A One Biz.

Manish Jain was a manager at the Ashland Bellefonte Cancer Center and the Logan Cancer Center, LLC; and was a member and manager of A One Biz Solutions, LLC. After records and charges from the three clinics were entered into computers, they were electronically transmitted to A One Biz Solution, controlled by Manish Jain.

When additional discovery has been provided, Dr. O'Laughlin may supplement this answer.

**INTERROGATORY 7:** *Do you intend to allege that listing an incorrect treating physician on a claim form is a violation of the False Claims Act? If the answer to this Interrogatory is anything other than an unqualified "no," please provide the basis for the assertion that the listing of an incorrect physician is a violation of the FCA.*

**ANSWER INTERROGATORY NO 7:** Yes. 42 C.F.R. § 411.355(b) defines "in-office ancillary services" as services that meet certain conditions, including:

> (1) Individual who furnishes the service. They are furnished personally by one of the following individuals:
>
> (i) The referring physician.
>
> (ii) A physician who is a member of the same group practice as the referring physician.
>
> (iii) An individual who is supervised by the referring physician or, if the referring physician is in a group practice, by another physician in the group practice, provided that the supervision complies with all other applicable Medicare payment and coverage rules for the services.

As demonstrated by the lists with Bates Stamp Nos. 421-12588, Dr. Anshu Jain purportedly provided or supervised multiple services and treatments at Ashland, Highland, and Logan. Dr. Anshu Jain was not a member of any group practice of the Defendants, but was a member, and the initial member, of Therapeutic Radiology Associates LLC, established by Articles of Incorporation dated August 22, 2014 and filed August 26, 2014; and which provided services to the Defendants pursuant to a contract dated August 26, 2014. As such, his role in supervising services and treatment of patients at the Defendants' clinics did not satisfy the ancillary services provision of 42 C.F.R. § 411.355(b).

**INTERROGATORY 8:** *Paragraph 50 of the Third Amended Complaint alleges that the Defendants billed for radiation oncology services that were not provided "by any physician qualified to perform the radiation oncology services." Please describe, and provide the basis for, your understanding of what "qualifications" are required for the performance of radiation*

*oncology services. Additionally, please identify what radiation oncology services are being referenced in Paragraph 50 of the Third Amended Complaint.*

**ANSWER INTERROGATORY NO 8:** This interrogatory calls for legal conclusions and for that reason Dr. O'Laughlin objects to this interrogatory. Notwithstanding and without waiving this objection, Dr. O'Laughlin answers as follows.

Dr. O'Laughlin refers the Defendant to pages fourteen through seventeen of his Opposition to the Joint Motion of the Defendants to Dismiss the Third Amended Complaint (Dkt. 131).

**INTERROGATORY 9:** *Identify and describe each and every fact that supports your contention that "CMS requires that the administration of the professional component of radiation services be performed by a qualified radiation oncologist (hereinafter `qualified physician')", as alleged by you in Paragraph 34 of the Third Amended Complaint.*

**ANSWER INTERROGATORY NO. 9:** This interrogatory calls for legal conclusions and for that reason Dr. O'Laughlin objects to this interrogatory. Notwithstanding and without waiving this objection, Dr. O'Laughlin answers as follows.

Radiation oncology services have professional and technical components, and some codes have both technical and professional components. As explained in the Medicare Claims Processing Manual Chp. 13 at 70.5, "70.5 - Radiation Physics Services (CPT Codes 77300 - 77399) (Rev. 1, 10-01-03)":

> [CMS Medicare Contractors] pay for the PC [professional component] and TC [technical component] of CPT codes 77300-77334 and 77399 on the same basis as they pay for radiologic services generally. For professional component billings in all settings, [the Contractors] presume that the radiologist participated in the provision of the service, e.g., reviewed/validated the physicist's calculation. CPT codes 77336 and 77370 are technical services only codes that are payable by [the Contractors] in settings in which only technical component is/are payable.

As further explained on the CMS website:

> 17. Radiation physics services (CPT codes 77300-77334, 77399) include a professional component (PC) and a technical component (TC). These services are covered following the same logic as other radiologic services that include PC and TC components.
>
> 1. The physician's professional component is covered in all settings when the billed service represents the physician's (*e.g.*, radiologist, radiation oncologist) involvement in the care. Radiation dosimetry calculations are payable by Medicare Part B only when the physician personally performs the service described in the code, or when the physician participated in the provision of the service (e.g., reviewed or validated the physicist's calculation).
>
> 2. The technical component is covered only in settings where the TC is payable (e.g., freestanding clinic). The services provided by a Radiation Physicist are considered a part of the TC . . . .

**INTERROGATORY 10:** *Identify and describe each and every fact that supports your conspiracy claim. Specifically, describe in detail every fact supporting your allegation in paragraph 191 of the Third Amended Complaint that the Defendants conspired with Logan Oncology Care Associates, LLC to "defraud the Government by getting false or fraudulent claims approved or paid; and by making or using false statements and records material to false or fraudulent claims." . [sic]*

**ANSWER INTERROGATORY NO. 10:** This interrogatory calls for legal conclusions and for that reason Dr. O'Laughlin objects to this interrogatory. Notwithstanding and without waiving this objection, Dr. O'Laughlin answers as follows.

Conspiracy under federal and criminal and civil law includes a tacit agreement to do something that the law forbid; and can be carried out by an officer, manager, member or employee of a collective entity. Dr. Kirti K. Jain, together with Manish Jain, as individuals, each controlled some (but not all) of the collective entities that are alleged to be co-conspirators with them. (Dr. O'Laughlin refers the Defendant to pages 22-24 of his Opposition to the Defendant's Motion to Dismiss the Amended Complaint (Dkt. 66) for more specifics as to this point for these entities).

Together, Kirti K. Jain and Manish Jain, together, arranged for claims to be presented to payors knowing that the physicians named on those claims did not provide the supervisory services

impliedly asserted in those claims. Dr. K. Jain knew this, as he managed and directed all clinic named in the TAC. Mr. M. Jain knew this because he managed one of the clinics and managed A One Biz, which handled the billing for all of the clinics.

When additional discovery has been provided, Dr. O'Laughlin may supplement this answer.

Attorney for Plaintiff-Relator:

*/s/ Andrew Grosso*
Andrew Grosso, Esq.
Agrosso@acm.org
Pro Hac Vice (DC Bar No. 358326)
Andrew Grosso & Associates
1101 Thirtieth Street NW, Suite 500
Washington, D.C. 20007

**CERTIFICATE OF SERVICE**

I hereby certify on December 19, 2022, the foregoing was electronically to all counsel of record by electronic mail, pursuant to agreement among the parties.

By: /s/ Andrew Grosso
Andrew Grosso, Esq. (D.C Bar No. 358326)

# ROBERT O'LAUGHLIN, M.D.

10096 Emerald Pools Street, Las Vegas, NV 89178 Office: 928-514-2222 ♦ Cell: 928-246-5060 ♦
rolaughlin@live.com

## PROFESSIONAL SUMMARY

Board certified radiation oncologist with over 30 years of private practice experience in both hospital based and freestanding cancer centers. Extensive experience with IMRT, IGRT, SBRS, HDR brachytherapy, XOFT brachytherapy, Accelerated Partial Breast Irradiation (APBI), TomoTherapy, Pinnacle treatment planning, MOSAIQ EMR. Special interest in prostate and head & neck cancers. Excellent reputation for patient service and superior clinical skills. Participation in RTOG and GOG protocols.

## SKILLS

- Strong interpersonal skills
- Dedicated to excellence
- Good clinical judgment
- Systems-based practice based on NCCN guidelines
- Participation in PQRS reporting, practice quality improvement and peer review programs
- Community outreach through health fairs, charity events, prostate and breast cancer screening clinics
- Participation in online CME and webinar programs
- Active participation in multidisciplinary tumor board meetings
- Chronic and acute pain management
- Planned, implemented and promoted XOFT and breast brachytherapy programs
- Practiced in pediatric and dermatologic radiation oncology
- Experienced preceptor for radiation therapy students
- Close collaboration with medical oncologists, urologists, breast surgeons and hospice care

## EDUCATION

**M.D.**: Medicine, 1987
**UMDNJ-New Jersey Medical School** - Newark, NJ

**Internship**: Internal Medicine, 1988
**Norwalk Hospital - Affiliate, Yale University Medical School** - Norwalk, CT

**Residency**: Radiation Oncology, 1991
**UMDNJ - Cooper Hospital/University Medical Center** - Camden, NJ

**Bachelor of Arts**: Biology Major, Economics Minor, Honors,1981
**Rutgers University** - New Brunswick, NJ

## PROFESSIONAL SOCIETY MEMBERSHIPS

Member, American Society for Radiation Oncology (ASTRO)
Member, American Radium Society (ARS)
Member, American Brachytherapy Society (ABS)
Member, American Medical Association (AMA)

## CERTIFICATIONS

Board Certified, American College of Radiology 11/07/95
Active Medical Licensure: AZ, CA, HI, KY, NV, NY, PA
DEA Registration Number: FO3378886
National Provider ID (NPI): 1699841254

## PROFESSIONAL EXPERIENCE

**Radiation Oncologist,** 11/2017 to present
**Southwest Oncology Centers –** Bullhead City, AZ

**Radiation Oncologist**, 12/2015 to 10/2017
**Carlsbad Medical Center** – Carlsbad, NM

**Radiation Oncologist**, 07/2012 to 10/2015
**Ashland Bellefonte Cancer Center** – Ashland, KY

**Locum Tenens Radiation Oncologist**, 04/2011 to 06/2012
**Southwest Oncology Centers** – Yuma, AZ

**Radiation Oncologist**, 06/2008 to 03/2011
**Nevada Cancer Centers** – Las Vegas, NV

**Locum Tenens Radiation Oncologist**, 05/2006 to 05/2008
**Cancer CarePoint** – Redding, CA

**Radiation Oncologist**, 07/1999 to 04/2006
**Arizona Oncology Associates** – Yuma, AZ

**Locum Tenens Radiation Oncologist**, 06/1996 to 06/1999
**Cancer CarePoint** – Wayne, NJ

**Radiation Oncologist**, 05/1994 to 05/1996
**Macomb Hospital Center** – Warren, MI

**Radiation Oncologist**, 07/1991 to 04/1994
**Medical Center of Delaware** – Newark, DE

## HOBBIES AND ACTIVITIES

Reading, Traveling, Music, Wine Tasting, Physical Fitness, Skiing, Sports: football and hockey season ticket holder

## REFERENCES

- Valerie Israel, DO, Southwest Oncology Centers, Bullhead City, AZ, Office: 928-514-2222
- Gordon Grado, MD, Southwest Oncology Centers, Scottsdale, AZ, Office: 480-614-6300
- Hamdy Mohtaseb, MD, Mohtaseb Cancer Center, Bullhead City, AZ, Office: 928-219-4560

Available with 60-day notice