# EXHIBIT NO. 14

LOUISVILLE LEXINGTON LONDON FLORENCE CINCINNATI INDIANAPOLIS ORLANDO JACKSONVILLE TAMPA

KENTUCKIANA COURT REPORTERS

**CIVIL ACTION NO. 0:16-CV-148-DLB**

**UNITED STATES OF AMERICA**

**EX REL. ROBERT C. O'LAUGHLIN, M.D.**

**V.**

**RADIATION THERAPY SERVICES, P.S.C.,**

**DBA ASHLAND BELLEFONTE CANCER CENTER, ET AL.**

**DEPONENT:**

**CRISTINE M. MILLER**

**DATE:**

**December 12, 2023**

a courtroom powerhouse

schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273

www.kentuckianareporters.com

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY

ASHLAND DIVISION

CIVIL ACTION NO. 0:16-CV-148-DLB

UNITED STATES OF AMERICA

EX REL. ROBERT C. O'LAUGHLIN, M.D.,

Plaintiffs

V.

RADIATION THERAPY SERVICES, P.S.C.,

DBA ASHLAND BELLEFONTE CANCER CENTER, ET AL.,

Defendants

DEPONENT: CRISTINE M. MILLER

DATE: DECEMBER 12, 2023

REPORTER: DANIELLE NICOLE CALVERT

APPEARANCES

ON BEHALF OF THE PLAINTIFF, ROBERT C. O'LAUGHLIN, M.D.:
Andrew Grosso, Esquire
Andrew Grosso & Associates
1250 Connecticut Avenue Northwest
Suite 700
Washington, District of Columbia 20036
Telephone No.: (202) 298-6500
E-mail: agrosso@acm.org

APPEARANCES (CONTINUED)

ON BEHALF OF THE DEFENDANTS, RADIATION THERAPY SERVICES, P.S.C., DBA ASHLAND BELLEFONTE CANCER CENTER, KIRTI K. JAIN, M.D., P.S.C., DBA HIGHLANDS CANCER CENTER, A ONE BIZ SOLUTIONS, LLC, KIRTI K. JAIN, M.D., AND MANISH JAIN:

Christopher A. Melton, Esquire
Victoria Boland Fuller, Esquire
Wyatt, Tarrant & Combs, LLP
400 West Market Street
Suite 2000
Louisville, Kentucky
Telephone No.: (502) 589-5235
E-mail: cmelton@wyattfirm.com;
vfuller@wyattfirm.com

Also Present: Leah Sharp, Videographer

**Q. Okay, and why not?**

A. Because the supervising physician, in most cases, unless you go back and actually look at who else performed a service on that day, you wouldn't even know who it was.

**Q. So as you said, the MAR isn't going to list who the supervising physician is, only the ordering physician; is that --**

A. That's correct.

**Q. Okay. So in your report, you had opined that in this case, that supervision was performed for these chemotherapy services, correct?**

A. Yes.

**Q. What steps did you take to determine that -- a level of confidence that supervision was met in this case?**

A. I requested medical records for specific -- for dates of service, where other physicians were seeing patients on those dates of service where chemotherapy was provided.

**Q. Okay, and I think also in your report, you had mentioned that you had -- you were given copies of claims data, as well?**

A. Yes.

**Q. For these? Okay, and it was claims data for**

**that, and I think you were given -- it wasn't just for chemotherapy on the claims data, correct? Was it other services as well?**

A. Yes.

**Q. Okay. How did you utilize that claims data?**

A. Well, the way I utilized it, was to determine what type of service was provided, and those were office visits.

**Q. Okay. So you -- when you say there were office visits, were they office visits on the same days that chemotherapy was provided?**

A. Yes.

**Q. What's the significance of that?**

A. Well, you -- when you have to do a -- when you do an office visit as a physician or as a nurse practitioner, in order to be able to bill it, you have to have face-to-face interaction with the patient. That means they had to be in the -- they had to be in the -- in the clinic.

**Q. Okay. So if I'm understanding correctly then, when you look at that claims data and you see that a physician billed for an office visit on the same day as the chemotherapy, then that would have indicated to you that a physician was in the office?**

A. Yes, was present.

**chemotherapy delivered?**

A. Yes.

**Q. Okay. So wouldn't it be fair to say, then, that even if you applied the supervision requirements of incident to services, it would seem that those would even be met, even if they were applied; is that fair to say?**

A. Say that again?

**Q. Even if you were to apply incident to standards, which I know you say you don't apply here, but even if you were to apply them, and the supervision requirements, would it not be fair to say, then, that your review would correspond that the supervision requirements would have been met, even under incident to?**

A. Well, supervision requirements were met.

**Q. Okay. Even if you were applying the incident to supervision requirements, it would still be met?**

A. Yes.

**Q. Okay, and just for the -- can I see the medical records, the last exhibit, the cumulative exhibit?**

A. I -- I think I have them, maybe. No, you have them. Sorry.

**Q. Just one second here. We were rolling, and**

A. That wouldn't surprise me. They usually don't stay more than 60 days.

**Q. Do you know whether anyone took over immediately after?**

A. I have no idea.

**Q. Okay. Now, given your opinions today on Medicare practice, you are testifying not as a lawyer, correct?**

A. I am not a lawyer.

**Q. You're not giving legal opinions, correct?**

A. Absolutely not.

**Q. And you're not trying to contradict the judge, right?**

MR. MELTON: Objection.

THE WITNESS: I don't even know who the judge is.

MR. GROSSO: All right. I have no more questions.

THE WITNESS: What would I contradict the judge on?

MR. GROSSO: We'll talk offline.

THE WITNESS: Okay.

MR. GROSSO: I'm -- we're done.

THE REPORTER: Okay.

THE VIDEOGRAPHER: Do you want to get orders?