**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ROBERT C. O'LAUGHLIN, M.D.** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 0:16-CV-148-DLB** |
| **RADIATION THERAPY SERVICES, P.S.C., dba ASHLAND BELLEFONTE CANCER CENTER, et al.,** | ) | |
| **Defendants.** | ) | |

**SECOND DECLARATION OF ELIN B. KUNZ**

I, Elin B. Kunz, do hereby declare:

1. I am currently a resident of the State of Florida and reside in the town of Deland. I am over the age of 21 and am competent to make this Declaration.

2. I have been retained by Andrew Grosso & Associates as an expert witness in this case to provide expert opinions, as clarified in my expert report.

3. My expert rebuttal report is attached to this Declaration. I incorporate it and the opinions expressed therein into this Declaration and make them a part of this Declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Deland, Florida, on March 3, 2024.

Elin B. Kunz
Elin B. Kunz

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**Ashland Division**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ROBERT C. O'LAUGHLIN, M.D<br>Plaintiffs,<br><br>v.<br><br>RADIATION THERAPY SERVICES, P.S.C.,<br>dba ASHLAND BELLEFONTE CANCER CENTER,<br>KIRTI K. JAIN, M.D., P.S.C., dba HIGHLANDS CANCER CENTER,<br>A ONE BIZ SOLUTIONS, LLC,<br>KIRTI K. JAIN, M.D., and<br>MANISH JAIN,<br><br>Defendants. | CIVIL ACTION NO.0:16-CV-148-DLB |

**<u>REPLY OF ELIN B. KUNZ TO EXPERT REPORT OF CHRIS MILLER, CHC, CCS-P</u>**

1. I, Elin B. Kunz, am principal of Kunz LLC, a healthcare consulting firm. Robert C. O'Laughlin, M.D. has retained me to provide my initial expert report (dated August 25, 2015), this response report, and possibly expert testimony, regarding the requirements and materiality aspects of supervisory and incident-to provisions in the Medicare and Medicaid programs, as they pertain to chemotherapy services provided in a free standing clinical setting and based upon the allegations and facts of this case; and concerning the reimbursement impact based on the different providers rendering and supervising the service. My qualifications and compensation, and the background to this report, are included in my initial report.

**I. Data Reviewed**

2. For this response report, I have reviewed the following documents and information

as they pertain to the coding and billing of chemotherapy services in this case.

a. Doc# 124 Third Amended Complaint, filed 3/8/2022.

b. Doc# 141 Memorandum Opinion and Order 11/23/2022.

c. *HCPCS (Healthcare Common Procedural Coding) Level II Expert: 2013*, published by AMA.[1]

d. *CPT® (Current Procedural Terminology) 2013 Professional Edition.*

e. 42 C.F.R. §§ 410.26, 410.32, 410.57, 410.74(b) & 410.75(d), §§ 414.56(c) & 405.520(a).

f. Medicare Benefit Policy Manual, Publication 100-02, Chapter 15.

g. Medicare Claims Processing Manual, Publication 100-04, Chapter 1 &12.

h. Medicare Program Integrity Manual, Publication 100-08, Chapter 3 & 4.

i. 7/20/23 Call with Kentucky Medicaid Program representative.

j. KY Medicaid Provider Billing Instructions for Physician's Services Provider -Type 64, 65.[2]

k. Social Security Act § 1861(s)(2)(B).

l. Expert Report of Chris Miller and Attachments.

## I. **Response to Ms. Miller's opinions**

3. The defense's expert Chris M. Miller, CHC, CCS-P ("Ms. Miller") opined in summary that ***"incident-to rules as applied to reduction in payment and professional services do not apply to ancillary services. Chemotherapy is an ancillary service, ordered by a physician and administered by the physicians, employed staff, contracted or leased employees."***

4. Ms. Miller' also opined that ***"application of "incident-to" billing rules to these***

[1] Optum, *HCPCS 2013 Standard Edition* (2012).
[2] Team Kentucky Cabinet for Health and Family Services, Commonwealth of Kentucky, Version 9.1,March 1, 2023

***charges is inapplicable."***

**<u>Ms. Miller Uses No Official or Authoritative Sources to Support Her Position</u>**

5. Ms. Miller's report on Page 3, last Paragraph and continued on Page 4, states:

> While there is only one actual type of "incident-to" which is billing for non-physician providers (NPP) performing professional services under the direct supervision of a physician, incident to services is also commonly referred to in as **adjunct** to a physician order but does not impact the billing of the service.

6. There is no support for Ms. Miller's statements regarding "commonly referred to," *"adjunct to a physician order,"* and *"does not impact the billing of the service*".

7. However, there are two types of incident-to policies, an institutional incident-to policy[3] and a non-institutional incident-to policy[4], with only the non-institutional policy relevant to this matter.

8. Ms. Miller may be erroneously referring to the institutional incident-to policy that applies to hospital outpatient physician offices where chemotherapy is not billed as a professional service by the physician, but where the hospital bills for the chemotherapy services performed by nurses on the facility side and are paid under the hospital outpatient prospective payment system (HOPPS).

9. In this scenario the nurses are included in the hospital's cost report, and the chemotherapy services they perform are *facility services* and *not professional services*. In such a case chemotherapy is referred to as an ancillary service, *since no professional bill is submitted for the chemotherapy service*. However, this is not the case for our matter, where the service is performed in a physician office and billed to the Medicare Program (Part B) as professional

[3] Social Security Act § 1861(s)(2)(B)
[4] 42 C.F.R. § 410.26

services, using the supervising physician or Non Physician Practitioner ("NPP") NPI number as the rendering provider.

10. Turning to her statement on page 4, Paragraph 2:

> NPP services are only billed incident-to a physician when they are considered a professional service, **such as an office visit**. If the services are provided incident-to a physician, the services are billed at 100%, if the services are not directly supervised by a physician or the physician did not devise the treatment plan, the services are billed at 85% of the Medicare fee schedule. Chemotherapy services are not considered professional services. They are ancillary services, subject to a physician's order.

11. This paragraph is partially true. Her statement relating to the reimbursement percentages are correct. If the services are provided incident-to a physician, the services are billed at 100%, if the services are not directly supervised by a physician or the **supervising** physician was not the physician who devised the treatment plan, NPP services are billed at 85% of the Medicare fee schedule with the NPP as the rendering provider. NPPs can act as auxiliary staff and perform chemotherapy services incident-to a physician; NPPs can act as practitioners and provide chemotherapy services; and NPPs can themselves supervise auxiliary staff such as nurses performing chemotherapy incident to their services.

12. Only the supervising physician (or the supervising NPP) may bill Medicare for incident to services.[5] In other words, the service must be billed under the practitioner who provides direct supervision of the service, and not a physician in a group practice who may have devised the treatment plan at an earlier date but is not in the office during the incident-to service.

13. Ms. Miller is incorrect in her opinion that, "Chemotherapy services are not considered professional services. They are ancillary services, subject to a physician's order". **This is simply not true** in the physician office setting, and she has provided no reference to support

[5] 42 CFR § 410.26-(5) Services and supplies incident to a physician's professional services

this opinion, other than the blanket (incorrect) statement that chemotherapy is an ancillary service.

14. When chemotherapy services are performed in a physician office, even when performed by auxiliary staff such as nurses, they are considered professional services incident-to the physician's service and are reimbursed under the Medicare Physician Fee Schedule ('MPFS"). When the OIG reviewed incident-to services in 2009, its findings included that chemotherapy was actually performed by physicians 27% of the time[6].

15. Page 6, Paragraph 1 of Ms. Miller's report reads:

> This is where the confusion begins. Ancillary services, while incident to a physician because of their order are not considered incident to for the purpose of fee reduction of 15%. **All these services are contained within their own category** and have a separate and distinct fee schedule. As noted in the MLN Matters article SE0441 page 3 of 4, cited in Footnote 1, "Must a supervising physician be physically present when **flu shots, EKG's Laboratory tests, or X-rays are performed in an office setting in order to be billed as "incident to" services? These services have their own statutory benefit category and are not subject to the rules applicable to their specific category**. They are not "Incident to" services and the "incident to" rules do not apply. **Chemotherapy is listed under a statutory benefit category and therefore "incident-to" rules do not apply.**

16. The reference cited in her report is the American Medical Association CPT Professional Edition 2011 included in attachments. However, there is no mention of chemotherapy having their own benefit category in this manual. In fact, her own attachment C, on page 11, which is page 506 of the manual, states:

> *Chemotherapy services are typically highly complex and require direct physician supervision for any or all purposes of patient assessment, provision of consent, safety oversight, and intraservice supervision of staff.*

and

> *Codes 96401-96402, 96409-96425, 96521-96523 are not intended to be reported by the physician in the **facility setting**"*

[6] OIG report OEI-09-06-00430"Prevalence and Qualifications of Nonphysician who performed Medicare Physician Services", August 2009.

17. Ms. Miller is correct that flu shots, EKG's, laboratory tests and x-rays have their own statutory benefit category and therefore are not subject to incident-to.

18. Flu shots are included in 42 CFR § 410.57 *Preventive vaccines*, while EKG, laboratory tests and x-rays are included in 42 CFR 410.32, *Diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests.*

19. However, *this is not the case for chemotherapy services*, as they DO NOT have their own statutory benefit category.

20. There is no mention of chemotherapy services having their own benefit category in 42 CFR or 42 U.S.C. § 1395x(s), and there is no reference in Ms. Miller's report to support her findings with any reference.

21. The Opinion of the Court in this case is that chemotherapy services fall under the incident-to requirements for purposes of billing the Medicare program. This opinion is supported by both the industry practice and instructions and guidance issued by Medicare Administrative Contractors ("MACs"), medical associations, and other authorities.

22. According to the Incident-to Fact Sheet provided by CGS[7], the Medicare Administrative Carrier for Kentucky, the following services have their own benefit categories and specific levels of supervision where incident-to do not apply: diagnostic tests, including x-rays and clinical laboratory tests, radium and radiation therapy, including isotopes, surgical dressings, splits, casts, and other material used to treat fractures and dislocations, durable medical equipment (DME), prosthetics and orthotics, ambulance services, pneumococcal vaccines, services provided

[7] CGS: The "Incident to" Provisions of Medicare

by Certified Registered Nurse Anesthetics (CRNAS), screening mammography and screening Pap smears, bone mass measurements.

23. Further, in order to determine if a specific CPT code is eligible as incident-to, the MPFS Relative Value File[8] on the CMS website can be searched by CPT code, and the Payment Policy Indicators can be used to determine whether Medicare pays a specific code. This file also include column specific indicators for applicability of professional or technical modifiers, number of post-operative days included in a procedure, whether a bilateral procedure modifier applies, the level of physician supervision required and if incident-to applies a specific CPT code.

24. The column needed to determine if a CPT code can be provided incident-to a physician (or NPP) service is the same column that contain the Professional Component and Technical Components ("PCTC"). See block #3 in the picture below for an example of the PCTC column. This example shows an indicator of "1" which identifies codes that describe diagnostic test such as pulmonary function tests or therapeutic radiology procedures such as radiation therapy. Incident-to do not apply to these codes.

| | 1 | | 2 | 3 | 4 | 5 | 6 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| HCPCS Code | Modifier | Short Description | Proc Stat | PCTC | Global | MULT SURG | BILT SURG | ASST SURG | CO SURG | Team SURG |
| 76706 | | Us abdl aorta screen aaa | A | 1 | XXX | 0 | 0 | 0 | 0 | 0 |
| 76706 | 26 | Us abdl aorta screen aaa | A | 1 | XXX | 0 | 0 | 0 | 0 | 0 |
| 76706 | TC | Us abdl aorta screen aaa | A | 1 | XXX | 0 | 0 | 0 | 0 | 0 |

25. An indicator of "5" in column PCTC identifies codes that describe services covered "*incident to a physician's service when they are provided by auxiliary personnel employed*

[8] Medicare Physician Fee Schedule Relative Value Files

*by the physician and working under his or her direct supervision*."[9]

26. If we download the MPFS Relative Value files from 2014 and review the CPT codes in this case, you will see that almost all chemotherapy, injections and infusion codes have an indicator of 5 in the PCTC column, which means incident to applies to these codes.

27. The table also shows that incident-to does not apply to the following codes as they have their own benefit category and therefore do not have indicator "5" in the PCTC column:

a. CPT G0008, Admin influenza virus vac, (flu shot) with indicator "9". This means the concept of technical component doesn't apply.

b. CPT 93000, Electrocardiogram (EKG) complete, with indicator "4" which means global test only code.

c. CPT 71030, Chest x-ray 4/> views with indicator "1" which means this is a diagnostic test or radiology service.

d. Also note that the EKG CPT 93000, and the chest x-ray CPT 71030 also have an indicator or "1" in the last column titled "Supervision of Diagnostic Procedures". This means that the diagnostic supervision rules apply, and an indicator of "1" in this column means that this procedure must be furnished under the general supervision of a physician.

e. It should also be noted that an indicator of "0" in the PCTC column means "physician service codes". An example is office visits, and when performed by NPPs these codes can be performed incident-to a physician.

[9] CMS: How to Use the MPFS Look-Up Tool, MLN901344, March 2021

| 2014 National Physician Fee Schedule Relative Value File January Release | | | | | |
|---|---|---|---|---|---|
| RELEASED 12/19/2013 | | | | | SUPERVISION OF |
| | | STATUS | WORK | PCTC | DIAGNOSTIC |
| HCPCS | DESCRIPTION | CODE | RVU | IND | PROCEDURES |
| 96360 | Hydration iv infusion init | A | 0.17 | 5 | 09 |
| 96361 | Hydrate iv infusion add-on | A | 0.09 | 5 | 09 |
| 96365 | Ther/proph/diag iv inf init | A | 0.21 | 5 | 09 |
| 96366 | Ther/proph/diag iv inf addon | A | 0.18 | 5 | 09 |
| 96367 | Tx/proph/dg addl seq iv inf | A | 0.19 | 5 | 09 |
| 96368 | Ther/diag concurrent inf | A | 0.17 | 5 | 09 |
| 96369 | Sc ther infusion up to 1 hr | A | 0.21 | 5 | 09 |
| 96370 | Sc ther infusion addl hr | A | 0.18 | 5 | 09 |
| 96371 | Sc ther infusion reset pump | A | 0.00 | 5 | 09 |
| 96372 | Ther/proph/diag inj sc/im | A | 0.17 | 5 | 09 |
| 96373 | Ther/proph/diag inj ia | A | 0.17 | 5 | 09 |
| 96374 | Ther/proph/diag inj iv push | A | 0.18 | 5 | 09 |
| 96375 | Tx/pro/dx inj new drug addon | A | 0.10 | 5 | 09 |
| 96401 | Chemo anti-neopl sq/im | A | 0.21 | 5 | 09 |
| 96402 | Chemo hormon antineopl sq/i | A | 0.19 | 5 | 09 |
| 96409 | Chemo iv push sngl drug | A | 0.24 | 5 | 09 |
| 96411 | Chemo iv push addl drug | A | 0.20 | 5 | 09 |
| 96413 | Chemo iv infusion 1 hr | A | 0.28 | 5 | 09 |
| 96415 | Chemo iv infusion addl hr | A | 0.19 | 5 | 09 |
| 96416 | Chemo prolong infuse w/pum | A | 0.21 | 5 | 09 |
| 96417 | Chemo iv infus each addl seq | A | 0.21 | 5 | 09 |
| 96420 | Chemo ia push tecnique | A | 0.17 | 5 | 09 |
| 96422 | Chemo ia infusion up to 1 hr | A | 0.17 | 5 | 09 |
| 96423 | Chemo ia infuse each addl hr | A | 0.17 | 5 | 09 |
| 96425 | Chemotherapy infusion metho | A | 0.17 | 5 | 09 |
| 96446 | Chemotx admn prtl cavity | A | 0.37 | 5 | 09 |
| 96521 | Refill/maint portable pump | A | 0.21 | 5 | 09 |
| 96522 | Refill/maint pump/resvr syst | A | 0.21 | 5 | 09 |
| 96523 | Irrig drug delivery device | T | 0.04 | 5 | 09 |
| | | | | | |
| G0008 | Admin influenza virus vac | X | 0.00 | 9 | 09 |
| 93000 | Electrocardiogram complete | A | 0.17 | 4 | 01 |
| 71030 | Chest x-ray 4/> views | A | 0.00 | 1 | 01 |

***CPT codes and descriptions only are copyright 2013 American Medical Association.***
All Rights Reserved.

28. Page 8, Paragraph 3 of Ms. Miller's report reads:

Under number 16, Ms. Kunz provides an example of a nurse providing an injection for a patient who was seen at home. This example is comparing apples and oranges. A patient being treated in the home and given an injection by a nurse would allow for the billing of a 99211 or a professional service. Chemotherapy is not a professional service. Not one

service that is under review in this case is a professional service or would be billed under a professional service code or rules. The issue here is chemotherapy services, which are not subject to incident-to rules and physician supervision which is not billed unless a service is required, which in these cases, it was not.

29. This is incorrect. First, if a nurse provides an injection, it cannot be billed using CPT 99211 for a nurse's visit. This is a "catch all" code to be used when no other code exists for the nursing services provided. Here, there exists a CPT code that describes the service, this being CPT 96372, therapeutic injection. However, *both* CPTs 99211 and CPT 96372, when performed by auxiliary staff such as a nurse, require that incident-to requirements be met in order for the service to be billed under the name of the supervising physician, as these services are only covered (payable) services if *direct physician supervision was provided*. This is true for chemotherapy. Both the injection CPT 96372 and Chemotherapy administration codes are included in the Relative Value file with an indicator of 5 for incident-to.

30. There are numerous payer guidelines and sources available online that include a reference to chemotherapy as an incident-to service.

31. Kentucky's MAC, CGS's Incident-to Fact Sheet[10] states that incident-to services include minor surgeries, some injections and infusions and other types of care that are routinely provided in an office setting.

32. Not all medical associations have their policies available to the general public, but one that does is the Indiana Medical Association,[11] which includes the following services as incident-to: *"Incident to services may include but are not necessarily limited to: Evaluation and management services (E/M),* ***Chemotherapy administration,*** *professional component of radiology services\, Minor surgery, Setting casts and Office visits*."

[10] CGS: The "incident to" Provisions of Medicare.
[11] Indiana State Medical Association, Incident-to Fact Sheet

33. There is also a Bloomberg Law article written by Paul W. Kim, JD, MPH titled: *Medicare Part B "Incident-to" Policy*[12]*,* that not only references chemotherapy as an incident-to service but state that "In fact, almost every year, chemotherapy represents the number one Medicare expenditure for the "incident to" benefit."

34. And in *U.S. ex rel. Woodruff v. Hawaii Pacific Health*[13], the Court noted that "Both parties agree that KMC's billing practices for the administration of chemotherapy are governed by the "incident to" rules under Medicare Part B because KMC operates as an outpatient clinic."

**<u>Report Contains Factual Misstatements and an Insufficient Understanding of Incident-to</u>**

35. Throughout the report, Ms. Miller makes generic statements masquerading as facts with no cited support or bases for the statements or opinions. Below are a sample of few of such statements, with a corresponding "rebuttal" explaining why each statement by Ms. Miller is factually incorrect or inconsistent with guidance.

**Miller Sample statement #1**

36. Page 4, Paragraph 2: *"NPP services are only billed incident-to a physician when they are considered a professional service, such as an office visit."*

37. **Rebuttal:** It is factually incorrect to say that NPP services are only billed incident-to when they are considered a professional service, such as an office visit.

38. In the office setting, chemotherapy, infusions, and injections are considered professional services even when performed by nurses. And NPPs can act as practitioners and provide chemotherapy services directly; NPPs can act as auxiliary staff and perform chemotherapy

[12] Medicare Part B "Incident-to" Policy, Paul W. Kim, JD, MPH March 2022.
[13] *U.S. ex rel. Woodruff* v. Hawaii Pacific Health, 490 F. Supp. 2d 1062, 1072 (D. Haw. 2007)

services incident-to a physician; and NPPs can themselves supervise auxiliary staff such as nurses performing chemotherapy incident to their services.

**Miller Sample statement #2**

39. Page 4, Paragraph 3:

> Incident to is defined as services or supplies that are furnished incident to a physician's professional services when the services or supplies are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness and services are performed in the physician's office or in the patient's home. To qualify for payment under the incident to rules, services must be part of the patient's normal course of treatment, during which a physician personally performed an initial service and remains actively involved in the ongoing course of treatment. This statement is true and applies to the supplies and services ordered by the physician in the course of examination and treatment of the patient. **It does not include professional services, such as a. Incident to services that require physician supervision and are billed under 99201- 99215 CPT codes…."**

40. This is incorrect, as incident-to does apply to CPT codes 99212 – 99215. She is misinterpreting her source: MLN Matters SE0441, Attachment B, Page 6.

41. It should also be noted that this source also has a reference to chemotherapy as incident-to services when discussing *Offices in Institutions* on Page 8, which reads: "*One exception is that* ***certain chemotherapy 'incident-to'*** *services are excluded from the bundled SNF payments and may be separately billable to the carrier."*

**Miller Sample statement #3**

42. Page 5, Paragraph 3: "*The discount rule is only applicable to codes 99201-99215 or home visits, 99341-99350, which are considered professional services*."

43. This is a false statement. The "discount rule" is applicable to additional CPT codes, such as chemotherapy and injections. Additionally, new office visit, such as CPT codes 99201 to 99205 cannot be performed incident-to because there is no treatment plan set up for these services.

44. When incident-to services are performed incident-to the NPP (as opposed to the physician), the reimbursement is 85% of the physician fee schedule amount because the NPP is the supervising provider, and therefore the rendering provider of the service. And if the NPP is supervising chemotherapy, infusions, or injections, the reimbursement would be 85% of the MPFS.

45. Furthermore, if there is no supervision by either the NPP or a physician, then the service is not be a covered service, and there would therefore be no entitlement to payment.

## II. <u>Conclusion</u>

I disagree that chemotherapy services have their own benefit category and are excluded from incident-to. Furthermore, incident-to billing requirements do apply to this case, and the 15% discount applies if chemotherapy is supervised by the NPP instead of the physician. And if there is no direct supervision during chemotherapy then such service is not a covered service and therefore not billable.

I have not done a medical record review in this case to opine on whether supervision was met for a particular service.

I reserve the right to supplement or revise my opinion based on my review of additional documents or other information that becomes available.

Dated: October 6, 2023

Elin B. Kunz

Elin B. Kunz, MBA, CHC, CPC, CPMA, CCS
KUNZ, LLC