LOUISVILLE LEXINGTON LONDON FLORENCE CINCINNATI INDIANAPOLIS ORLANDO JACKSONVILLE TAMPA

KENTUCKIANA
COURT REPORTERS

**CIVIL ACTION NO. 0:16-CV-148-DLB**

**UNITED STATES OF AMERICA**

**EX REL. ROBERT C. O'LAUGHLIN, M.D.**

**V.**

**RADIATION THERAPY SERVICES, P.S.C., ET AL.**

**DEPONENT:**

**ROBERT C. O'LAUGHLIN, M.D.**

**DATE:**

**December 11, 2023**

a courtroom powerhouse

schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273

www.kentuckianareporters.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION
CIVIL ACTION NO.: 0:16-CV-148-DLB

UNITED STATES OF AMERICA
EX REL. ROBERT C. O'LAUGHLIN, M.D.,
Plaintiffs

V.

RADIATION THERAPY SERVICES,
P.S.C., DBA ASHLAND BELLEFONTE
CANCER CENTER, ET AL.,
Defendants

DEPONENT: ROBERT C. O'LAUGHLIN, M.D.
DATE: DECEMBER 11, 2023
REPORTER: DANIELLE NICOLE CALVERT

APPEARANCES

ON BEHALF OF THE PLAINTIFFS, UNITED STATES OF AMERICA EX REL. ROBERT C. O'LAUGHLIN, M.D.:

Andrew Grosso, Esquire
Andrew Grosso & Associates
1101 30th Street
Suite 500
Washington, DC 20007
Telephone No.: (202) 298-6500
E-mail: agrosso@acm.org

ON BEHALF OF THE DEFENDANTS, RADIATION THERAPY SERVICES, P.S.C., DBA ASHLAND BELLEFONTE CANCER CENTER, KIRTI K. JAIN, M.D., P.S.C., DBA HIGHLANDS CANCER CENTER, A ONE BIZ SOLUTIONS, LLC, KIRTI K. JAIN, M.D., AND MANISH JAIN:

Christopher A. Melton, Esquire
Wyatt, Tarrant & Combs, LLP
400 West Market Street
Suite 2000
Louisville, Kentucky 40202
Telephone No.: (502) 562-7367
E-mail: cmelton@wyattfirm.com

the -- the drug. Usually a nurse would do that. But the -- the physician would be present while that chemotherapy service is being administered.

**Q. What do you mean by present?**

A. In the building, direct supervision.

**Q. But he -- not necessarily in the office performing it or even while it's being performed? Not in the room while it's being performed, correct?**

A. Correct. You're talking about a -- you're talking about personal supervision. But there are different requirements for a hospital versus a freestanding center. It's a little bit stricter for a freestanding cancer center. You have to be in the building. That -- that's my understanding.

**Q. So chemotherapy patient may come in and get their chemotherapy and never see a physician that day, correct?**

A. True.

**Q. We've been talking about ABCC and ACC, but you also worked at Logan, correct?**

A. Yes.

**Q. My understanding, Logan is a joint venture -- was a joint venture with Logan Regional Medical Center, which is a LifePoint Hospital; is that correct?**

A. LifePoint. Right.

India. And so, I mean, like I said, I never saw Dr. Hayek at Highlands. But I -- I can't speak -- he might've gone there on rare occasions. But I -- I never saw him there.

**Q. So your knowledge that he wasn't there is based on you didn't see him?**

A. His routine was part-time in Ashland and then part-time also in Ohio.

**Q. But you didn't check his schedule to see what days he would've worked where?**

A. I assume he's in Ashland.

**Q. Okay. Were there any other physicians that you're aware of who worked at the clinics?**

A. Okay. Dr. Hayek left ABCC. It was December of 2013. And then I know Dr. Konala came on full-time later that year. It could've been June or July. And then Dr. Jain hired a full-time medical oncologist for Highlands, Dr. Samir (phonetic) Batu (phonetic).

**Q. Were there any locums that you would've worked with?**

A. He may have had a locum tenens every now and then, but I -- I never met them. I never saw them.

**Q. So here where you say, "In fact physicians were not even present on the premises when the chemotherapy services were provided," you're not saying**

miles away at the hospital.

**Q. Right. So chemotherapy wasn't being administered at the Logan?**

A. Correct. Right.

**Q. Okay.**

A. Yeah. Okay. Right.

MR. MELTON: Going to mark this as well.

THE REPORTER: Exhibit 5.

(EXHIBIT 5 MARKED FOR IDENTIFICATION)

BY MR. MELTON:

**Q. Have you seen these before?**

A. Yes.

**Q. These are -- purport to be responses. They were delivered to us by your attorney. They were responses to some interrogatories and discovery responses -- or discovery requests that we had.**

**Did you assist with -- in the preparation of these responses?**

A. Yes.

**Q. And have you reviewed them?**

A. Yes.

**Q. And I know you're supposed to make an attestation as to their accuracy, I'm assuming we're going to get those. Did you -- you've -- you have signed an affidavit or a certification that these are**